Case 1:26-cv-03849-MKV    Document 1-3    Filed 05/08/26    Page 1 of 118

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

---------------------------------------------------------------------X

FOREVER FUNDING LLC,

                    Plaintiff,

          - against -

RONNIE FRANK WALRAVEN JR,

                    Defendant.

---------------------------------------------------------------------X

Index No.

Date Filed:

**SUMMONS**

Basis of venue designated:
Contract

Plaintiff's address:
710 Avenue U
Brooklyn, NY 11223

To the above-named Defendant:

      **YOU ARE HEREBY SUMMONED** to answer the Complaint in this action and to serve a copy of your Answer, or if the Complaint is not served with this Summons, to serve a Notice of Appearance, on the Plaintiff's attorneys within 20 days after service of this Summons, exclusive of the day of service (or within 30 days after the service is completed if this Summons is not personally delivered to you within the State of New York); and in case of your failure to appear or answer, judgment will be taken against you by default for the relief demanded in the Complaint.

Dated: Garden City, New York
      March 12, 2026

GENE ROSEN'S LAW FIRM
A PROFESSIONAL CORPORATION
Attorneys for Plaintiff

By:   *Gene W. Rosen*

      Gene W. Rosen, Esq.
      200 Garden City Plaza, Suite 405
      Garden City, New York 11530
      Tel (212) 529-3600 Ext. 101
      Fax (347) 578-8793
      Gene@GeneRosen.com

Defendants' addresses:

Ronnie Frank Walraven Jr
4267 Shavano Dr
Frisco, TX 75034

**SEE COMPLAINT ANNEXED HERETO**

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
-----------------------------------------------------------------------X
FOREVER FUNDING LLC,                                    Index No.

                        Plaintiff,                    **VERIFIED COMPLAINT**

        - against -

RONNIE FRANK WALRAVEN JR,

                        Defendant.
-----------------------------------------------------------------------X

        Plaintiff, by its attorneys, Gene Rosen's Law Firm - A Professional Corporation, as and for

its complaint herein, alleges the following:

        1.      At all times hereinafter mentioned, Plaintiff was and still is a limited liability

company formed under the laws of the State of New York.

        2.      At all times hereinafter mentioned, upon information and belief, Defendant Ronnie

Frank Walraven Jr ("Defendant") was and still is a resident of the State of Texas.

        3.      At all times hereinafter mentioned, upon information and belief, non-party ER of

Texas, LLC ("Merchant") was and still is a limited liability company formed under the laws of the

State of Texas.

        4.      The parties entered into written contracts providing that any litigation between them

must be commenced and maintained in any Court located in the County of New York in the State

of New York. **Exhibits "A" through "D" at ¶ G7**.


                    **AS AND FOR A FIRST CAUSE OF ACTION**
                    **(Breach of Guaranty of First Contract)**

        5.      Plaintiff and Merchant entered into a written contract ("First Contract"), dated June

10, 2025, a copy of which is annexed hereto as **Exhibit "A"**, whereby Merchant sold Plaintiff

$1,199,200.00 ("First Purchased Amount") of Merchant's accounts, contract rights, and other obligations arising from or relating to the payment of monies from Merchant's customers and other third party payors ("Receivables") for the sum of $800,000.00 ("First Purchase Price"), to be paid to Plaintiff from 25% of Merchant's revenue. **Exhibit "A" at page 1**.

6.      Merchant agreed that in the event of its default under the First Contract, the full uncollected First Purchased Amount plus all fees due under the First Contract would become immediately due and payable in full to Plaintiff. **Exhibit "A" at ¶ 35 (referencing ¶ 17 at Protection 1)**.

7.      Merchant agreed that if Plaintiff prevails in any litigation between the parties then Merchant must pay Plaintiff prejudgment interest at a rate of 24% per annum. **Exhibit "A" at ¶ 45**.

8.      Plaintiff paid the First Purchase Price, less applicable contractual fees and deductions, on June 10, 2025. A copy of the proof of funding is annexed hereto as **Exhibit "B"**.

9.      Merchant breached the First Contract by defaulting on its representations and warranties to Plaintiff under the First Contract and by preventing Plaintiff from collecting the First Purchased Amount.

10.      Plaintiff held Merchant in breach of the First Contract on October 14, 2025.

11.      The payment history for the First Contract is annexed hereto as **Exhibit "C"**.

12.      Merchant owes Plaintiff $310,827.85 of the First Purchased Amount.

13.      Merchant owes Plaintiff $195.00 for a UCC fee under the First Contract. **Exhibit "A" at ¶ 2(D)**.

14.      Merchant owes Plaintiff $2,500.00 for a Default Fee under the First Contract. **Exhibit "A" at ¶ 2(C)**.

15. By reason of the foregoing, Plaintiff has been damaged by Merchant's breach of the First Contract in the sum of $313,522.85 with 24% interest thereon from October 14, 2025.

16. Defendant executed a guarantee of performance of all the representations, warranties, and covenants made by Merchant in the First Contract. **Exhibit "A" at pages 13-17**.

17. By reason of the guarantee, Defendant is obligated to Plaintiff in the sum of $313,522.85 with 24% interest thereon from October 14, 2025.

## AS AND FOR A SECOND CAUSE OF ACTION
### (Attorney Fees for First Contract)

18. Pursuant to the terms of the First Contract, Merchant agreed to pay Plaintiff's reasonable attorneys' fees. **Exhibit "A" at ¶ 46**.

19. By reason of the guarantee of the First Contract, Defendant is obligated to pay Plaintiff's reasonable attorneys' fees.

20. Pursuant to the terms of the guarantee of the First Contract, Defendant agreed to pay Plaintiff's reasonable attorney's fees. **Exhibit "A" at ¶ G13.**

## AS AND FOR A THIRD CAUSE OF ACTION
### (Breach of Guaranty of Second Contract)

21. Plaintiff and Merchant entered into a written contract ("Second Contract"), dated June 24, 2025, a copy of which is annexed hereto as **Exhibit "D"**, whereby Merchant sold Plaintiff $749,500.00 ("Second Purchased Amount") of Merchant's Receivables for the sum of $500,000.00 ("Second Purchase Price"), to be paid to Plaintiff from 25% of Merchant's revenue. **Exhibit "D" at page 1**.

22. Merchant agreed that in the event of its default under the Second Contract, the full

uncollected Second Purchased Amount plus all fees due under the Second Contract would become immediately due and payable in full to Plaintiff. **Exhibit "D" at ¶ 35 (referencing ¶ 17 at Protection 1)**.

23. Merchant agreed that if Plaintiff prevails in any litigation between the parties then Merchant must pay Plaintiff prejudgment interest at a rate of 24% per annum. **Exhibit "D" at ¶ 45**.

24. Plaintiff paid the Second Purchase Price, less applicable contractual fees and deductions, on July 25, 2025. A copy of the proof of funding is annexed hereto as **Exhibit "E"**.

25. Merchant breached the Second Contract by defaulting on its representations and warranties to Plaintiff under the Second Contract and by preventing Plaintiff from collecting the Second Purchased Amount.

26. Plaintiff held Merchant in breach of the Second Contract on October 15, 2025.

27. The payment history for the Second Contract is annexed hereto as **Exhibit "F"**.

28. Merchant owes Plaintiff $381,852.85 of the Second Purchased Amount.

29. Merchant owes Plaintiff $195.00 for a UCC fee under the Second Contract. **Exhibit "D" at ¶ 2(D)**.

30. Merchant owes Plaintiff $2,500.00 for a Default Fee under the Second Contract. **Exhibit "D" at ¶ 2(C)**.

31. By reason of the foregoing, Plaintiff has been damaged by Merchant's breach of the Second Contract in the sum of $381,852.85 with 24% interest thereon from October 15, 2025.

32. Defendant executed a guarantee of performance of all the representations, warranties, and covenants made by Merchant in the Second Contract. **Exhibit "D" at pages 13-17**.

- 4 -

33.     By reason of the guarantee, Defendant is obligated to Plaintiff in the sum of $381,852.85 with 24% interest thereon from October 15, 2025.

### AS AND FOR A FOURTH CAUSE OF ACTION
**(Attorney Fees for Second Contract)**

34.     Pursuant to the terms of the Second Contract, Merchant agreed to pay Plaintiff's reasonable attorneys' fees. **Exhibit "D" at ¶ 46**.

35.     By reason of the guarantee of the Second Contract, Defendant is obligated to pay Plaintiff's reasonable attorneys' fees.

36.     Pursuant to the terms of the guarantee of the Second Contract, Defendant agreed to pay Plaintiff's reasonable attorney's fees. **Exhibit "D" at ¶ G13.**

### AS AND FOR A FIFTH CAUSE OF ACTION
**(Breach of Guaranty of Third Contract)**

37.     Plaintiff and Merchant entered into a written contract ("Third Contract"), dated September 22, 2025, a copy of which is annexed hereto as **Exhibit "G"**, whereby Merchant sold Plaintiff $749,500.00 ("Third Purchased Amount") of Merchant's Receivables for the sum of $500,000.00 ("Third Purchase Price"), to be paid to Plaintiff from 25% of Merchant's revenue. **Exhibit "G" at page 1**.

38.     Merchant agreed that in the event of its default under the Third Contract, the full uncollected Third Purchased Amount plus all fees due under the Third Contract would become immediately due and payable in full to Plaintiff. **Exhibit "G" at ¶ 35 (referencing ¶ 17 at Protection 1)**.

39.     Merchant agreed that if Plaintiff prevails in any litigation between the parties then

- 5 -

Case 1:26-cv-03849-MKV    Document 1-3    Filed 05/08/26    Page 7 of 118

Merchant must pay Plaintiff prejudgment interest at a rate of 24% per annum. **Exhibit "G" at ¶ 45**.

40.     Plaintiff paid the Third Purchase Price, less applicable contractual fees and deductions, on September 22, 2025. A copy of the proof of funding is annexed hereto as **Exhibit "H"**.

41.     Merchant breached the Third Contract by defaulting on its representations and warranties to Plaintiff under the Third Contract and by preventing Plaintiff from collecting the Third Purchased Amount.

42.     Plaintiff held Merchant in breach of the Third Contract on October 15, 2025.

43.     The payment history for the Third Contract is annexed hereto as **Exhibit "I"**.

44.     Merchant owes Plaintiff $712,025.00 of the Third Purchased Amount.

45.     Merchant owes Plaintiff $195.00 for a UCC fee under the Third Contract. **Exhibit "G" at ¶ 2(D)**.

46.     Merchant owes Plaintiff $2,500.00 for a Default Fee under the Third Contract. **Exhibit "G" at ¶ 2(C)**.

47.     By reason of the foregoing, Plaintiff has been damaged by Merchant's breach of the Third Contract in the sum of $714,720.00 with 24% interest thereon from October 15, 2025.

48.     Defendant executed a guarantee of performance of all the representations, warranties, and covenants made by Merchant in the Third Contract. **Exhibit "G" at pages 13-17**.

49.     By reason of the guarantee, Defendant is obligated to Plaintiff in the sum of $714,720.00 with 24% interest thereon from October 15, 2025.

Case 1:26-cv-03849-MKV   Document 1-3   Filed 05/08/26   Page 8 of 118

**AS AND FOR A SIXTH CAUSE OF ACTION**
**(Attorney Fees for Third Contract)**

50.     Pursuant to the terms of the Third Contract, Merchant agreed to pay Plaintiff's reasonable attorneys' fees. **Exhibit "G" at ¶ 46**.

51.     By reason of the guarantee of the Third Contract, Defendant is obligated to pay Plaintiff's reasonable attorneys' fees.

52.     Pursuant to the terms of the guarantee of the Third Contract, Defendant agreed to pay Plaintiff's reasonable attorney's fees. **Exhibit "G" at ¶ G13**.

**AS AND FOR A SEVENTH CAUSE OF ACTION**
**(Breach of Guaranty of Fourth Contract)**

53.     Plaintiff and Merchant entered into a written contract ("Fourth Contract"), dated December 1, 2025, a copy of which is annexed hereto as **Exhibit "J"**, whereby Merchant sold Plaintiff $487,175.00 ("Fourth Purchased Amount") of Merchant's Receivables for the sum of $325,000.00 ("Fourth Purchase Price"), to be paid to Plaintiff from 25% of Merchant's revenue. **Exhibit "J" at page 1**.

54.     Merchant agreed that in the event of its default under the Fourth Contract, the full uncollected Fourth Purchased Amount plus all fees due under the Fourth Contract would become immediately due and payable in full to Plaintiff. **Exhibit "J" at ¶ 35 (referencing ¶ 17 at Protection 1)**.

55.     Merchant agreed that if Plaintiff prevails in any litigation between the parties then Merchant must pay Plaintiff prejudgment interest at a rate of 24% per annum. **Exhibit "J" at ¶ 45**.

56.     Plaintiff paid the Fourth Purchase Price, less applicable contractual fees and

- 7 -

deductions, on December 1, 2025. A copy of the proof of funding is annexed hereto as **Exhibit "K"**.

57.     Merchant breached the Fourth Contract by defaulting on its representations and warranties to Plaintiff under the Fourth Contract and by preventing Plaintiff from collecting the Fourth Purchased Amount.

58.     Plaintiff held Merchant in breach of the Fourth Contract on January 26, 2026.

59.     The payment history for the Fourth Contract is annexed hereto as **Exhibit "L"**.

60.     Merchant owes Plaintiff $292,500.00 of the Fourth Purchased Amount.

61.     Merchant owes Plaintiff $195.00 for a UCC fee under the Fourth Contract. **Exhibit "J" at ¶ 2(D)**.

62.     Merchant owes Plaintiff $2,500.00 for a Default Fee under the Fourth Contract. **Exhibit "J" at ¶ 2(C)**.

63.     By reason of the foregoing, Plaintiff has been damaged by Merchant's breach of the Fourth Contract in the sum of $390,370.00 with 24% interest thereon from January 26, 2025.

64.     Defendant executed a guarantee of performance of all the representations, warranties, and covenants made by Merchant in the Fourth Contract. **Exhibit "J" at pages 13-17**.

65.     By reason of the guarantee, Defendant is obligated to Plaintiff in the sum of $390,370.00 with 24% interest thereon from January 26, 2025.

## AS AND FOR AN EIGHTH CAUSE OF ACTION
### (Attorney Fees for Fourth Contract)

66.     Pursuant to the terms of the Fourth Contract, Merchant agreed to pay Plaintiff's reasonable attorneys' fees. **Exhibit "J" at ¶ 46**.

67.     By reason of the guarantee of the Fourth Contract, Defendant is obligated to pay

Plaintiff's reasonable attorneys' fees.

68.      Pursuant to the terms of the guarantee of the Fourth Contract, Defendant agreed to pay Plaintiff's reasonable attorney's fees. **Exhibit "J" at ¶ G13.**

## DEMAND FOR RELIEF

**WHEREFORE,** Plaintiff demands judgment against Defendant on the first cause of action in the sum of $313,522.85 with 24% interest thereon from October 14, 2025, on the second cause of action in the sum of $78,380.71 or such other amount as the Court deems just, on the third cause of action in the sum of $381,852.85 with 24% interest thereon from October 15, 2025, on the fourth cause of action in the sum of $96,136.96 or such other amount as the Court deems just, on the fifth cause of action in the sum of $712,025.00 with 24% interest thereon from October 15, 2025, on the sixth cause of action in the sum of $178,680.00 or such other amount as the Court deems just, on the seventh cause of action in the sum of $387,675.00 with 24% interest thereon from January 26, 2026, and on the eighth cause of action in the sum of $97,592.50 or such other amount as the Court deems just, together with the costs and disbursements of this action and any such other and further relief as the Court deems just.

Dated:  Garden City, New York
       March 12, 2026

GENE ROSEN'S LAW FIRM
A PROFESSIONAL CORPORATION
Attorneys for Plaintiff

By: _Gene W. Rosen_

    Gene W. Rosen, Esq.
    200 Garden City Plaza, Suite 405
    Garden City, New York 11530
    Tel (212) 529-3600 Ext. 101
    Fax (347) 578-8793
    Gene@GeneRosen.com

- 9 -

Case 1:26-cv-03849-MKV   Document 1-3   Filed 05/08/26   Page 11 of 118

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
------------------------------------------------------------------X
FOREVER FUNDING LLC,                                    Index No.

               Plaintiff,                          **VERIFICATION**

     - against -

RONNIE FRANK WALRAVEN JR,

              Defendant.
------------------------------------------------------------------X

ISAAC LOUZ, duly affirmed, deposes and says:

I am an Authorized Representative of Forever Funding LLC; I have read the foregoing complaint and know the contents thereof; that the same is true to my knowledge except those matters herein stated to be alleged upon information and belief, and as to those matters I believe them to be true. The grounds for my belief as to those matters herein not stated upon my knowledge is based upon the records in my possession.

I affirm on this day of March 12, 2026, under the penalties of perjury under the laws of New York, which may include a fine or imprisonment, that the foregoing is true, and I understand that this document may be filed in an action or proceeding in a court of law.

 

*Isaac Louz*
_____
ISAAC LOUZ
Authorized Representative
Forever Funding LLC

Case 1:26-cv-03849-MKV    Document 1-3    Filed 05/08/26    Page 12 of 118

COMPLAINT


EXHIBIT "A"

DocuSign Envelope ID: EF74E45D0A7B438287DB90E77D01A08
Case 1:26-cv-03849-MKV    Document 1-3    Filed 05/08/26    Page 13 of 118



### FOREVER FUNDING LLC
2389 Main St STE 100, Glastonbury, CT 06033
(347) 719-7290

# STANDARD MERCHANT CASH ADVANCE AGREEMENT

This is an Agreement dated Jun. 10, 2025 by and between FOREVER FUNDING LLC ("FF") and each merchant listed below ("Merchant").

Merchant's Legal Name: ER OF TEXAS, LLC

D/B/A/: ER OF TEXAS                                      Fed ID #: ▮▮▮▮▮▮▮

Type of Entity: Limited Liability Company

| | | | |
|---|---|---|---|
| Business Address: 1441 LATIGO CT | City: PROSPER | State: TX | Zip: 75078 |
| Contact Address: 4267 SHAVANO DR | City: FRISCO | State: TX | Zip: 75034 |

E-mail Address: ▮▮▮▮▮▮▮▮▮▮▮▮         Phone Number: ▮▮▮▮▮▮▮

| | |
|---|---|
| **Purchase Price**<br>*This is the amount being paid to Merchant(s) for the Receivables Purchased Amount (defined below).* | **$ 800,000.00** |
| **Receivables Purchased Amount**<br>*This is the amount of Receivables (defined in Section 1 below) being sold.* | **$ 1,199,200.00** |
| **Specified Percentage**<br>*This is the percentage of Receivables (defined below) to be delivered until the Receivables Purchased Amount is paid in full.* | **25.00%** |
| **Net Funds Provided**<br>*This is the net amount being paid to or on behalf of Merchant(s) after deduction of applicable fees listed in Section 2 below.* | **$ 720,000.00** |
| **Initial Estimated Payment**<br>*This is only applicable if an Addendum for Estimated Payments is being signed. This is the initial amount of periodic payments collected from Merchant(s) as an approximation of no more than the Specified Percentage of the Receivables and is subject to reconciliation as set forth in Section 4 below.* | **$ 11,000.00**<br>**per day** |

**I have read and agree to the terms and conditions set forth above:**

DocuSigned by:

*RONNIE FRANK WALRAVEN JR*

190D4E5D0D8B459...

Name and Title: RONNIE FRANK WALRAVEN JR          Date:    6/10/2025

FILED: NEW YORK COUNTY CLERK 03/12/2026 02:56 PM
INDEX NO. 651550/2026
NYSCEF DOC. NO. 2
RECEIVED NYSCEF: 03/12/2026

Case 1:26-cv-03849-MKV     Document 1-3     Filed 05/08/26     Page 14 of 118

Page **2** of **20**

## STANDARD MERCHANT CASH ADVANCE AGREEMENT

### TERMS AND CONDITIONS

**1. Sale of Future Receipts.** Merchant(s) hereby sell, assign, and transfer to FF (making FF the absolute owner) in consideration of the funds provided ("Purchase Price") specified above, all of each Merchant's future accounts, contract rights, and other obligations arising from or relating to the payment of monies from each Merchant's customers and/or other third party payors (the "Receivables", defined as all payments made by cash, check, credit or debit card, electronic transfer, or other form of monetary payment in the ordinary course of each merchant's business), for the payment of each Merchant's sale of goods or services until the amount specified above (the "Receivables Purchased Amount") has been delivered by Merchant(s) to FF. Each Merchant hereby acknowledges that until the Receivables Purchased Amount has been received in full by FF, each Merchant's Receivables, up to the balance of the Receivables Purchased Amount, are the property of FF and not the property of any Merchant. Each Merchant agrees that it is a fiduciary for FF and that each Merchant will hold Receivables in trust for FF in its capacity as a fiduciary for FF.

The Receivables Purchased Amount shall be paid to FF by each Merchant irrevocably authorizing only one depositing account acceptable to FF (the "Account") to remit the percentage specified above (the "Specified Percentage") of each Merchant's settlement amounts due from each transaction, until such time as FF receives payment in full of the Receivables Purchased Amount. Each Merchant hereby authorizes FF to ACH debit the specified remittances from the Account on a daily basis as of the next business day after the date of this Agreement and will provide FF with all required access codes and monthly bank statements. Each Merchant understands that it will be held responsible for any fees resulting from a rejected ACH attempt or an Event of Default (see Section 2). FF is not responsible for any overdrafts or rejected transactions that may result from FF's ACH debiting the Specified Percentage amounts under the terms of this Agreement.

**2. Additional Fees.** In addition to the Receivables Purchased Amount, each Merchant will be held responsible to FF for the following fees, where applicable:

A. $80,000.00 - to cover underwriting and the ACH debit program, as well as related expenses. This will be deducted from payment of the Purchase Price.

B. Wire Fee - Merchant(s) shall receive funding electronically to the Account and will be charged $50.00 for a Fed Wire or $0.00 for a bank ACH. This will be deducted from payment of the Purchase Price.

C. Blocked Account/Default - $2,500.00 - If FF considers an Event of Default to have taken place under Section 34.

D. UCC Fee - $195.00 – to cover FF filing a UCC-1 financing statement to secure its interest in the Receivables Purchased Amount. A $195.00 UCC termination fee will be charged if a UCC filing is terminated.

E. Court costs, arbitration fees, collection agency fees, attorney fees, expert fees, and any other expenses incurred in litigation, arbitration, or the enforcement of any of FF's legal or contractual rights against each Merchant and/or each Guarantor, if required, as explained in other Sections of this Agreement.

**3. Cap on Collection of the Receivables Purchased Amount.** The amount that FF will collect from Merchant(s) towards the Receivables Purchased Amount during any specific day will be capped at $11,000.00 (the "Cap"). If the Specified Percentage of all Receivables for a specific day is less than the Cap, then in addition to the Specified Percentage of Receivables for that day, FF will be permitted to collect any Receivables it did not previously collect due to the Cap such that the total amount collected during that day does not exceed the Cap. The Cap is not applicable to make up for a business day on which FF is closed and does not ACH debit the Account, to subsequent attempts to collect a rejected or blocked ACH payment, or for the collection of any of the fees listed in Section 2 or if any Event of Default listed in Section 34 is considered by FF to have taken place.

**4. Reconciliations**. Any Merchant may give written notice to FF requesting that FF conduct a reconciliation in order to ensure that the amount that FF has collected equals the Specified Percentage of Merchant(s)'s Receivables under this Agreement. Any Merchant may give written notice requesting a reconciliation. A reconciliation may also be requested by e-mail to office@foreverfunding.co and such notice will be deemed to have been received if and when FF sends a reply e-mail (but not a read receipt). If such reconciliation determines that FF collected more than it was entitled to, then FF will credit to the Account all amounts to which FF was not entitled within seven days thereafter. If such reconciliation determines

**I have read and agree to the terms and conditions set forth above:**

DocuSigned by:

*RONNIE FRANK WALRAVEN JR*
190D4E5D0D8B459...

Name and Title: RONNIE FRANK WALRAVEN JR          Date:     6/10/2025

DocuSign Envelope ID: EF74E54D-A7B4-4592-8D4B-8E5F75D0D108

Case 1:26-cv-03849-MKV     Document 1-3     Filed 05/08/26     Page 15 of 118

Page **3** of **20**

## STANDARD MERCHANT CASH ADVANCE AGREEMENT

that FF collected less than it was entitled to, then FF will debit from the Account all additional amounts to which FF was entitled within seven days thereafter. In order to effectuate this reconciliation, any Merchant must produce with its request the login and password for the Account and any and all bank statements and merchant statements covering the period from the date of this Agreement through the date of the request for a reconciliation. FF will complete each such reconciliation within two business days after receipt of a written request for one accompanied by the information and documents required for it. Nothing herein limits the amount of times that such a reconciliation may be requested.

**5. Prepayments.** Although there is no obligation to do so, any Merchant may prepay any amount towards the Receivables Purchased Amount. There will be no penalty for any prepayment made by any Merchant. Any Merchant may elect to terminate this Agreement by prepaying FF the amount of the balance of the Receivables Purchased Amount at that time.

**6. Merchant Deposit Agreement.** Merchant(s) shall appoint a bank acceptable to FF, to obtain electronic fund transfer services and/or "ACH" payments. Merchant(s) shall provide FF and/or its authorized agent with all of the information, authorizations, and passwords necessary to verify each Merchant's Receivables. Merchant(s) shall authorize FF and/or its agent(s) to deduct the amounts owed to FF for the Receivables as specified herein from settlement amounts which would otherwise be due to each Merchant and to pay such amounts to FF by permitting FF to withdraw the Specified Percentage by ACH debiting of the account. The authorization shall be irrevocable absent FF's written consent.

**7. Term of Agreement.** The term of this Agreement is indefinite and shall continue until FF receives the full Receivables Purchased Amount, or earlier if terminated pursuant to any provision of this Agreement. The provisions of Sections 4, 6, 7, 8, 10, 11, 13, 14, 15, 17, 18, 19, 22, 23, 28, 31, 32, 33, 34, 35, 37, 38, 39, 40, 41, 42, 43, 44, 45, 46, 47, 48, 49, 50, 51, 52, 53, 54, 55, 56, 57, and 58 shall survive any termination of this Agreement.

**8. Ordinary Course of Business.** Each Merchant acknowledges that it is entering into this Agreement in the ordinary course of its business and that the payments to be made from each Merchant to FF under this Agreement are being made in the ordinary course of each Merchant's business.

**9. Financial Condition.** Each Merchant and each Guarantor (Guarantor being defined as each signatory to the Guarantee of this Agreement) authorizes FF and its agent(s) to investigate each Merchant's financial responsibility and history, and will provide to FF any bank or financial statements, tax returns, and other documents and records, as FF deems necessary prior to or at any time after execution of this Agreement. A photocopy of this authorization will be deemed as acceptable for release of financial information. FF is authorized to update such information and financial profiles from time to time as it deems appropriate.

**10. Monitoring, Recording, and Electronic Communications.** FF may choose to monitor and/or record telephone calls with any Merchant and its owners, employees, and agents. By signing this Agreement, each Merchant agrees that any call between FF and any Merchant or its representatives may be monitored and/or recorded. Each Merchant and each Guarantor grants access for FF to enter any Merchant's premises and to observe any Merchant's premises without any prior notice to any Merchant at any time after execution of this Agreement.

FF may use automated telephone dialing, text messaging systems, and e-mail to provide messages to Merchant(s), Owner(s) (Owner being defined as each person who signs this Agreement on behalf of a Merchant), and Guarantor(s) about Merchant(s)'s account. Telephone messages may be played by a machine automatically when the telephone is answered, whether answered by an Owner, a Guarantor, or someone else. These messages may also be recorded by the recipient's answering machine or voice mail. Each Merchant, each Owner, and each Guarantor gives FF permission to call or send a text message to any telephone number given to FF in connection with this Agreement and to play pre-recorded messages and/or send text messages with information about this Agreement and/or any Merchant's account over the phone. Each Merchant, each Owner, and each Guarantor also gives FF permission to communicate such information to them by e-mail. Each Merchant, each Owner, and each Guarantor agree that FF will not be liable to any of them for any such calls or electronic communications, even if information is communicated to an unintended recipient. Each Merchant, each Owner, and each Guarantor acknowledge that when they receive such calls or electronic communications, they may incur a charge

**I have read and agree to the terms and conditions set forth above:**

DocuSigned by:

*RONNIE FRANK WALRAVEN JR*

190D4E5D0D8B459...

Name and Title: RONNIE FRANK WALRAVEN JR          Date:     6/10/2025

DocuSign Envelope ID: FE74E51-0A7R43832RBD5731ADD1A08

Case 1:26-cv-03849-MKV    Document 1-3    Filed 05/08/26    Page 16 of 118

## STANDARD MERCHANT CASH ADVANCE AGREEMENT

from the company that provides them with telecommunications, wireless, and/or Internet services, and that FF has no liability for any such charges.

**11. Accuracy of Information Furnished by Merchant and Investigation Thereof.** To the extent set forth herein, each of the parties is obligated upon his, her, or its execution of the Agreement to all terms of the Agreement. Each Merchant and each Owner signing this Agreement represent that he or she is authorized to sign this Agreement for each Merchant, legally binding said Merchant to its obligations under this Agreement and that the information provided herein and in all of FF's documents, forms, and recorded interview(s) is true, accurate, and complete in all respects. FF may produce a monthly statement reflecting the delivery of the Specified Percentage of Receivables from Merchant(s) to FF. An investigative report may be made in connection with the Agreement. Each Merchant and each Owner signing this Agreement authorize FF, its agents and representatives, and any credit-reporting agency engaged by FF, to (i) investigate any references given or any other statements obtained from or about each Merchant or any of its Owners for the purpose of this Agreement, and (ii) pull credit report at any time now or for so long as any Merchant and/or Owners(s) continue to have any obligation to FF under this Agreement or for FF's ability to determine any Merchant's eligibility to enter into any future agreement with FF. Any misrepresentation made by any Merchant or Owner in connection with this Agreement may constitute a separate claim for fraud or intentional misrepresentation.

*Authorization for soft pulls:* Each Merchant and each Owner understands that by signing this Agreement, they are providing 'written instructions' to FF under the Fair Credit Reporting Act, authorizing FF to obtain information from their personal credit profile or other information from Experian, TransUnion, and Equifax. Each Merchant and each Guarantor authorizes FF to obtain such information solely to conduct a pre-qualification for credit.

*Authorization for hard pulls:* Each Merchant and each Owner understands that by signing this Agreement, they are providing 'written instructions' to FF under the Fair Credit Reporting Act, authorizing FF to obtain information from their personal credit profile or other information from Experian, TransUnion, and Equifax. Each Merchant and each Guarantor authorizes FF to obtain such information in accordance with a merchant cash advance application.

**12. Transactional History.** Each Merchant authorizes its bank to provide FF with its banking and/or credit card processing history.

**13. Indemnification.** Each Merchant and each Guarantor jointly and severally indemnify and hold harmless each Merchant's credit card and check processors (collectively, "Processor") and Processor's officers, directors, and shareholders against all losses, damages, claims, liabilities, and expenses (including reasonable attorney and expert fees) incurred by Processor resulting from (a) claims asserted by FF for monies owed to FF from any Merchant and (b) actions taken by any Processor in reliance upon information or instructions provided by FF.

**14. No Liability.** In no event will FF be liable for any claims asserted by any Merchant under any legal theory for lost profits, lost revenues, lost business opportunities, exemplary, punitive, special, incidental, indirect, or consequential damages, each of which is waived by each Merchant and each Guarantor.

**15. Sale of Receivables.** Each Merchant and FF agree that the Purchase Price under this Agreement is in exchange for the Receivables Purchased Amount and that such Purchase Price is not intended to be, nor shall it be construed as a loan from FF to any Merchant. FF is entering into this Agreement knowing the risks that each Merchant's business may decline or fail, resulting in FF not receiving the Receivables Purchased Amount. Each Merchant agrees that the Purchase Price in exchange for the Receivables pursuant to this Agreement equals the fair market value of such Receivables. FF has purchased and shall own all the Receivables described in this Agreement up to the full Receivables Purchased Amount as the Receivables are created. Payments made to FF in respect to the full amount of the Receivables shall be conditioned upon each Merchant's sale of products and services and the payment therefor by each Merchant's customers in the manner provided in this Agreement. Although certain jurisdictions require the disclosure of an Annual Percentage Rate or APR in connection with this Agreement, those disclosures do not change the fact that the transaction encompassed by this Agreement is not a loan and does not have an interest rate.

**16. Power of Attorney.** Each Merchant irrevocably appoints FF as its agent and attorney-in-fact with full authority

**I have read and agree to the terms and conditions set forth above:**

DocuSigned by:

*RONNIE FRANK WALRAVEN JR*

190D4E5D0D8B459...

Name and Title: RONNIE FRANK WALRAVEN JR          Date:    6/10/2025

Case 1:26-cv-03849-MKV    Document 1-3    Filed 05/08/26    Page 17 of 118

Page **5** of **20**

## STANDARD MERCHANT CASH ADVANCE AGREEMENT

to take any action or execute any instrument or document to settle all obligations due to FF, or, if FF considers an Event of Default to have taken place under Section 34, to settle all obligations due to FF from each Merchant, including without limitation (i) to obtain and adjust insurance; (ii) to collect monies due or to become due under or in respect of any of the Collateral (which is defined in Section 33); (iii) to receive, endorse and collect any checks, notes, drafts, instruments, documents, or chattel paper in connection with clause (i) or clause (ii) above; (iv) to sign each Merchant's name on any invoice, bill of lading, or assignment directing customers or account debtors to make payment directly to FF; and (v) to file any claims or take any action or institute any proceeding which FF may deem necessary for the collection of any of the unpaid Receivables Purchased Amount from the Collateral, or otherwise to enforce its rights with respect to payment of the Receivables Purchased Amount.

**17. Protections Against Default.** The following Protections 1 through 7 may be invoked by FF, immediately and without notice to any Merchant in the event:

(a) Any Merchant takes any action to discourage the use of methods of payment ordinarily and customarily used by its customers or permits any event to occur that could have an adverse effect on the use, acceptance, or authorization of checks and credit cards for the purchase of any Merchant's services and products;

(b) Any Merchant changes its arrangements with any Processor in any way that is adverse to FF;

(c) Any Merchant changes any Processor through which the Receivables are settled to another electronic check and/or credit card processor or permits any event to occur that could cause diversion of any Merchant's check and/or credit card transactions to another such processor;

(d) Any Merchant interrupts the operation of its business (other than adverse weather, natural disasters, or acts of God) or transfers, moves, sells, disposes, or otherwise conveys its business or assets without (i) the express prior written consent of FF and (ii) the written agreement of any purchaser or transferee to the assumption of all of any Merchant's obligations under this Agreement pursuant to documentation satisfactory to FF; or

(e) Any Merchant takes any action, fails to take any action, or offers any incentive—economic or otherwise—the result of which will be to induce any customer or customers to pay for any Merchant's goods or services with any means other than checks and/or credit cards that are settled through Processor. These protections are in addition to any other remedies available to FF at law, in equity, or otherwise available pursuant to this Agreement.

(f) FF considers any Event of Default listed in Section 34 to have taken place.

Protection 1: The full uncollected Receivables Purchased Amount plus all fees due under this Agreement may become due and payable in full immediately.

Protection 2. FF may enforce the provisions of the Guarantee against Guarantor.

Protection 3. FF may enforce its security interest in the Collateral identified in Section 33.

Protection 4. FF may proceed to protect and enforce its rights and remedies by litigation or arbitration.

Protection 5. If requested by FF, Merchant shall deliver to FF an executed assignment of lease of each Merchant's premises in favor of FF. Upon breach of any provision in this Section 17, FF may exercise its rights under such assignment of lease.

Protection 6. FF may debit any Merchant's depository accounts wherever situated by means of ACH debit or electronic or facsimile signature on a computer-generated check drawn on any Merchant's bank account or otherwise, in an amount consistent with the terms of this Agreement.

Protection 7. FF will have the right, without waiving any of its rights and remedies and without notice to any Merchant and/or Guarantor, to notify each Merchant's credit card and/or check processor of the sale of Receivables hereunder and to direct such credit card processor to make payment to FF of all or any portion of the amounts received by such credit card processor on behalf of each Merchant. Each Merchant hereby grants to FF an irrevocable power-of-attorney, which power-of-attorney will be coupled with an interest, and hereby appoints FF and its representatives as each Merchant's attorney-in-fact to take any and all action necessary to direct such new or additional credit card and/or check processor to make payment to FF as contemplated by this Section.

**18. Protection of Information.** Each Merchant and each person signing this Agreement on behalf of each Merchant and/or as Owner, in respect of himself or herself personally, authorizes FF to disclose information concerning each Merchant, Owner and/or Guarantor's credit standing and business conduct to agents, affiliates, subsidiaries, and credit reporting bureaus. Each Merchant, Guarantor, and Owner hereby waives to the maximum extent permitted by law any claim

**I have read and agree to the terms and conditions set forth above:**

DocuSigned by:

*RONNIE FRANK WALRAVEN JR*

190D4E5D0D8B459...

Name and Title: RONNIE FRANK WALRAVEN JR          Date:    6/10/2025

DocuSign Envelope ID: FE74E16-0A7B436326DB-ADF9-D0D1A08-

## STANDARD MERCHANT CASH ADVANCE AGREEMENT

for damages against FF or any of its affiliates relating to any (i) investigation undertaken by or on behalf of FF as permitted by this Agreement or (ii) disclosure of information as permitted by this Agreement.

**19. Confidentiality.** Each Merchant understands and agrees that the terms and conditions of the products and services offered by FF, including this Agreement and any other FF documents (collectively, "Confidential Information") are proprietary and confidential information of FF. Accordingly, unless disclosure is required by law or court order, Merchant(s) shall not disclose Confidential Information of FF to any person other than an attorney, accountant, financial advisor, or employee of any Merchant who needs to know such information for the purpose of advising any Merchant ("Advisor"), provided such Advisor uses such information solely for the purpose of advising any Merchant and first agrees in writing to be bound by the terms of this Section 19.

**20. D/B/As.** Each Merchant hereby acknowledges and agrees that FF may be using "doing business as" or "d/b/a" names in connection with various matters relating to the transaction between FF and each Merchant, including the filing of UCC-1 financing statements and other notices or filings.

**21. Financial Condition and Financial Information.** Each Merchant represents, warrants, and covenants that its bank and financial statements, copies of which have been furnished to FF, and future statements which will be furnished hereafter at the request of FF, fairly represent the financial condition of each Merchant at such dates, and that since those dates there have been no material adverse changes, financial or otherwise, in such condition, operation, or ownership of any Merchant. Each Merchant has a continuing affirmative obligation to advise FF of any material adverse change in its financial condition, operation, or ownership.

**22. Governmental Approvals.** Each Merchant represents, warrants, and covenants that it is in compliance and shall comply with all laws and has valid permits, authorizations, and licenses to own, operate, and lease its properties and to conduct the business in which it is presently engaged.

**23. Authorization.** Each Merchant represents, warrants, and covenants that it and each person signing this Agreement on behalf of each Merchant has full power and authority to incur and perform the obligations under this Agreement, all of which have been duly authorized.

**24. Insurance.** Each Merchant represents, warrants, and covenants that it will maintain business-interruption insurance naming FF as loss payee and additional insured in amounts and against risks as are satisfactory to FF and shall provide FF proof of such insurance upon request.

**25. Electronic Check Processing Agreement.** Each Merchant represents, warrants, and covenants that it will not, without FF's prior written consent, change its Processor, add terminals, change its financial institution or bank account, or take any other action that could have any adverse effect upon any Merchant's obligations under this Agreement.

**26. Change of Name or Location.** Each Merchant represents, warrants, and covenants that it will not conduct its business under any name other than as disclosed to FF or change any place(s) of its business without prior written consent from FF.

**27. Estoppel Certificate.** Each Merchant represents, warrants, and covenants that it will, at any time, and from time to time, upon at least two day's prior notice from FF to that Merchant, execute, acknowledge, and deliver to FF and/or to any other person or entity specified by FF, a statement certifying that this Agreement is unmodified and in full force and effect (or, if there have been modifications, that the same is in full force and effect as modified and stating the modifications) and stating the dates which the Receivables Purchased Amount or any portion thereof have been paid.

**28. No Bankruptcy.** Each Merchant represents, warrants, and covenants that as of the date of this Agreement, it does not contemplate and has not filed any petition for bankruptcy protection under Title 11 of the United States Code and there has been no involuntary petition brought or pending against any Merchant. Each Merchant further warrants that it

**I have read and agree to the terms and conditions set forth above:**

DocuSigned by:

RONNIE FRANK WALRAVEN JR

190D4E5D0D8B459...

Name and Title: RONNIE FRANK WALRAVEN JR          Date:    6/10/2025

DocuSign Envelope ID: FE746E1C-0A7R436-SE5DMB-9D4F7AD61A08-

Case 1:26-cv-03849-MKV    Document 1-3    Filed 05/08/26    Page 19 of 118

## STANDARD MERCHANT CASH ADVANCE AGREEMENT

does not anticipate filing any such bankruptcy petition and it does not anticipate that an involuntary petition will be filed against it. Each Merchant further warrants that there will be no statutory presumption that it would have been insolvent on the date of this Agreement.

**29. Unencumbered Receivables.** Each Merchant represents, warrants, and covenants that it has good, complete, and marketable title to all Receivables, free and clear of any and all liabilities, liens, claims, changes, restrictions, conditions, options, rights, mortgages, security interests, equities, pledges, and encumbrances of any kind or nature whatsoever or any other rights or interests that may be inconsistent with this Agreement or adverse to the interests of FF, other than any for which FF has actual or constructive knowledge as of the date of this Agreement.

**30. Stacking.** Each Merchant represents, warrants, and covenants that it will not enter into with any party other than FF any arrangement, agreement, or commitment that relates to or involves the Receivables, whether in the form of a purchase of, a loan against, collateral against, or the sale or purchase of credits against Receivables without the prior written consent of FF.

**31. Business Purpose.** Each Merchant represents, warrants, and covenants that it is a valid business in good standing under the laws of the jurisdictions in which it is organized and/or operates, and each Merchant is entering into this Agreement for business purposes and not as a consumer for personal, family, or household purposes.

**32. Default Under Other Contracts.** Each Merchant represents, warrants, and covenants that its execution of and/or performance under this Agreement will not cause or create an event of default by any Merchant under any contract with another person or entity.

**33. Security Interest.** To secure each Merchant's payment and performance obligations to FF under this Agreement and any future agreement with FF, each Merchant hereby grants to FF a security interest in collateral (the "Collateral"), that is defined as collectively: (a) all accounts, including without limitation, all deposit accounts, accounts-receivable, and other receivables, chattel paper, documents, equipment, general intangibles, instruments, and inventory, as those terms are defined by Article 9 of the Uniform Commercial Code (the "UCC"), now or hereafter owned or acquired by any Merchant; and (b) all proceeds, as that term is defined by Article 9 of the UCC. The parties acknowledge and agree that any security interest granted to FF under any other agreement between any Merchant or Guarantor and FF (the "Cross-Collateral") will secure the obligations hereunder and under this Agreement. Negative Pledge: Each Merchant agrees not to create, incur, assume, or permit to exist, directly or indirectly, any lien on or with respect to any of the Collateral or the Cross-Collateral, as applicable.

Each Merchant agrees to execute any documents or take any action in connection with this Agreement as FF deems necessary to perfect or maintain FF's first priority security interest in the Collateral and the Cross-Collateral, including the execution of any account control agreements. Each Merchant hereby authorizes FF to file any financing statements deemed necessary by FF to perfect or maintain FF's security interest, which financing statements may contain notification that each Merchant has granted a negative pledge to FF with respect to the Collateral and the Cross-Collateral, and that any subsequent lienor may be tortiously interfering with FF's rights. Each Merchant shall be liable for and FF may charge and collect all costs and expenses, including but not limited to attorney fees, which may be incurred by FF in protecting, preserving, and enforcing FF's security interest and rights. Each Merchant further acknowledges that FF may use another legal name and/or D/B/A or an agent when designating the Secured Party when FF files the above-referenced financing statement(s).

**34. Events of Default.** An "Event of Default" may be considered to have taken place if any of the following occur:
(1) Any Merchant violates any term or covenant in this Agreement;
(2) Any representation or warranty by any Merchant in any Agreement with FF that has not been terminated proves to have been incorrect, false, or misleading in any material respect when made;
(3) Any Merchant fails to provide FF with written notice of any material change in its financial condition, operation, or ownership within seven days thereafter (unless a different notice period is specifically provided for elsewhere in this Agreement;

**I have read and agree to the terms and conditions set forth above:**

DocuSigned by:

*RONNIE FRANK WALRAVEN JR*

190D4E5D0D8B459...

Name and Title: RONNIE FRANK WALRAVEN JR          Date:    6/10/2025

DocuSign Envelope ID: FF74E51D-07A7A3862DAB-9C87-ADD4A08

## STANDARD MERCHANT CASH ADVANCE AGREEMENT

(4) the sending of notice of termination by any Merchant or Guarantor;

(5) Any Merchant transports, moves, interrupts, suspends, dissolves, or terminates its business without the prior written consent of FF other than a bankruptcy filing;

(6) Any Merchant transfers or sells all or substantially all of its assets without the prior written consent of FF;

(7) Any Merchant makes or sends notice of any intended bulk sale or transfer by any Merchant without the prior written consent of FF;

(8) Any Merchant uses multiple depository accounts without the prior written consent of FF;

(9) Any Merchant changes the Account without the prior written consent of FF;

(10) FF is not provided with updated login or password information for the Account within one business day after any such change is made by any Merchant;

(11) Any Merchant fails to send bank statements, merchant account statements, or bank login information for the Account within two business days after a written request for same is made by FF;

(12) Any Merchant performs any act that reduces the value of any Collateral granted under this Agreement;

(13) Any Merchant fails to deposit its Receivables into the Account;

(14) Any Merchant causes any ACH debit to the Account by FF to be blocked or stopped without providing any advance written notice to FF, which notice may be given by e-mail to office@foreverfunding.co; or

(15) Any Merchant prevents FF from collecting any part of the Receivables Purchased Amount;

(16) Any Merchant causes any ACH debit to the Account to be stopped or otherwise returned that would result in an ACH Return Code of R08, R10, or R29 and that Merchant does not within two business days thereafter provide FF with written notice thereof explaining why that Merchant caused the ACH debit to be stopped or otherwise returned, which notice may be given by e-mail to office@foreverfunding.co; or

(17) Any Merchant defaults under any of the terms, covenants, and conditions of any other agreement with FF.

**35. Remedies.** In case any Event of Default occurs and is not waived, FF may proceed to protect and enforce its rights or remedies by suit in equity or by action at law, or both, whether for the specific performance of any covenant, agreement, or other provision contained herein, or to enforce the discharge of each Merchant's obligations hereunder, or any other legal or equitable right or remedy. All rights, powers, and remedies of FF in connection with this Agreement, including each Protection listed in Section 17, may be exercised at any time by FF after the occurrence of an Event of Default, are cumulative and not exclusive, and will be in addition to any other rights, powers, or remedies provided by law or equity. In addition to the foregoing, in case any Event of Default occurs and is not waived, FF will be entitled to the issuance of an injunction, restraining order, or other equitable relief in FF's favor, subject to court or arbitrator approval, restraining each Merchant's accounts and/or receivables up to the amount due to FF as a result of the Event of Default, and each Merchant will be deemed to have consented to the granting of an application for the same to any court or arbitral tribunal of competent jurisdiction without any prior notice to any Merchant or Guarantor and without FF being required to furnish a bond or other undertaking in connection with the application.

**36. Required Notifications.** Each Merchant is required to give FF written notice at least one day prior to any filing under Title 11 of the United States Code. Merchant(s) are required to give FF at least seven days' written notice prior to the closing of any sale of all or substantially all of any Merchant's assets or stock.

**37. Assignment.** This Agreement shall be binding upon and inure to the benefit of the parties and their respective successors and assigns, except that Merchant(s) shall not have the right to assign its rights hereunder or any interest herein without the prior written consent of FF, which consent may be withheld in FF's sole discretion. FF may assign, transfer, or sell its rights under this Agreement, including, without limitation, its rights to receive the Receivables Purchased Amount, and its rights under Section 33 of this Agreement, the Guarantee, and any other agreement, instrument, or document executed in connection with the transactions contemplated by this Agreement (a "Related Agreement"), or delegate its duties hereunder or thereunder, either in whole or in part. From and after the effective date of any such assignment or transfer by FF, whether or not any Merchant has actual notice thereof, this Agreement and each Related Agreement shall be deemed amended and modified (without the need for any further action on the part of any Merchant or FF) such that the assignee shall be deemed a party to this Agreement and any such Related Agreement and, to the extent provided in the assignment document between FF and such assignee (the "Assignment Agreement"), have the rights and obligations of FF

**I have read and agree to the terms and conditions set forth above:**

DocuSigned by:

*RONNIE FRANK WALRAVEN JR*

190D4E5D0D8B459...

Name and Title: RONNIE FRANK WALRAVEN JR          Date:    6/10/2025

FILED: NEW YORK COUNTY CLERK 03/12/2026 02:56 PM
INDEX NO. 651550/2026
NYSCEF DOC. NO. 2
RECEIVED NYSCEF: 03/12/2026

Case 1:26-cv-03849-MKV    Document 1-3    Filed 05/08/26    Page 21 of 118

Page **9** of **20**

## STANDARD MERCHANT CASH ADVANCE AGREEMENT

under this Agreement and such Related Agreements with respect to the portion of the Receivables Purchased Amount set forth in such Assignment Agreement, including but not limited to rights in the Receivables, Collateral and Additional Collateral, the benefit of each Guarantor's guaranty regarding the full and prompt performance of every obligation that is a subject of the Guarantee, FF's rights under Section 17 of this Agreement (Protections Against Default), and to receive damages from any Merchant following a breach of this Agreement by any Merchant. In connection with such assignment, FF may disclose all information that FF has relating to any Merchant or its business. Each Merchant agrees to acknowledge any such assignment in writing upon FF's request.

**38. Notices.** All notices, requests, consents, demands, and other communications hereunder shall be delivered by certified mail, return receipt requested, or by overnight delivery with signature confirmation to the respective parties to this Agreement at their addresses set forth in this Agreement and shall become effective only upon receipt. Written notice may also be given to any Merchant or Guarantor by e-mail to the E-mail Address listed on the first page of this Agreement. Each Merchant must set its spam or junk mail filter to accept e-mails sent by office@foreverfunding.co and its domain. This Section is not applicable to service of process or notices in any legal proceedings.

**39. Choice of Law.** Each Merchant acknowledges and agrees that this Agreement was made in the State of New York, that the Purchase Price is being paid by FF in the State of New York, that the Receivables Purchased Amount is being delivered to FF in the State of New York, and that the State of New York has a reasonable relationship to the transactions encompassed by this Agreement. This Agreement and the relationship between FF, each Merchant, and each Guarantor will be governed by and construed in accordance with the laws of the State of New York, without regard to any applicable principles of conflict of laws.

**40. Forum and Venue Selection.** Any litigation relating to this Agreement or involving FF on one side and any Merchant or any Guarantor on the other must be commenced and maintained in any court located in the Counties of Nassau, New York, or Sullivan in the State of New York (the "Acceptable Forums"). The parties agree that the Acceptable Forums are convenient, submit to the jurisdiction of the Acceptable Forums, and waive any and all objections to the jurisdiction or venue of the Acceptable Forums. If any litigation is initiated in any other venue or forum, the parties waive any right to oppose any motion or application made by any party to transfer such litigation to an Acceptable Forum. The parties agree that this Agreement encompasses the transaction of business within the City of New York and that the Civil Court of the City of New York ("Civil Court") will have jurisdiction over any litigation relating to this Agreement that is within the jurisdictional limit of the Civil Court. In addition to the Acceptable Forums, any action or proceeding to enforce a judgment or arbitration award against any Merchant or Guarantor or to restrain or collect any amount due to FF may be commenced and maintained in any other court of competent jurisdiction.

**41. Jury Waiver.** The parties agree to waive trial by jury in any dispute between them.

**42. Counterclaim Waiver.** In any litigation or arbitration commenced by FF, each Merchant and each Guarantor will not be permitted to interpose any counterclaim.

**43. Statutes of Limitations.** Each Merchant and each Guarantor agree that any claim that is not asserted against FF within one year of its accrual will be time barred.

**44. Costs.** Each Merchant and each Guarantor must pay all of FF's reasonable costs associated with a breach by any Merchant of the covenants in this Agreement and the enforcement thereof, including but not limited to collection agency fees, attorney fees, which may include a contingency fee of up to 40% of the amount claimed, expert witness fees, and costs of suit.

**45. Prejudgment and Postjudgment Interest.** If FF becomes entitled to the entry of a judgment against any Merchant or any Guarantor, then FF will be entitled to the recovery of prejudgment interest at a rate of 24% per annum (or 16% per annum if any Merchant is a sole proprietorship), or the maximum rate permitted by applicable law if less, and upon entry of any such judgment, it will accrue interest at a postjudgment rate of 24% per annum (or 16% per annum if any

**I have read and agree to the terms and conditions set forth above:**

DocuSigned by:

RONNIE FRANK WALRAVEN JR

190D4E5D0D8B459...

Name and Title: RONNIE FRANK WALRAVEN JR                Date:    6/10/2025

Case 1:26-cv-03849-MKV    Document 1-3    Filed 05/08/26    Page 22 of 118

## STANDARD MERCHANT CASH ADVANCE AGREEMENT

Merchant is a sole proprietorship), or the maximum rate permitted by applicable law if less, which rate will govern over the statutory rate of interest up until actual satisfaction of the judgment.

**46. Legal Fees.** If FF prevails in any litigation or arbitration with any Merchant or any Guarantor, then that Merchant and/or Guarantor must pay FF's reasonable attorney fees, which may include a contingency fee of up to 40% of the amount claimed.

**47. Class Action Waiver.** FF, each Merchant, and each Guarantor agree that they may bring claims against each other relating to this Agreement only in their individual capacities, and not as a plaintiff or class action member in any purported class or representative proceedings.

**48. Arbitration.** Any action or dispute relating to this Agreement or involving FF on one side and any Merchant or any Guarantor on the other, including, but not limited to issues of arbitrability, will, at the option of any party to such action or dispute, be determined by arbitration before a single arbitrator. The arbitration will be administered either by Arbitration Services, Inc. under its Commercial Arbitration Rules as are in effect at that time, which rules are available at www.arbitrationservicesinc.com, or by Mediation & Commercial Arbitration, Inc. under its Commercial Arbitration Rules as are in effect at that time, which rules are available at www.mcarbitration.org. Once an arbitration is initiated with one of these arbitral forums, it must be maintained exclusively before that arbitral forum and the other arbitral forum specified herein may not be used. Any arbitration relating to this Agreement must be conducted in the Counties of Nassau, New York, Queens, or Kings in the State of New York. Notwithstanding any provision of any applicable arbitration rules, any witness in an arbitration who does not reside in or have a place for the regular transaction of business located in New York City or the Counties of Nassau, Suffolk, or Westchester in the State of New York will be permitted to appear and testify remotely by telephone or video conferencing. In case any Event of Default occurs and is not waived, each Merchant and each Guarantor consents to FF making an application to the arbitrator, without notice to any Merchant or any Guarantor, for the issuance of an injunction, restraining order, or other equitable relief in FF's favor, subject to court or arbitrator approval, restraining each Merchant's accounts and/or receivables up to the amount due to FF as a result of the Event of Default.

Each Merchant acknowledges and agrees that this Agreement is the product of communications conducted by telephone and the Internet, which are instrumentalities of interstate commerce, that the transactions contemplated under this Agreement will be made by wire transfer and ACH, which are also instrumentalities of interstate commerce, and that this Agreement therefore evidences a transaction affecting interstate commerce. Accordingly, notwithstanding any provision in this Agreement to the contrary, all matters of arbitration relating to this Agreement will be governed by and construed in accordance with the provisions of the Federal Arbitration Act, codified as Title 9 of the United States Code, however any application for injunctive relief in aid of arbitration or to confirm an arbitration award may be made under Article 75 of the New York Civil Practice Law and Rules. The arbitration agreement contained in this Section may also be enforced by any employee, agent, attorney, member, manager, officer, subsidiary, affiliate entity, successor, or assign of FF.

**49. Service of Process.** Each Merchant and each Guarantor consent to service of process and legal notices made by First Class or Priority Mail delivered by the United States Postal Service and addressed to the Contact Address set forth on the first page of this Agreement or any other address(es) provided in writing to FF by any Merchant or any Guarantor, and unless applicable law or rules provide otherwise, any such service will be deemed complete upon dispatch. Each Merchant and each Guarantor agrees that it will be precluded from asserting that it did not receive service of process or any other notice mailed to the Contact Address set forth on the first page of this Agreement if it does not furnish a certified mail return receipt signed by FF demonstrating that FF was provided with notice of a change in the Contact Address.

**50. Survival of Representation, etc.** All representations, warranties, and covenants herein shall survive the execution and delivery of this Agreement and shall continue in full force until all obligations under this Agreement shall have been satisfied in full and this Agreement shall have terminated.

**51. Waiver.** No failure on the part of FF to exercise, and no delay in exercising, any right under this Agreement, shall operate as a waiver thereof, nor shall any single or partial exercise of any right under this Agreement preclude any other or further exercise thereof or the exercise of any other right. The remedies provided hereunder are cumulative and

**I have read and agree to the terms and conditions set forth above:**

DocuSigned by:

*RONNIE FRANK WALRAVEN JR*

190D4E5D0D8B459...

Name and Title: RONNIE FRANK WALRAVEN JR          Date:    6/10/2025

Case 1:26-cv-03849-MKV    Document 1-3    Filed 05/08/26    Page 23 of 118

## STANDARD MERCHANT CASH ADVANCE AGREEMENT

not exclusive of any remedies provided by law or equity.

**52. Independent Sales Organizations/Brokers.** Each Merchant and each Guarantor acknowledge that it may have been introduced to FF by or received assistance in entering into this Agreement or its Guarantee from an independent sales organization or broker ("ISO"). Each Merchant and each Guarantor agree that any ISO is separate from and is not an agent or representative of FF. Each Merchant and each Guarantor acknowledge that FF is not bound by any promises or agreements made by any ISO that are not contained within this Agreement. Each Merchant and each Guarantor exculpate from liability and agree to hold harmless and indemnify FF and its officers, directors, members, shareholders, employees, and agents from and against all losses, damages, claims, liabilities, and expenses (including reasonable attorney and expert fees) incurred by any Merchant or any Guarantor resulting from any act or omission by any ISO. Each Merchant and each Guarantor acknowledge that any fee that they paid to any ISO for its services is separate and apart from any payment under this Agreement. Each Merchant and each Guarantor acknowledge that FF does not in any way require the use of an ISO and that any fees charged by any ISO are not required as a condition or incident to this Agreement.

**53. Modifications; Agreements.** No modification, amendment, waiver, or consent of any provision of this Agreement shall be effective unless the same shall be in writing and signed by all parties.

**54. Severability.** If any provision of this Agreement is deemed invalid or unenforceable as written, it will be construed, to the greatest extent possible, in a manner which will render it valid and enforceable, and any limitation on the scope or duration of any such provision necessary to make it valid and enforceable will be deemed to be part thereof. If any provision of this Agreement is deemed void, all other provisions will remain in effect.

**I have read and agree to the terms and conditions set forth above:**

DocuSigned by:

*RONNIE FRANK WALRAVEN JR*

190D4E5D0D8B459...

Name and Title: RONNIE FRANK WALRAVEN JR          Date:    6/10/2025

Case 1:26-cv-03849-MKV   Document 1-3   Filed 05/08/26   Page 24 of 118

## STANDARD MERCHANT CASH ADVANCE AGREEMENT

**55. Headings.** Headings of the various articles and/or sections of this Agreement are for convenience only and do not necessarily define, limit, describe, or construe the contents of such articles or sections.

**56. Attorney Review.** Each Merchant acknowledges that it has had an opportunity to review this Agreement and all addenda with counsel of its choosing before signing the documents or has chosen not to avail itself of the opportunity to do so.

**57. Entire Agreement.** This Agreement, inclusive of all addenda, if any, executed simultaneously herewith constitutes the full understanding of the parties to the transaction herein and may not be amended, modified, or canceled except in writing signed by all parties. Should there arise any conflict between this Agreement and any other document preceding it, this Agreement will govern. This Agreement does not affect any previous agreement between the parties unless such an agreement is specifically referenced herein. This Agreement will not be affected by any subsequent agreement between the parties unless this Agreement is specifically referenced therein. FF will not be permitted to enforce any of its rights under this Agreement if so expressed by in writing by Gene Rosen's Law Firm.

**58. Counterparts; Fax and Electronic Signatures.** This Agreement may be executed electronically and in counterparts. Facsimile and electronic copies of this Agreement will have the full force and effect of an original.

### EACH UNDERSIGNED HEREBY ACCEPTS THE TERMS OF THIS AGREEMENT

**FOR THE MERCHANT/OWNER (#1)**

By: RONNIE FRANK WALRAVEN JR
    (Print Name and Title)

DocuSigned by:
*RONNIE FRANK WALRAVEN JR*
190D4E5D0D8B459...
(Signature)

SS# ▮▮▮▮▮▮                                Driver License Number ▮▮▮▮▮

**FOR THE MERCHANT/OWNER (#2)**

By:
    (Print Name and Title)                              (Signature)

SS#                                        Driver License Number

Approved for FOREVER FUNDING LLC by:

Case 1:26-cv-03849-MKV   Document 1-3   Filed 05/08/26   Page 24 of 118

DocuSign Envelope ID: FE74F43D-0A7B-438C-9DAB-9D8F7AD01A08

# STANDARD MERCHANT CASH ADVANCE AGREEMENT

# GUARANTEE

**G1. Personal Guarantee of Performance.** This is a personal guaranty of performance, dated Jun. 10, 2025, of the Standard Merchant Cash Advance Agreement, dated Jun. 10, 2025 ("Agreement"), inclusive of all addenda, if any, executed simultaneously therewith, by and between FOREVER FUNDING LLC ("FF") and ER OF TEXAS, LLC      ("Merchant"). Each undersigned Guarantor hereby guarantees each Merchant's performance of all of the representations, warranties, and covenants made by each Merchant to FF in the Agreement, inclusive of all addenda, if any, executed simultaneously herewith, as the Agreement may be renewed, amended, extended, or otherwise modified (the "Guaranteed Obligations"). Each Guarantor's obligations are due at the time of any breach by any Merchant of any representation, warranty, or covenant made by any Merchant in the Agreement.

**G2. Communications.** FF may use automated telephone dialing, text messaging systems, and e-mail to provide messages to Guarantor(s) about Merchant(s)'s account. Telephone messages may be played by a machine automatically when the telephone is answered, whether answered by an Owner, a Guarantor, or someone else. These messages may also be recorded by the recipient's answering machine or voice mail. Each Guarantor gives FF permission to call or send a text message to any telephone number given to FF in connection with this Agreement and to play pre-recorded messages and/or send text messages with information about this Agreement and/or any Merchant's account over the phone. Each Guarantor also gives FF permission to communicate such information to them by e-mail. Each Guarantor agrees that FF will not be liable to any of them for any such calls or electronic communications, even if information is communicated to an unintended recipient. Each Guarantor acknowledges that when they receive such calls or electronic communications, they may incur a charge from the company that provides them with telecommunications, wireless, and/or Internet services, and that FF has no liability for any such charges.

**G3. Guarantor Waivers.** If FF considers any Event of Default to have taken place under the Agreement, then FF may enforce its rights under this Guarantee without first seeking to obtain payment from any Merchant, any other guarantor, or any Collateral, Additional Collateral, or Cross-Collateral FF may hold pursuant to this Guarantee or any other agreement or guarantee. FF does not have to notify any Guarantor of any of the following events and Guarantor(s) will not be released from its obligations under this Guarantee even if it is not notified of: (i) any Merchant's failure to pay timely any amount owed under the Agreement; (ii) any adverse change in any Merchant's financial condition or business; (iii) any sale or other disposition of any collateral securing the Guaranteed Obligations or any other guarantee of the Guaranteed Obligations; (iv) FF's acceptance of the Agreement with any Merchant; and (v) any renewal, extension, or other modification of the Agreement or any Merchant's other obligations to FF. In addition, FF may take any of the following actions without releasing any Guarantor from any obligations under this Guarantee: (i) renew, extend, or otherwise modify the Agreement or any Merchant's other obligations to FF; (ii) if there is more than one Merchant, release a Merchant from its obligations to FF such that at least one Merchant remains obligated to FF; (iii) sell, release, impair, waive, or otherwise fail to realize upon any collateral securing the Guaranteed Obligations or any other guarantee of the Guaranteed Obligations; and (iv) foreclose on any collateral securing the Guaranteed Obligations or any other guarantee of the Guaranteed Obligations in a manner that impairs or precludes the right of Guarantor to obtain reimbursement for payment under the Agreement. Until the Receivables Purchased Amount and each Merchant's other obligations to FF under the Agreement and this Guarantee are paid in full, each Guarantor shall not seek reimbursement from any Merchant or any other guarantor for any amounts paid by it under the Agreement. Each Guarantor permanently waives and shall not seek to exercise any of the following rights that it may have against any Merchant, any other guarantor, or any collateral provided by any Merchant or any other guarantor, for any amounts paid by it or acts performed by it under this Guarantee: (i) subrogation; (ii) reimbursement; (iii) performance; (iv) indemnification; or (v) contribution.

**G4. Joint and Several Liability.** The obligations hereunder of the persons or entities constituting each Guarantor under this Guarantee are joint and several.

**G5. Injunctive Relief.** In case any Event of Default occurs and is not waived, FF will be entitled to the issuance of an injunction, restraining order, or other equitable relief in FF's favor, subject to court or arbitrator approval, restraining each Guarantor's accounts and/or receivables up to the amount due to FF as a result of the Event of Default, and each Guarantor

**I have read and agree to the terms and conditions set forth above:**

DocuSigned by:

*RONNIE FRANK WALRAVEN JR*

190D4E5D0D8B459...

Name and Title: RONNIE FRANK WALRAVEN JR            Date:    6/10/2025

FILED: NEW YORK COUNTY CLERK 03/12/2026 02:56 PM
INDEX NO. 651550/2026

DocuSign Envelope ID: Case 1:26-cv-03849-MKV    Document 1-3    Filed 05/08/26    Page 26 of 118

NYSCEF DOC. NO. 2
RECEIVED NYSCEF: 03/12/2026

Page **14** of **20**

### STANDARD MERCHANT CASH ADVANCE AGREEMENT

will be deemed to have consented to the granting of an application for the same to any court or arbitral tribunal of competent jurisdiction without any prior notice to any Merchant or Guarantor and without FF being required to furnish a bond or other undertaking in connection with the application.

**G6. Choice of Law.** Each Guarantor acknowledges and agrees that the Agreement and this Guarantee were made in the State of New York, that the Purchase Price is being paid by FF in the State of New York, that the Receivables Purchased Amount is being delivered to FF in the State of New York, and that the State of New York has a reasonable relationship to the transactions encompassed by the Agreement and this Guarantee. This Guarantee and the relationship between FF, each Merchant, and each Guarantor will be governed by and construed in accordance with the laws of the State of New York, without regard to any applicable principles of conflict of laws.

**G7. Forum and Venue Selection.** Any litigation relating to this Agreement or this Guarantee or involving FF on one side and any Merchant or any Guarantor on the other must be commenced and maintained in any court located in the Counties of Nassau, New York, or Sullivan in the State of New York (the "Acceptable Forums"). The parties agree that the Acceptable Forums are convenient, submit to the jurisdiction of the Acceptable Forums, and waive any and all objections to the jurisdiction or venue of the Acceptable Forums. If any litigation is initiated in any other venue or forum, the parties waive any right to oppose any motion or application made by any party to transfer such litigation to an Acceptable Forum. The parties agree that this Guarantee encompasses the transaction of business within the City of New York and that the Civil Court of the City of New York ("Civil Court") will have jurisdiction over any litigation relating to this Guarantee that is within the jurisdictional limit of the Civil Court. In addition to the Acceptable Forums, any action or proceeding to enforce a judgment or arbitration award against any Merchant or Guarantor or to restrain or collect any amount due to FF may be commenced and maintained in any other court of competent jurisdiction.

**G8. Jury Waiver.** Each Guarantor agrees to waive trial by jury in any dispute with FF.

**G9. Counterclaim Waiver.** In any litigation or arbitration commenced by FF, each Merchant and each Guarantor will not be permitted to interpose any counterclaim.

**G10. Statutes of Limitations.** Each Merchant and each Guarantor agree that any claim that is not asserted against FF within one year of its accrual will be time barred.

**G11. Costs.** Each Merchant and each Guarantor must pay all of FF's reasonable costs associated with a breach by any Merchant of the covenants in this Agreement or this Guarantee and the enforcement thereof, including but not limited to collection agency fees, expert witness fees, and costs of suit.

**G12. Prejudgment and Postjudgment Interest.** If FF becomes entitled to the entry of a judgment against any Merchant or any Guarantor, then FF will be entitled to the recovery of prejudgment interest at a rate of 24% per annum (or 16% per annum if any Merchant is a sole proprietorship), or the maximum rate permitted by applicable law if less, and upon entry of any such judgment, it will accrue interest at a postjudgment rate of 24% per annum (or 16% per annum if any Merchant is a sole proprietorship), or the maximum rate permitted by applicable law if less, which rate will govern over the statutory rate of interest up until actual satisfaction of the judgment.

**G13. Legal Fees.** If FF prevails in any litigation or arbitration with any Merchant or any Guarantor, then that Merchant and/or Guarantor must pay FF's reasonable attorney fees, which may include a contingency fee of up to 40% of the amount claimed.

**G14. Class Action Waiver.** FF, each Merchant, and each Guarantor agree that they may bring claims against each other relating to this Agreement only in their individual capacities, and not as a plaintiff or class action member in any purported class or representative proceedings.

**G15. Arbitration.** Any action or dispute relating to this Agreement or this Guarantee or involving FF on one side

**I have read and agree to the terms and conditions set forth above:**

DocuSigned by:

*RONNIE FRANK WALRAVEN JR*

190D4E5D0D8B459...

Name and Title: RONNIE FRANK WALRAVEN JR          Date:     6/10/2025

DocuSign Envelope ID: EF24E4F0-0A7A-45E3-AD4B-9F8F7ADD01A9
Case 1:26-cv-03849-MKV    Document 1-3    Filed 05/08/26    Page 27 of 118

Page **15** of **20**

## STANDARD MERCHANT CASH ADVANCE AGREEMENT

and any Merchant or any Guarantor on the other, including, but not limited to issues of arbitrability, will, at the option of any party to such action or dispute, be determined by arbitration before a single arbitrator. The arbitration will be administered either by Arbitration Services, Inc. under its Commercial Arbitration Rules as are in effect at that time, which rules are available at www.arbitrationservicesinc.com, or by Mediation & Commercial Arbitration, Inc. under its Commercial Arbitration Rules as are in effect at that time, which rules are available at www.mcarbitration.org. Once an arbitration is initiated with one of these arbitral forums, it must be maintained exclusively before that arbitral forum and the other arbitral forum specified herein may not be used. Any arbitration relating to this Agreement or this Guarantee must be conducted in the Counties of Nassau, New York, Queens, or Kings in the State of New York. Notwithstanding any provision of any applicable arbitration rules, any witness in an arbitration who does not reside in or have a place for the regular transaction of business located in New York City or the Counties of Nassau, Suffolk, or Westchester in the State of New York will be permitted to appear and testify remotely by telephone or video conferencing. In case any Event of Default occurs and is not waived, each Guarantor consents to FF making an application to the arbitrator, without notice to any Merchant or any Guarantor, for the issuance of an injunction, restraining order, or other equitable relief in FF's favor, subject to court or arbitrator approval, restraining each Guarantor's accounts and/or receivables up to the amount due to FF as a result of the Event of Default.

Each Guarantor acknowledges and agrees that the Agreement and this Guarantee are the product of communications conducted by telephone and the Internet, which are instrumentalities of interstate commerce, that the transactions contemplated under the Agreement and this Guarantee will be made by wire transfer and ACH, which are also instrumentalities of interstate commerce, and that the Agreement and this Guarantee therefore evidence a transaction affecting interstate commerce. Accordingly, notwithstanding any provision in the Agreement or this Guarantee to the contrary, all matters of arbitration relating to the Agreement or this Guarantee will be governed by and construed in accordance with the provisions of the Federal Arbitration Act, codified as Title 9 of the United States Code, however any application for injunctive relief in aid of arbitration or to confirm an arbitration award may be made under Article 75 of the New York Civil Practice Law and Rules. The arbitration agreement contained in this Section may also be enforced by any employee, agent, attorney, member, manager, officer, subsidiary, affiliate entity, successor, or assign of FF.

**G16. Service of Process.** Each Merchant and each Guarantor consent to service of process and legal notices made by First Class or Priority Mail delivered by the United States Postal Service and addressed to the Contact Address set forth on the first page of the Agreement or any other address(es) provided in writing to FF by any Merchant or any Guarantor, and unless applicable law or rules provide otherwise, any such service will be deemed complete upon dispatch. Each Merchant and each Guarantor agrees that it will be precluded from asserting that it did not receive service of process or any other notice mailed to the Contact Address set forth on the first page of the Agreement if it does not furnish a certified mail return receipt signed by FF demonstrating that FF was provided with notice of a change in the Contact Address.

**G17. Severability.** If any provision of this Guarantee is deemed invalid or unenforceable as written, it will be construed, to the greatest extent possible, in a manner which will render it valid and enforceable, and any limitation on the scope or duration of any such provision necessary to make it valid and enforceable will be deemed to be part thereof. If any provision of this Guarantee is deemed void, all other provisions will remain in effect.

**G18. Survival.** The provisions of Sections G2, G3, G4, G5, G6, G7, G8, G9, G10, G11, G12, G13, G14, G15, G16, G17, G18, G19, G20, G21, and G22 shall survive any termination of this Guarantee.

**G19. Headings.** Headings of the various articles and/or sections of this Guarantee are for convenience only and do not necessarily define, limit, describe, or construe the contents of such articles or sections.

**G20. Attorney Review.** Each Guarantor acknowledges that it has had an opportunity to review this Guarantee, the Agreement, and all addenda with counsel of its choosing before signing the documents or has chosen not to avail itself of the opportunity to do so.

**G21. Entire Agreement.** This Guarantee, inclusive of all addenda, if any, executed simultaneously herewith may not be amended, modified, or canceled except in writing signed by all parties. Should there arise any conflict between this Guarantee and any other document preceding it, this Guarantee will govern. This Guarantee does not affect any previous

**I have read and agree to the terms and conditions set forth above:**

DocuSigned by:

RONNIE FRANK WALRAVEN JR

190D4E5D0D8B459...

Name and Title: RONNIE FRANK WALRAVEN JR          Date:     6/10/2025

DocuSign Envelope ID: FF748-FE-0A7R436-z6D4B-9F8E7-DB61A03-

Case 1:26-cv-03849-MKV    Document 1-3    Filed 05/08/26    Page 28 of 118

### STANDARD MERCHANT CASH ADVANCE AGREEMENT

agreement between the parties unless such an agreement is specifically referenced in the Agreement or herein. This Guarantee will not be affected by any subsequent agreement between the parties unless this Guarantee is specifically referenced therein.

**I have read and agree to the terms and conditions set forth above:**

DocuSigned by:

RONNIE FRANK WALRAVEN JR

190D4E5D0D8B459...

Name and Title: RONNIE FRANK WALRAVEN JR        Date:    6/10/2025

Docusign Envelope ID: FF74B15-0A7R438B28F4B-9D8E7BD01AC8

Case 1:26-cv-03849-MKV    Document 1-3    Filed 05/08/26    Page 29 of 118

Page **17** of **20**

## STANDARD MERCHANT CASH ADVANCE AGREEMENT

**G22. Counterparts; Fax and Electronic Signatures.** This Guarantee may be executed electronically and in counterparts. Facsimile and electronic copies of this Guarantee will have the full force and effect of an original.

THE TERMS, DEFINITIONS, CONDITIONS AND INFORMATION SET FORTH IN THE "STANDARD MERCHANT CASH ADVANCE AGREEMENT", INCLUDING THE "TERMS AND CONDITIONS", ARE HEREBY INCORPORATED IN AND MADE A PART OF THIS GUARANTEE. CAPITALIZED TERMS NOT DEFINED IN THIS GUARANTEE SHALL HAVE THE MEANING SET FORTH IN THE STANDARD MERCHANT CASH ADVANCE AGREEMENT, INCLUDING THE TERMS AND CONDITIONS.

### EACH UNDERSIGNED HEREBY ACCEPTS THE TERMS OF THIS GUARANTEE

**GUARANTOR (#1)**

By: RONNIE FRANK WALRAVEN JR

(Print Name)

DocuSigned by:

RONNIE FRANK WALRAVEN JR

190D4E5D0D8B459...

(Signature)

SS# ▮▮▮▮▮▮▮                    Driver License Number  ▮▮▮▮▮

**GUARANTOR (#2)**

By:

(Print Name)                                    (Signature)

SS#                                             Driver License Number

FILED: NEW YORK COUNTY CLERK 03/12/2026 02:56 PM
NYSCEF DOC. NO. 2

Case 1:26-cv-03849-MKV    Document 1-3    Filed 05/08/26    Page 30 of 118

STANDARD MERCHANT CASH ADVANCE AGREEMENT

# BANK INFORMATION

Dear Merchant,

   Thank you for accepting this offer from FOREVER FUNDING LLC. We look forward to being your funding partner. You authorize FOREVER FUNDING LLC to collect the Receivables Purchased Amount under this Agreement by ACH debiting your bank account with the bank listed below. FOREVER FUNDING LLC will require viewing access to your bank account each business day. FOREVER FUNDING LLC will also require viewing access to your bank account, prior to funding, as part of our underwriting process. Please fill out the form below with the information necessary to access your account.

**\* Be sure to indicate capital or lower case letters.**

Name of bank:  Chase

Name of account:  Hillcrest

Routing number: 111000614

Account number: ██████████

Bank portal website:  Na

Username:  Na

Password:  Na

Security Question/Answer 1:  Na

Security Question/Answer 2:  Na

Security Question/Answer 3:  Na

Any other information necessary to access your account:

  Na

   If you have any questions please feel free to contact us directly at (347) 719-7290.

DocuSign Envelope ID: EE74E43-0A7R43B5431B-SFAF7-AD01AC8-

# Emergency Contacts

**4 valid emergency contacts are required to receive funding. Contacts will be verified.**

**Name:** ▉▉▉▉▉

**Relation:** ▉▉▉▉▉▉▉

**Phone Number:** Na

**Email Address:** Na

**Name:** Na

**Relation:** Na

**Phone Number:** Na

**Email Address:** Na

**Name:** Na

**Relation:** Na

**Phone Number:** Na

**Email Address:** Na

**Name:** Na

**Relation:** Na

**Phone Number:** Na

**Email Address:** Na

DocuSign Envelope ID: FF74E43-0A7R43852DMB-9CFE7AD01A08
Case 1:26-cv-03849-MKV    Document 1-3    Filed 05/08/26    Page 32 of 118

# ADDENDUM TO CONTRACT
## WAIVER OF PERSONAL SERVICE

This Addendum ("Addendum") is to be made a part of purchase and sale of future receivables agreement (the "Contract") between FOREVER FUNDING LLC ("Purchaser") and ER OF TEXAS, LLC    ("Merchant")  and  RONNIE  FRANK WALRAVEN JR  ("Guarantor") (collectively the "Parties").

1. **Merchant** hereby irrevocably and unconditionally waives personal service of any summons, complaint, or other process, which may be made by any other means permitted by New York law.  Merchant understands and agrees that an action, lawsuit, or controversy may be taken up and considered by a court without any further notice. Merchant further agrees to waive any objection to the absence of formal service of process.

2. **Guarantor** hereby irrevocably and unconditionally waives personal service of any summons, complaint, or other process, which may be made by any other means permitted by New York law.  Guarantor understands and agrees that an action, lawsuit, or controversy may be taken up and considered by a court without any further notice.  Guarantor further agrees to waive any objection to the absence of formal service of process.

3. **MERCHANT** HEREBY AGREES TO ACCEPT SERVICE OF ANY SUMMONS, COMPLAINT,  OR OTHER PROCESS BY ELECTRONIC MAIL ("EMAIL")AT ███████████████ OR BY UNITED STATES POSTAL SERVICE ("USPS") AT THE ADDRESS LISTED ON THE CONTRACT FOR THE MERCHANT OR BY ANY OTHER MEANS PERMITTED BY NEW YORK LAW.

4. **GUARANTOR** HEREBY AGREES TO ACCEPT SERVICE OF ANY SUMMONS, COMPLAINT,  OR OTHER PROCESS BY ELECTRONIC MAIL ("EMAIL") AT ███████████████ OR USPS AT THE ADDRESS LISTED ON THE CONTRACT FOR THE GUARANTOR OR BY ANY OTHER MEANS PERMITTED BY NEW YORK LAW.

5. Service shall be effective upon sending the electronic mail or depositing the summons and complaint in a USPS mailbox. Merchants' or Guarantors' email address or physical address provided shall be presumed to be valid and current unless Merchants or Guarantors provide a new email or physical address for service of process.

6. Merchant or Guarantor shall notify Purchaser of any changes to its physical address or email address for service. Unless Seller is notified of a change in address, all addresses shall be presumed to be accurate.

7. This Addendum shall supersede any inconsistent notice requirements in the Contract with respect to service of process.

8. Any parties, including additional guarantors shall agree to waive service of process and accept service at the email address provided or last known address.

**For the Merchant**

DocuSigned by:

*RONNIE FRANK WALRAVEN JR*

190D4E5D0D8B459...

_____

**Name:** RONNIE FRANK WALRAVEN JR

**Date:** Jun. 10, 2025

**Additional Guarantor (if applicable)**

_____

**Name**:
**Date**: Jun. 10, 2025

COMPLAINT

EXHIBIT "B"

Case 1:26-cv-03849-MKV    Document 1-3    Filed 05/08/26    Page 34 of 118

| | | |
|---|---|---|
| ● Jun 10, 2025 | WIRE TO ER OF TEXAS HILLCREST LLC | 720,000.00 |

COMPLAINT

EXHIBIT "C"

| | | Date | Description | Amount |
|---|---|---|---|---|
| Deal ID | FE1185 | 6/11/2025 | FOREVER FUNDING FE1185 ER Jun 11 CCD 067015096 | $11,000.00 |
| Name | ER OF TEXAS, LLC 4 | 6/12/2025 | FOREVER FUNDING FE1185 ER Jun 12 CCD 067015096 | $11,000.00 |
| Date | 6/10/2025 | 6/13/2025 | FOREVER FUNDING FE1185 ER Jun 13 CCD 067015096 | $11,000.00 |
| Status | Default | 6/16/2025 | FOREVER FUNDING FE1185 ER Jun 16 CCD 067015096 | $11,000.00 |
| | | 6/17/2025 | FOREVER FUNDING FE1185 ER Jun 17 CCD 067015096 | $11,000.00 |
| Principal | $800,000.00 | 6/18/2025 | FOREVER FUNDING FE1185 ER Jun 18 CCD 067015096 | $11,000.00 |
| Payback | $1,199,200.00 | 6/20/2025 | FOREVER FUNDING FE1185 ER Jun 20 CCD 067015096 | $11,000.00 |
| Bank Fee | $80,000.00 | 6/20/2025 | FOREVER FUNDING FE1185 ER Jun 18 CCD 067015096 | $11,000.00 |
| Type | MCA | 6/23/2025 | FOREVER FUNDING FE1185 ER Jun 23 CCD 067015096 | $11,000.00 |
| | | 6/24/2025 | FOREVER FUNDING FE1185 ER Jun 24 CCD 067015096 | $11,000.00 |
| Net | $720,000.00 | 6/25/2025 | FOREVER FUNDING FE1185 ER Jun 25 CCD 067015096 | $11,000.00 |
| | | 6/26/2025 | FOREVER FUNDING FE1185 ER Jun 26 CCD 067015096 | $11,000.00 |
| Paid | $888,372.15 | 6/27/2025 | FOREVER FUNDING FE1185 ER Jun 27 CCD 067015096 | $11,000.00 |
| Paid % | 74.08% | 6/30/2025 | FOREVER FUNDING FE1185 ER Jun 30 CCD 067015096 | $11,000.00 |
| Balance | $310,827.85 | 7/1/2025 | FOREVER FUNDING FE1185 ER Jul 1 CCD 067015096 | $11,000.00 |
| | | 7/2/2025 | FOREVER FUNDING FE1185 ER Jul 2 CCD 067015096 | $11,000.00 |
| | | 7/3/2025 | FOREVER FUNDING FE1185 ER Jul 3 CCD 067015096 | $11,000.00 |
| | | 7/7/2025 | FOREVER FUNDING FE1185 ER Jul 07 CCD 067015096 | $11,000.00 |
| | | 7/7/2025 | FOREVER FUNDING FE1185 ER Jul 7 CCD 067015096 | $11,000.00 |
| | | 7/8/2025 | FOREVER FUNDING FE1185 ER Jul 8 CCD 067015096 | $11,000.00 |
| | | 7/9/2025 | FOREVER FUNDING FE1185 ER Jul 9 CCD 067015096 | $11,000.00 |
| | | 7/10/2025 | FOREVER FUNDING FE1185 ER Jul 10 CCD 067015096 | $11,000.00 |
| | | 7/11/2025 | FOREVER FUNDING FE1185 ER Jul 11 CCD 067015096 | $11,000.00 |
| | | 7/14/2025 | FOREVER FUNDING FE1185 ER Jul 14 CCD 067015096 | $11,000.00 |
| | | 7/15/2025 | FOREVER FUNDING FE1185 ER Jul 15 CCD 067015096 | $11,000.00 |
| | | 7/16/2025 | FOREVER FUNDING FE1185 ER Jul 16 CCD 067015096 | $11,000.00 |
| | | 7/17/2025 | FOREVER FUNDING FE1185 ER Jul 17 CCD 067015096 | $11,000.00 |
| | | 7/18/2025 | FOREVER FUNDING FE1185 ER Jul 18 CCD 067015096 | $11,000.00 |
| | | 7/21/2025 | FOREVER FUNDING FE1185 ER Jul 21 CCD 067015096 | $11,000.00 |
| | | 7/22/2025 | FOREVER FUNDING FE1185 ER Jul 22 CCD 067015096 | $11,000.00 |
| | | 7/23/2025 | FOREVER FUNDING FE1185 ER Jul 23 CCD 067015096 | $11,000.00 |
| | | 7/24/2025 | FOREVER FUNDING FE1185 ER Jul 24 CCD 067015096 | $11,000.00 |
| | | 7/25/2025 | FOREVER FUNDING FE1185 ER Jul 25 CCD 067015096 | $11,000.00 |
| | | 7/28/2025 | FOREVER FUNDING FE1185 ER Jul 28 CCD 067015096 | $11,000.00 |
| | | 7/29/2025 | FOREVER FUNDING FE1185 ER Jul 29 CCD 067015096 | $11,000.00 |
| | | 7/30/2025 | FOREVER FUNDING FE1185 ER Jul 30 CCD 067015096 | $11,000.00 |
| | | 7/31/2025 | R01 Insufficient Funds (07/29/2025) FE1185 ER OF TEXAS, LL Ending**8168 | ($11,000.00) |
| | | 7/31/2025 | FOREVER FUNDING FE1185 ER Jul 31 CCD 067015096 | $11,000.00 |
| | | 8/1/2025 | FOREVER FUNDING FE1185 ER Aug 1 CCD 067015096 | $11,000.00 |
| | | 8/4/2025 | FOREVER FUNDING FE1185 ER Aug 4 CCD 067015096 | $11,000.00 |

| Date | Description | Amount |
|------|-------------|--------|
| 8/5/2025 | FOREVER FUNDING FE1185 ER Aug 5 CCD 067015096 | $11,000.00 |
| 8/6/2025 | FOREVER FUNDING FE1185 ER Aug 6 CCD 067015096 | $11,000.00 |
| 8/7/2025 | FOREVER FUNDING FE1185 ER Aug 7 CCD 067015096 | $11,000.00 |
| 8/8/2025 | FOREVER FUNDING FE1185 ER Aug 8 CCD 067015096 | $11,000.00 |
| 8/11/2025 | FOREVER FUNDING FE1185 ER Aug 11 CCD 067015096 | $11,000.00 |
| 8/12/2025 | FOREVER FUNDING FE1185 ER Aug 12 CCD 067015096 | $11,000.00 |
| 8/13/2025 | FOREVER FUNDING FE1185 ER Aug 13 CCD 067015096 | $11,000.00 |
| 8/14/2025 | FOREVER FUNDING FE1185 ER Aug 14 CCD 067015096 | $11,000.00 |
| 8/15/2025 | FOREVER FUNDING FE1185 ER Aug 15 CCD 067015096 | $11,000.00 |
| 8/18/2025 | WIRE FROM ER OF TEXAS HILLCREST L | $11,000.00 |
| 8/18/2025 | FOREVER FUNDING FE1185 ER Aug 18 CCD 067015096 | $11,000.00 |
| 8/18/2025 | R29 Corporate Customer Advises Not Authorized (08/15/2025) FE1185 ER OF TEXAS, LL Ending**8168 | ($11,000.00) |
| 8/19/2025 | FOREVER FUNDING FE1185 ER Aug 19 CCD 067015096 | $11,000.00 |
| 8/20/2025 | FOREVER FUNDING FE1185 ER Aug 20 CCD 067015096 | $11,000.00 |
| 8/21/2025 | FOREVER FUNDING FE1185 ER Aug 21 CCD 067015096 | $11,000.00 |
| 8/22/2025 | FOREVER FUNDING FE1185 ER Aug 22 CCD 067015096 | $11,000.00 |
| 8/25/2025 | FOREVER FUNDING FE1185 ER Aug 25 CCD 067015096 | $11,000.00 |
| 8/26/2025 | FOREVER FUNDING FE1185 ER Aug 26 CCD 067015096 | $11,000.00 |
| 8/27/2025 | FOREVER FUNDING FE1185 ER Aug 27 CCD 067015096 | $11,000.00 |
| 8/28/2025 | FOREVER FUNDING FE1185 ER Aug 28 CCD 067015096 | $11,000.00 |
| 8/29/2025 | FOREVER FUNDING FE1185 ER Aug 29 CCD 067015096 | $11,000.00 |
| 8/29/2025 | FOREVER FUNDING FE1185 ER Aug 29 CCD 067015096 | $11,000.00 |
| 9/2/2025 | R01 Insufficient Funds (08/28/2025) FE1185 ER OF TEXAS, LL Ending**8168 | ($11,000.00) |
| 9/2/2025 | FOREVER FUNDING FE1185 ER Sep 2 CCD 067015096 | $11,000.00 |
| 9/3/2025 | FOREVER FUNDING FE1185 ER Sep 3 CCD 067015096 | $11,000.00 |
| 9/4/2025 | FOREVER FUNDING FE1185 ER Sep 4 CCD 067015096 | $11,000.00 |
| 9/5/2025 | FOREVER FUNDING FE1185 ER Sep 5 CCD 067015096 | $11,000.00 |
| 9/8/2025 | FOREVER FUNDING FE1185 ER Sep 8 CCD 067015096 | $11,000.00 |
| 9/9/2025 | FOREVER FUNDING FE1185 ER Sep 9 CCD 067015096 | $11,000.00 |
| 9/10/2025 | FOREVER FUNDING FE1185 ER Sep 10 CCD 067015096 | $11,000.00 |
| 9/11/2025 | FOREVER FUNDING FE1185 ER Sep 11 CCD 067015096 | $11,000.00 |
| 9/12/2025 | FOREVER FUNDING FE1185 ER Sep 12 CCD 067015096 | $11,000.00 |
| 9/15/2025 | FOREVER FUNDING FE1185 ER Sep 15 CCD 067015096 | $11,000.00 |
| 9/16/2025 | FOREVER FUNDING FE1185 ER Sep 16 CCD 067015096 | $11,000.00 |
| 9/17/2025 | FOREVER FUNDING FE1185 ER Sep 17 CCD 067015096 | $11,000.00 |
| 9/18/2025 | FOREVER FUNDING FE1185 ER Sep 18 CCD 067015096 | $11,000.00 |
| 9/19/2025 | FOREVER FUNDING FE1185 ER Sep 19 CCD 067015096 | $11,000.00 |
| 9/22/2025 | FOREVER FUNDING FE1185 ER Sep 22 CCD 067015096 | $11,000.00 |
| 9/23/2025 | FOREVER FUNDING FE1185 ER Sep 23 CCD 067015096 | $11,000.00 |
| 9/24/2025 | FOREVER FUNDING FE1185 ER Sep 24 CCD 067015096 | $11,000.00 |

Case 1:26-cv-03849-MKV     Document 1-3     Filed 05/08/26     Page 38 of 118

| Date | Description | Amount |
|------|-------------|--------|
| 9/25/2025 | FOREVER FUNDING FE1185 ER Sep 25 CCD 067015096 | $11,000.00 |
| 9/26/2025 | FOREVER FUNDING FE1185 ER Sep 26 CCD 067015096 | $11,000.00 |
| 9/29/2025 | R01 Insufficient Funds (09/25/2025) FE1185 ER OF TEXAS, LL Ending**8168 | ($11,000.00) |
| 9/29/2025 | FOREVER FUNDING FE1185 ER Sep 29 CCD 067015096 | $11,000.00 |
| 9/30/2025 | FOREVER FUNDING FE1185 ER Sep 30 CCD 067015096 | $11,000.00 |
| 10/1/2025 | FOREVER FUNDING FE1185 ER Oct 1 CCD 067015096 | $11,000.00 |
| 10/2/2025 | FOREVER FUNDING FE1185 ER Oct 2 CCD 067015096 | $11,000.00 |
| 10/3/2025 | R01 Insufficient Funds (10/01/2025) FE1185 ER OF TEXAS, LL Ending**8168 | ($11,000.00) |
| 10/3/2025 | FOREVER FUNDING FE1185 ER Oct 3 CCD 067015096 | $11,000.00 |
| 10/6/2025 | FOREVER FUNDING FE1185 ER Oct 6 CCD 067015096 | $11,000.00 |
| 10/7/2025 | R01 Insufficient Funds (10/03/2025) FE1185 ER OF TEXAS, LL Ending**8168 | ($11,000.00) |
| 10/7/2025 | FOREVER FUNDING FE1185 ER Oct 7 CCD 067015096 | $11,000.00 |
| 10/8/2025 | R29 Corporate Customer Advises Not Authorized (10/07/2025) FE1185 ER OF TEXAS, LL Ending**8168 | ($11,000.00) |
| 10/8/2025 | R29 Corporate Customer Advises Not Authorized (10/06/2025) FE1185 ER OF TEXAS, LL Ending**8168 | ($11,000.00) |
| 10/8/2025 | FOREVER FUNDING FE1185 ER Oct 8 CCD 067015096 | $11,000.00 |
| 10/9/2025 | FOREVER FUNDING FE1185 ER Oct 9 CCD 067015096 | $11,000.00 |
| 10/10/2025 | R29 Corporate Customer Advises Not Authorized (10/09/2025) FE1185 ER OF TEXAS, LL Ending**8168 | ($11,000.00) |
| 10/10/2025 | R29 Corporate Customer Advises Not Authorized (10/08/2025) FE1185 ER OF TEXAS, LL Ending**8168 | ($11,000.00) |
| 10/10/2025 | FOREVER FUNDING FE1185 ER Oct 10 CCD 067015096 | $11,000.00 |
| 10/14/2025 | R29 Corporate Customer Advises Not Authorized (10/10/2025) FE1185 ER OF TEXAS, LL Ending**8168 | ($11,000.00) |
| 10/24/2025 | WIRE FROM STATE FINANCIAL LLC | $10,124.05 |
| 10/31/2025 | WIRE FROM EPPS LLC | $10,124.05 |
| 11/10/2025 | WIRE FROM EPPS LLC | $10,124.05 |

Case 1:26-cv-03849-MKV    Document 1-3    Filed 05/08/26    Page 39 of 118

COMPLAINT


EXHIBIT "D"

FILED: NEW YORK COUNTY CLERK 03/12/2026 02:56 PM

NYSCEF DOC. NO. 5

INDEX NO. 651550/2026

RECEIVED NYSCEF: 03/12/2026

Page **1** of **20**

ver. 5/20/21

DocuSign Envelope ID: 3F18A94D-63EF-4598-8216-A74740BCF7C6

Case 1.26-cv-03849-MKV   Document 1-3   Filed 05/08/26   Page 40 of 118



## FOREVER FUNDING LLC
2389 Main St STE 100, Glastonbury, CT 06033
(347) 719-7290

## STANDARD MERCHANT CASH ADVANCE AGREEMENT

This is an Agreement dated Jul. 24, 2025 by and between FOREVER FUNDING LLC ("FF") and each merchant listed below ("Merchant").

Merchant's Legal Name: ER OF TEXAS, LLC

D/B/A/: ER OF TEXAS                                    Fed ID #: ▉▉▉▉▉▉

Type of Entity: Limited Liability Company

Business Address: 1441 LATIGO CT     City: PROSPER     State: TX     Zip: 75078

Contact Address: 4267 SHAVANO DR     City: FRISCO     State: TX     Zip: 75034

E-mail Address: ▉▉▉▉▉▉▉▉▉▉     Phone Number: ▉▉▉▉▉▉

| | |
|---|---|
| **Purchase Price**<br>*This is the amount being paid to Merchant(s) for the Receivables Purchased Amount (defined below).* | **$ 500,000.00** |
| **Receivables Purchased Amount**<br>*This is the amount of Receivables (defined in Section 1 below) being sold.* | **$ 749,500.00** |
| **Specified Percentage**<br>*This is the percentage of Receivables (defined below) to be delivered until the Receivables Purchased Amount is paid in full.* | **25.00%** |
| **Net Funds Provided**<br>*This is the net amount being paid to or on behalf of Merchant(s) after deduction of applicable fees listed in Section 2 below.* | **$ 475,000.00** |
| **Initial Estimated Payment**<br>*This is only applicable if an Addendum for Estimated Payments is being signed. This is the initial amount of periodic payments collected from Merchant(s) as an approximation of no more than the Specified Percentage of the Receivables and is subject to reconciliation as set forth in Section 4 below.* | **$ 7,495.00**<br>**per day** |

**I have read and agree to the terms and conditions set forth above:**

DocuSigned by:

RONNIE FRANK WALRAVEN JR

190D4E5D0D8B459...

Name and Title: RONNIE FRANK WALRAVEN JR          Date:     7/24/2025

DocuSign Envelope ID: 3F18A94D-63E7-4558-8210-A777A73CCF76
Case 1:26-cv-03849-MKV    Document 1-3    Filed 05/08/26    Page 41 of 118

Page **2** of **20**

## STANDARD MERCHANT CASH ADVANCE AGREEMENT

### TERMS AND CONDITIONS

**1. Sale of Future Receipts.** Merchant(s) hereby sell, assign, and transfer to FF (making FF the absolute owner) in consideration of the funds provided ("Purchase Price") specified above, all of each Merchant's future accounts, contract rights, and other obligations arising from or relating to the payment of monies from each Merchant's customers and/or other third party payors (the "Receivables", defined as all payments made by cash, check, credit or debit card, electronic transfer, or other form of monetary payment in the ordinary course of each merchant's business), for the payment of each Merchant's sale of goods or services until the amount specified above (the "Receivables Purchased Amount") has been delivered by Merchant(s) to FF. Each Merchant hereby acknowledges that until the Receivables Purchased Amount has been received in full by FF, each Merchant's Receivables, up to the balance of the Receivables Purchased Amount, are the property of FF and not the property of any Merchant. Each Merchant agrees that it is a fiduciary for FF and that each Merchant will hold Receivables in trust for FF in its capacity as a fiduciary for FF.

The Receivables Purchased Amount shall be paid to FF by each Merchant irrevocably authorizing only one depositing account acceptable to FF (the "Account") to remit the percentage specified above (the "Specified Percentage") of each Merchant's settlement amounts due from each transaction, until such time as FF receives payment in full of the Receivables Purchased Amount. Each Merchant hereby authorizes FF to ACH debit the specified remittances from the Account on a daily basis as of the next business day after the date of this Agreement and will provide FF with all required access codes and monthly bank statements. Each Merchant understands that it will be held responsible for any fees resulting from a rejected ACH attempt or an Event of Default (see Section 2). FF is not responsible for any overdrafts or rejected transactions that may result from FF's ACH debiting the Specified Percentage amounts under the terms of this Agreement.

**2. Additional Fees.** In addition to the Receivables Purchased Amount, each Merchant will be held responsible to FF for the following fees, where applicable:

A. $25,000.00 - to cover underwriting and the ACH debit program, as well as related expenses. This will be deducted from payment of the Purchase Price.

B. Wire Fee - Merchant(s) shall receive funding electronically to the Account and will be charged $50.00 for a Fed Wire or $0.00 for a bank ACH. This will be deducted from payment of the Purchase Price.

C. Blocked Account/Default - $2,500.00 - If FF considers an Event of Default to have taken place under Section 34.

D. UCC Fee - $195.00 – to cover FF filing a UCC-1 financing statement to secure its interest in the Receivables Purchased Amount. A $195.00 UCC termination fee will be charged if a UCC filing is terminated.

E. Court costs, arbitration fees, collection agency fees, attorney fees, expert fees, and any other expenses incurred in litigation, arbitration, or the enforcement of any of FF's legal or contractual rights against each Merchant and/or each Guarantor, if required, as explained in other Sections of this Agreement.

**3. Cap on Collection of the Receivables Purchased Amount.** The amount that FF will collect from Merchant(s) towards the Receivables Purchased Amount during any specific day will be capped at $7,495.00 (the "Cap"). If the Specified Percentage of all Receivables for a specific day is less than the Cap, then in addition to the Specified Percentage of Receivables for that day, FF will be permitted to collect any Receivables it did not previously collect due to the Cap such that the total amount collected during that day does not exceed the Cap. The Cap is not applicable to make up for a business day on which FF is closed and does not ACH debit the Account, to subsequent attempts to collect a rejected or blocked ACH payment, or for the collection of any of the fees listed in Section 2 or if any Event of Default listed in Section 34 is considered by FF to have taken place.

**4. Reconciliations.** Any Merchant may give written notice to FF requesting that FF conduct a reconciliation in order to ensure that the amount that FF has collected equals the Specified Percentage of Merchant(s)'s Receivables under this Agreement. Any Merchant may give written notice requesting a reconciliation. A reconciliation may also be requested by e-mail to office@foreverfunding.co and such notice will be deemed to have been received if and when FF sends a reply e-mail (but not a read receipt). If such reconciliation determines that FF collected more than it was entitled to, then FF will credit to the Account all amounts to which FF was not entitled within seven days thereafter. If such reconciliation determines

**I have read and agree to the terms and conditions set forth above:**

DocuSigned by:

*RONNIE FRANK WALRAVEN JR*

190D4E5D0D8B459...

Name and Title: RONNIE FRANK WALRAVEN JR    Date:    7/24/2025

DocuSign Envelope ID: 3F18A04D-63EF-4688-8219-A7A7A9CF75CF
Case 1:26-cv-03849-MKV    Document 1-3    Filed 05/08/26    Page 42 of 118

## STANDARD MERCHANT CASH ADVANCE AGREEMENT

that FF collected less than it was entitled to, then FF will debit from the Account all additional amounts to which FF was entitled within seven days thereafter. In order to effectuate this reconciliation, any Merchant must produce with its request the login and password for the Account and any and all bank statements and merchant statements covering the period from the date of this Agreement through the date of the request for a reconciliation. FF will complete each such reconciliation within two business days after receipt of a written request for one accompanied by the information and documents required for it. Nothing herein limits the amount of times that such a reconciliation may be requested.

**5. Prepayments.** Although there is no obligation to do so, any Merchant may prepay any amount towards the Receivables Purchased Amount. There will be no penalty for any prepayment made by any Merchant. Any Merchant may elect to terminate this Agreement by prepaying FF the amount of the balance of the Receivables Purchased Amount at that time.

**6. Merchant Deposit Agreement.** Merchant(s) shall appoint a bank acceptable to FF, to obtain electronic fund transfer services and/or "ACH" payments. Merchant(s) shall provide FF and/or its authorized agent with all of the information, authorizations, and passwords necessary to verify each Merchant's Receivables. Merchant(s) shall authorize FF and/or its agent(s) to deduct the amounts owed to FF for the Receivables as specified herein from settlement amounts which would otherwise be due to each Merchant and to pay such amounts to FF by permitting FF to withdraw the Specified Percentage by ACH debiting of the account. The authorization shall be irrevocable absent FF's written consent.

**7. Term of Agreement.** The term of this Agreement is indefinite and shall continue until FF receives the full Receivables Purchased Amount, or earlier if terminated pursuant to any provision of this Agreement. The provisions of Sections 4, 6, 7, 8, 10, 11, 13, 14, 15, 17, 18, 19, 22, 23, 28, 31, 32, 33, 34, 35, 37, 38, 39, 40, 41, 42, 43, 44, 45, 46, 47, 48, 49, 50, 51, 52, 53, 54, 55, 56, 57, and 58 shall survive any termination of this Agreement.

**8. Ordinary Course of Business.** Each Merchant acknowledges that it is entering into this Agreement in the ordinary course of its business and that the payments to be made from each Merchant to FF under this Agreement are being made in the ordinary course of each Merchant's business.

**9. Financial Condition.** Each Merchant and each Guarantor (Guarantor being defined as each signatory to the Guarantee of this Agreement) authorizes FF and its agent(s) to investigate each Merchant's financial responsibility and history, and will provide to FF any bank or financial statements, tax returns, and other documents and records, as FF deems necessary prior to or at any time after execution of this Agreement. A photocopy of this authorization will be deemed as acceptable for release of financial information. FF is authorized to update such information and financial profiles from time to time as it deems appropriate.

**10. Monitoring, Recording, and Electronic Communications.** FF may choose to monitor and/or record telephone calls with any Merchant and its owners, employees, and agents. By signing this Agreement, each Merchant agrees that any call between FF and any Merchant or its representatives may be monitored and/or recorded. Each Merchant and each Guarantor grants access for FF to enter any Merchant's premises and to observe any Merchant's premises without any prior notice to any Merchant at any time after execution of this Agreement.

FF may use automated telephone dialing, text messaging systems, and e-mail to provide messages to Merchant(s), Owner(s) (Owner being defined as each person who signs this Agreement on behalf of a Merchant), and Guarantor(s) about Merchant(s)'s account. Telephone messages may be played by a machine automatically when the telephone is answered, whether answered by an Owner, a Guarantor, or someone else. These messages may also be recorded by the recipient's answering machine or voice mail. Each Merchant, each Owner, and each Guarantor gives FF permission to call or send a text message to any telephone number given to FF in connection with this Agreement and to play pre-recorded messages and/or send text messages with information about this Agreement and/or any Merchant's account over the phone. Each Merchant, each Owner, and each Guarantor also gives FF permission to communicate such information to them by e-mail. Each Merchant, each Owner, and each Guarantor agree that FF will not be liable to any of them for any such calls or electronic communications, even if information is communicated to an unintended recipient. Each Merchant, each Owner, and each Guarantor acknowledge that when they receive such calls or electronic communications, they may incur a charge

**I have read and agree to the terms and conditions set forth above:**

DocuSigned by:

*RONNIE FRANK WALRAVEN JR*

190D4E5D0D8B459...

Name and Title: RONNIE FRANK WALRAVEN JR          Date:    7/24/2025

DocuSign Envelope ID: 3E18204D-63EF-4BB8-8216-A7A419CEF776
Case 1:26-cv-03849-MKV    Document 1-3    Filed 05/08/26    Page 43 of 118

## STANDARD MERCHANT CASH ADVANCE AGREEMENT

from the company that provides them with telecommunications, wireless, and/or Internet services, and that FF has no liability for any such charges.

**11. Accuracy of Information Furnished by Merchant and Investigation Thereof.** To the extent set forth herein, each of the parties is obligated upon his, her, or its execution of the Agreement to all terms of the Agreement. Each Merchant and each Owner signing this Agreement represent that he or she is authorized to sign this Agreement for each Merchant, legally binding said Merchant to its obligations under this Agreement and that the information provided herein and in all of FF's documents, forms, and recorded interview(s) is true, accurate, and complete in all respects. FF may produce a monthly statement reflecting the delivery of the Specified Percentage of Receivables from Merchant(s) to FF. An investigative report may be made in connection with the Agreement. Each Merchant and each Owner signing this Agreement authorize FF, its agents and representatives, and any credit-reporting agency engaged by FF, to (i) investigate any references given or any other statements obtained from or about each Merchant or any of its Owners for the purpose of this Agreement, and (ii) pull credit report at any time now or for so long as any Merchant and/or Owners(s) continue to have any obligation to FF under this Agreement or for FF's ability to determine any Merchant's eligibility to enter into any future agreement with FF. Any misrepresentation made by any Merchant or Owner in connection with this Agreement may constitute a separate claim for fraud or intentional misrepresentation.

*Authorization for soft pulls:* Each Merchant and each Owner understands that by signing this Agreement, they are providing 'written instructions' to FF under the Fair Credit Reporting Act, authorizing FF to obtain information from their personal credit profile or other information from Experian, TransUnion, and Equifax. Each Merchant and each Guarantor authorizes FF to obtain such information solely to conduct a pre-qualification for credit.

*Authorization for hard pulls:* Each Merchant and each Owner understands that by signing this Agreement, they are providing 'written instructions' to FF under the Fair Credit Reporting Act, authorizing FF to obtain information from their personal credit profile or other information from Experian, TransUnion, and Equifax. Each Merchant and each Guarantor authorizes FF to obtain such information in accordance with a merchant cash advance application.

**12. Transactional History.** Each Merchant authorizes its bank to provide FF with its banking and/or credit card processing history.

**13. Indemnification.** Each Merchant and each Guarantor jointly and severally indemnify and hold harmless each Merchant's credit card and check processors (collectively, "Processor") and Processor's officers, directors, and shareholders against all losses, damages, claims, liabilities, and expenses (including reasonable attorney and expert fees) incurred by Processor resulting from (a) claims asserted by FF for monies owed to FF from any Merchant and (b) actions taken by any Processor in reliance upon information or instructions provided by FF.

**14. No Liability.** In no event will FF be liable for any claims asserted by any Merchant under any legal theory for lost profits, lost revenues, lost business opportunities, exemplary, punitive, special, incidental, indirect, or consequential damages, each of which is waived by each Merchant and each Guarantor.

**15. Sale of Receivables.** Each Merchant and FF agree that the Purchase Price under this Agreement is in exchange for the Receivables Purchased Amount and that such Purchase Price is not intended to be, nor shall it be construed as a loan from FF to any Merchant. FF is entering into this Agreement knowing the risks that each Merchant's business may decline or fail, resulting in FF not receiving the Receivables Purchased Amount. Each Merchant agrees that the Purchase Price in exchange for the Receivables pursuant to this Agreement equals the fair market value of such Receivables. FF has purchased and shall own all the Receivables described in this Agreement up to the full Receivables Purchased Amount as the Receivables are created. Payments made to FF in respect to the full amount of the Receivables shall be conditioned upon each Merchant's sale of products and services and the payment therefor by each Merchant's customers in the manner provided in this Agreement. Although certain jurisdictions require the disclosure of an Annual Percentage Rate or APR in connection with this Agreement, those disclosures do not change the fact that the transaction encompassed by this Agreement is not a loan and does not have an interest rate.

**16. Power of Attorney.** Each Merchant irrevocably appoints FF as its agent and attorney-in-fact with full authority

**I have read and agree to the terms and conditions set forth above:**

DocuSigned by:

RONNIE FRANK WALRAVEN JR

190D4E5D0D8B459...

Name and Title: RONNIE FRANK WALRAVEN JR          Date:    7/24/2025

DocuSign Envelope ID: 3E18A04D-63FF-45B8-8216-A7A7740CF71A
Case 1:26-cv-03849-MKV    Document 1-3    Filed 05/08/26    Page 44 of 118

## STANDARD MERCHANT CASH ADVANCE AGREEMENT

to take any action or execute any instrument or document to settle all obligations due to FF, or, if FF considers an Event of Default to have taken place under Section 34, to settle all obligations due to FF from each Merchant, including without limitation (i) to obtain and adjust insurance; (ii) to collect monies due or to become due under or in respect of any of the Collateral (which is defined in Section 33); (iii) to receive, endorse and collect any checks, notes, drafts, instruments, documents, or chattel paper in connection with clause (i) or clause (ii) above; (iv) to sign each Merchant's name on any invoice, bill of lading, or assignment directing customers or account debtors to make payment directly to FF; and (v) to file any claims or take any action or institute any proceeding which FF may deem necessary for the collection of any of the unpaid Receivables Purchased Amount from the Collateral, or otherwise to enforce its rights with respect to payment of the Receivables Purchased Amount.

**17. Protections Against Default.** The following Protections 1 through 7 may be invoked by FF, immediately and without notice to any Merchant in the event:

(a) Any Merchant takes any action to discourage the use of methods of payment ordinarily and customarily used by its customers or permits any event to occur that could have an adverse effect on the use, acceptance, or authorization of checks and credit cards for the purchase of any Merchant's services and products;

(b) Any Merchant changes its arrangements with any Processor in any way that is adverse to FF;

(c) Any Merchant changes any Processor through which the Receivables are settled to another electronic check and/or credit card processor or permits any event to occur that could cause diversion of any Merchant's check and/or credit card transactions to another such processor;

(d) Any Merchant interrupts the operation of its business (other than adverse weather, natural disasters, or acts of God) or transfers, moves, sells, disposes, or otherwise conveys its business or assets without (i) the express prior written consent of FF and (ii) the written agreement of any purchaser or transferee to the assumption of all of any Merchant's obligations under this Agreement pursuant to documentation satisfactory to FF; or

(e) Any Merchant takes any action, fails to take any action, or offers any incentive—economic or otherwise—the result of which will be to induce any customer or customers to pay for any Merchant's goods or services with any means other than checks and/or credit cards that are settled through Processor. These protections are in addition to any other remedies available to FF at law, in equity, or otherwise available pursuant to this Agreement.

(f) FF considers any Event of Default listed in Section 34 to have taken place.

Protection 1: The full uncollected Receivables Purchased Amount plus all fees due under this Agreement may become due and payable in full immediately.

Protection 2. FF may enforce the provisions of the Guarantee against Guarantor.

Protection 3. FF may enforce its security interest in the Collateral identified in Section 33.

Protection 4. FF may proceed to protect and enforce its rights and remedies by litigation or arbitration.

Protection 5. If requested by FF, Merchant shall deliver to FF an executed assignment of lease of each Merchant's premises in favor of FF. Upon breach of any provision in this Section 17, FF may exercise its rights under such assignment of lease.

Protection 6. FF may debit any Merchant's depository accounts wherever situated by means of ACH debit or electronic or facsimile signature on a computer-generated check drawn on any Merchant's bank account or otherwise, in an amount consistent with the terms of this Agreement.

Protection 7. FF will have the right, without waiving any of its rights and remedies and without notice to any Merchant and/or Guarantor, to notify each Merchant's credit card and/or check processor of the sale of Receivables hereunder and to direct such credit card processor to make payment to FF of all or any portion of the amounts received by such credit card processor on behalf of each Merchant. Each Merchant hereby grants to FF an irrevocable power-of-attorney, which power-of-attorney will be coupled with an interest, and hereby appoints FF and its representatives as each Merchant's attorney-in-fact to take any and all action necessary to direct such new or additional credit card and/or check processor to make payment to FF as contemplated by this Section.

**18. Protection of Information.** Each Merchant and each person signing this Agreement on behalf of each Merchant and/or as Owner, in respect of himself or herself personally, authorizes FF to disclose information concerning each Merchant, Owner and/or Guarantor's credit standing and business conduct to agents, affiliates, subsidiaries, and credit reporting bureaus. Each Merchant, Guarantor, and Owner hereby waives to the maximum extent permitted by law any claim

**I have read and agree to the terms and conditions set forth above:**

DocuSigned by:

*RONNIE FRANK WALRAVEN JR*

190D4E5D0D8B459...

Name and Title: RONNIE FRANK WALRAVEN JR          Date:    7/24/2025

DocuSign Envelope ID: 3F18494D-62EF-4698-8216-A7A7A96FFF37

Case 1:26-cv-03849-MKV    Document 1-3    Filed 05/08/26    Page 45 of 118

## STANDARD MERCHANT CASH ADVANCE AGREEMENT

for damages against FF or any of its affiliates relating to any (i) investigation undertaken by or on behalf of FF as permitted by this Agreement or (ii) disclosure of information as permitted by this Agreement.

**19. Confidentiality.** Each Merchant understands and agrees that the terms and conditions of the products and services offered by FF, including this Agreement and any other FF documents (collectively, "Confidential Information") are proprietary and confidential information of FF. Accordingly, unless disclosure is required by law or court order, Merchant(s) shall not disclose Confidential Information of FF to any person other than an attorney, accountant, financial advisor, or employee of any Merchant who needs to know such information for the purpose of advising any Merchant ("Advisor"), provided such Advisor uses such information solely for the purpose of advising any Merchant and first agrees in writing to be bound by the terms of this Section 19.

**20. D/B/As.** Each Merchant hereby acknowledges and agrees that FF may be using "doing business as" or "d/b/a" names in connection with various matters relating to the transaction between FF and each Merchant, including the filing of UCC-1 financing statements and other notices or filings.

**21. Financial Condition and Financial Information.** Each Merchant represents, warrants, and covenants that its bank and financial statements, copies of which have been furnished to FF, and future statements which will be furnished hereafter at the request of FF, fairly represent the financial condition of each Merchant at such dates, and that since those dates there have been no material adverse changes, financial or otherwise, in such condition, operation, or ownership of any Merchant. Each Merchant has a continuing affirmative obligation to advise FF of any material adverse change in its financial condition, operation, or ownership.

**22. Governmental Approvals.** Each Merchant represents, warrants, and covenants that it is in compliance and shall comply with all laws and has valid permits, authorizations, and licenses to own, operate, and lease its properties and to conduct the business in which it is presently engaged.

**23. Authorization.** Each Merchant represents, warrants, and covenants that it and each person signing this Agreement on behalf of each Merchant has full power and authority to incur and perform the obligations under this Agreement, all of which have been duly authorized.

**24. Insurance.** Each Merchant represents, warrants, and covenants that it will maintain business-interruption insurance naming FF as loss payee and additional insured in amounts and against risks as are satisfactory to FF and shall provide FF proof of such insurance upon request.

**25. Electronic Check Processing Agreement.** Each Merchant represents, warrants, and covenants that it will not, without FF's prior written consent, change its Processor, add terminals, change its financial institution or bank account, or take any other action that could have any adverse effect upon any Merchant's obligations under this Agreement.

**26. Change of Name or Location.** Each Merchant represents, warrants, and covenants that it will not conduct its business under any name other than as disclosed to FF or change any place(s) of its business without prior written consent from FF.

**27. Estoppel Certificate.** Each Merchant represents, warrants, and covenants that it will, at any time, and from time to time, upon at least two day's prior notice from FF to that Merchant, execute, acknowledge, and deliver to FF and/or to any other person or entity specified by FF, a statement certifying that this Agreement is unmodified and in full force and effect (or, if there have been modifications, that the same is in full force and effect as modified and stating the modifications) and stating the dates which the Receivables Purchased Amount or any portion thereof have been paid.

**28. No Bankruptcy.** Each Merchant represents, warrants, and covenants that as of the date of this Agreement, it does not contemplate and has not filed any petition for bankruptcy protection under Title 11 of the United States Code and there has been no involuntary petition brought or pending against any Merchant. Each Merchant further warrants that it

**I have read and agree to the terms and conditions set forth above:**

DocuSigned by:

*RONNIE FRANK WALRAVEN JR*

190D4E5D0D8B459...

Name and Title: RONNIE FRANK WALRAVEN JR          Date:    7/24/2025

DocuSign Envelope ID: 3F18404D-63EF-4638-8216-A7A7490CF776

## STANDARD MERCHANT CASH ADVANCE AGREEMENT

does not anticipate filing any such bankruptcy petition and it does not anticipate that an involuntary petition will be filed against it. Each Merchant further warrants that there will be no statutory presumption that it would have been insolvent on the date of this Agreement.

**29. Unencumbered Receivables.** Each Merchant represents, warrants, and covenants that it has good, complete, and marketable title to all Receivables, free and clear of any and all liabilities, liens, claims, changes, restrictions, conditions, options, rights, mortgages, security interests, equities, pledges, and encumbrances of any kind or nature whatsoever or any other rights or interests that may be inconsistent with this Agreement or adverse to the interests of FF, other than any for which FF has actual or constructive knowledge as of the date of this Agreement.

**30. Stacking.** Each Merchant represents, warrants, and covenants that it will not enter into with any party other than FF any arrangement, agreement, or commitment that relates to or involves the Receivables, whether in the form of a purchase of, a loan against, collateral against, or the sale or purchase of credits against Receivables without the prior written consent of FF.

**31. Business Purpose.** Each Merchant represents, warrants, and covenants that it is a valid business in good standing under the laws of the jurisdictions in which it is organized and/or operates, and each Merchant is entering into this Agreement for business purposes and not as a consumer for personal, family, or household purposes.

**32. Default Under Other Contracts.** Each Merchant represents, warrants, and covenants that its execution of and/or performance under this Agreement will not cause or create an event of default by any Merchant under any contract with another person or entity.

**33. Security Interest.** To secure each Merchant's payment and performance obligations to FF under this Agreement and any future agreement with FF, each Merchant hereby grants to FF a security interest in collateral (the "Collateral"), that is defined as collectively: (a) all accounts, including without limitation, all deposit accounts, accounts-receivable, and other receivables, chattel paper, documents, equipment, general intangibles, instruments, and inventory, as those terms are defined by Article 9 of the Uniform Commercial Code (the "UCC"), now or hereafter owned or acquired by any Merchant; and (b) all proceeds, as that term is defined by Article 9 of the UCC. The parties acknowledge and agree that any security interest granted to FF under any other agreement between any Merchant or Guarantor and FF (the "Cross-Collateral") will secure the obligations hereunder and under this Agreement. Negative Pledge: Each Merchant agrees not to create, incur, assume, or permit to exist, directly or indirectly, any lien on or with respect to any of the Collateral or the Cross-Collateral, as applicable.

Each Merchant agrees to execute any documents or take any action in connection with this Agreement as FF deems necessary to perfect or maintain FF's first priority security interest in the Collateral and the Cross-Collateral, including the execution of any account control agreements. Each Merchant hereby authorizes FF to file any financing statements deemed necessary by FF to perfect or maintain FF's security interest, which financing statements may contain notification that each Merchant has granted a negative pledge to FF with respect to the Collateral and the Cross-Collateral, and that any subsequent lienor may be tortiously interfering with FF's rights. Each Merchant shall be liable for and FF may charge and collect all costs and expenses, including but not limited to attorney fees, which may be incurred by FF in protecting, preserving, and enforcing FF's security interest and rights. Each Merchant further acknowledges that FF may use another legal name and/or D/B/A or an agent when designating the Secured Party when FF files the above-referenced financing statement(s).

**34. Events of Default.** An "Event of Default" may be considered to have taken place if any of the following occur:
(1) Any Merchant violates any term or covenant in this Agreement;
(2) Any representation or warranty by any Merchant in any Agreement with FF that has not been terminated proves to have been incorrect, false, or misleading in any material respect when made;
(3) Any Merchant fails to provide FF with written notice of any material change in its financial condition, operation, or ownership within seven days thereafter (unless a different notice period is specifically provided for elsewhere in this Agreement;

**I have read and agree to the terms and conditions set forth above:**

DocuSigned by:

*RONNIE FRANK WALRAVEN JR*
190D4E5D0D8B459...

Name and Title: RONNIE FRANK WALRAVEN JR        Date:  7/24/2025

Case 1:26-cv-03849-MKV    Document 1-3    Filed 05/08/26    Page 47 of 118

## STANDARD MERCHANT CASH ADVANCE AGREEMENT

(4) the sending of notice of termination by any Merchant or Guarantor;

(5) Any Merchant transports, moves, interrupts, suspends, dissolves, or terminates its business without the prior written consent of FF other than a bankruptcy filing;

(6) Any Merchant transfers or sells all or substantially all of its assets without the prior written consent of FF;

(7) Any Merchant makes or sends notice of any intended bulk sale or transfer by any Merchant without the prior written consent of FF;

(8) Any Merchant uses multiple depository accounts without the prior written consent of FF;

(9) Any Merchant changes the Account without the prior written consent of FF;

(10) FF is not provided with updated login or password information for the Account within one business day after any such change is made by any Merchant;

(11) Any Merchant fails to send bank statements, merchant account statements, or bank login information for the Account within two business days after a written request for same is made by FF;

(12) Any Merchant performs any act that reduces the value of any Collateral granted under this Agreement;

(13) Any Merchant fails to deposit its Receivables into the Account;

(14) Any Merchant causes any ACH debit to the Account by FF to be blocked or stopped without providing any advance written notice to FF, which notice may be given by e-mail to office@foreverfunding.co; or

(15) Any Merchant prevents FF from collecting any part of the Receivables Purchased Amount;

(16) Any Merchant causes any ACH debit to the Account to be stopped or otherwise returned that would result in an ACH Return Code of R08, R10, or R29 and that Merchant does not within two business days thereafter provide FF with written notice thereof explaining why that Merchant caused the ACH debit to be stopped or otherwise returned, which notice may be given by e-mail to office@foreverfunding.co; or

(17) Any Merchant defaults under any of the terms, covenants, and conditions of any other agreement with FF.

**35. Remedies.** In case any Event of Default occurs and is not waived, FF may proceed to protect and enforce its rights or remedies by suit in equity or by action at law, or both, whether for the specific performance of any covenant, agreement, or other provision contained herein, or to enforce the discharge of each Merchant's obligations hereunder, or any other legal or equitable right or remedy. All rights, powers, and remedies of FF in connection with this Agreement, including each Protection listed in Section 17, may be exercised at any time by FF after the occurrence of an Event of Default, are cumulative and not exclusive, and will be in addition to any other rights, powers, or remedies provided by law or equity. In addition to the foregoing, in case any Event of Default occurs and is not waived, FF will be entitled to the issuance of an injunction, restraining order, or other equitable relief in FF's favor, subject to court or arbitrator approval, restraining each Merchant's accounts and/or receivables up to the amount due to FF as a result of the Event of Default, and each Merchant will be deemed to have consented to the granting of an application for the same to any court or arbitral tribunal of competent jurisdiction without any prior notice to any Merchant or Guarantor and without FF being required to furnish a bond or other undertaking in connection with the application.

**36. Required Notifications.** Each Merchant is required to give FF written notice at least one day prior to any filing under Title 11 of the United States Code. Merchant(s) are required to give FF at least seven days' written notice prior to the closing of any sale of all or substantially all of any Merchant's assets or stock.

**37. Assignment.** This Agreement shall be binding upon and inure to the benefit of the parties and their respective successors and assigns, except that Merchant(s) shall not have the right to assign its rights hereunder or any interest herein without the prior written consent of FF, which consent may be withheld in FF's sole discretion. FF may assign, transfer, or sell its rights under this Agreement, including, without limitation, its rights to receive the Receivables Purchased Amount, and its rights under Section 33 of this Agreement, the Guarantee, and any other agreement, instrument, or document executed in connection with the transactions contemplated by this Agreement (a "Related Agreement"), or delegate its duties hereunder or thereunder, either in whole or in part. From and after the effective date of any such assignment or transfer by FF, whether or not any Merchant has actual notice thereof, this Agreement and each Related Agreement shall be deemed amended and modified (without the need for any further action on the part of any Merchant or FF) such that the assignee shall be deemed a party to this Agreement and any such Related Agreement and, to the extent provided in the assignment document between FF and such assignee (the "Assignment Agreement"), have the rights and obligations of FF

**I have read and agree to the terms and conditions set forth above:**

DocuSigned by:

RONNIE FRANK WALRAVEN JR

190D4E5D0D8B459...

Name and Title: RONNIE FRANK WALRAVEN JR          Date:    7/24/2025

FILED: NEW YORK COUNTY CLERK 03/12/2026 02:56 PM

INDEX NO. 651550/2026

NYSCEF DOC. NO. 5

RECEIVED NYSCEF: 03/12/2026

Case 1:26-cv-03849-MKV    Document 1-3    Filed 05/08/26    Page 48 of 118

Page **9** of **20**

## STANDARD MERCHANT CASH ADVANCE AGREEMENT

under this Agreement and such Related Agreements with respect to the portion of the Receivables Purchased Amount set forth in such Assignment Agreement, including but not limited to rights in the Receivables, Collateral and Additional Collateral, the benefit of each Guarantor's guaranty regarding the full and prompt performance of every obligation that is a subject of the Guarantee, FF's rights under Section 17 of this Agreement (Protections Against Default), and to receive damages from any Merchant following a breach of this Agreement by any Merchant. In connection with such assignment, FF may disclose all information that FF has relating to any Merchant or its business. Each Merchant agrees to acknowledge any such assignment in writing upon FF's request.

**38. Notices.** All notices, requests, consents, demands, and other communications hereunder shall be delivered by certified mail, return receipt requested, or by overnight delivery with signature confirmation to the respective parties to this Agreement at their addresses set forth in this Agreement and shall become effective only upon receipt. Written notice may also be given to any Merchant or Guarantor by e-mail to the E-mail Address listed on the first page of this Agreement. Each Merchant must set its spam or junk mail filter to accept e-mails sent by office@foreverfunding.co and its domain. This Section is not applicable to service of process or notices in any legal proceedings.

**39. Choice of Law.** Each Merchant acknowledges and agrees that this Agreement was made in the State of New York, that the Purchase Price is being paid by FF in the State of New York, that the Receivables Purchased Amount is being delivered to FF in the State of New York, and that the State of New York has a reasonable relationship to the transactions encompassed by this Agreement. This Agreement and the relationship between FF, each Merchant, and each Guarantor will be governed by and construed in accordance with the laws of the State of New York, without regard to any applicable principles of conflict of laws.

**40. Forum and Venue Selection.** Any litigation relating to this Agreement or involving FF on one side and any Merchant or any Guarantor on the other must be commenced and maintained in any court located in the Counties of Nassau, New York, or Sullivan in the State of New York (the "Acceptable Forums"). The parties agree that the Acceptable Forums are convenient, submit to the jurisdiction of the Acceptable Forums, and waive any and all objections to the jurisdiction or venue of the Acceptable Forums. If any litigation is initiated in any other venue or forum, the parties waive any right to oppose any motion or application made by any party to transfer such litigation to an Acceptable Forum. The parties agree that this Agreement encompasses the transaction of business within the City of New York and that the Civil Court of the City of New York ("Civil Court") will have jurisdiction over any litigation relating to this Agreement that is within the jurisdictional limit of the Civil Court. In addition to the Acceptable Forums, any action or proceeding to enforce a judgment or arbitration award against any Merchant or Guarantor or to restrain or collect any amount due to FF may be commenced and maintained in any other court of competent jurisdiction.

**41. Jury Waiver.** The parties agree to waive trial by jury in any dispute between them.

**42. Counterclaim Waiver.** In any litigation or arbitration commenced by FF, each Merchant and each Guarantor will not be permitted to interpose any counterclaim.

**43. Statutes of Limitations.** Each Merchant and each Guarantor agree that any claim that is not asserted against FF within one year of its accrual will be time barred.

**44. Costs.** Each Merchant and each Guarantor must pay all of FF's reasonable costs associated with a breach by any Merchant of the covenants in this Agreement and the enforcement thereof, including but not limited to collection agency fees, attorney fees, which may include a contingency fee of up to 40% of the amount claimed, expert witness fees, and costs of suit.

**45. Prejudgment and Postjudgment Interest.** If FF becomes entitled to the entry of a judgment against any Merchant or any Guarantor, then FF will be entitled to the recovery of prejudgment interest at a rate of 24% per annum (or 16% per annum if any Merchant is a sole proprietorship), or the maximum rate permitted by applicable law if less, and upon entry of any such judgment, it will accrue interest at a postjudgment rate of 24% per annum (or 16% per annum if any

**I have read and agree to the terms and conditions set forth above:**

DocuSigned by:

*RONNIE FRANK WALRAVEN JR*

190D4E5D0D8B459...

Name and Title: RONNIE FRANK WALRAVEN JR          Date:    7/24/2025

Case 1:26-cv-03849-MKV   Document 1-3   Filed 05/08/26   Page 49 of 118

Page **10** of **20**

## STANDARD MERCHANT CASH ADVANCE AGREEMENT

Merchant is a sole proprietorship), or the maximum rate permitted by applicable law if less, which rate will govern over the statutory rate of interest up until actual satisfaction of the judgment.

**46. Legal Fees.** If FF prevails in any litigation or arbitration with any Merchant or any Guarantor, then that Merchant and/or Guarantor must pay FF's reasonable attorney fees, which may include a contingency fee of up to 40% of the amount claimed.

**47. Class Action Waiver.** FF, each Merchant, and each Guarantor agree that they may bring claims against each other relating to this Agreement only in their individual capacities, and not as a plaintiff or class action member in any purported class or representative proceedings.

**48. Arbitration.** Any action or dispute relating to this Agreement or involving FF on one side and any Merchant or any Guarantor on the other, including, but not limited to issues of arbitrability, will, at the option of any party to such action or dispute, be determined by arbitration before a single arbitrator. The arbitration will be administered either by Arbitration Services, Inc. under its Commercial Arbitration Rules as are in effect at that time, which rules are available at www.arbitrationservicesinc.com, or by Mediation & Commercial Arbitration, Inc. under its Commercial Arbitration Rules as are in effect at that time, which rules are available at www.mcarbitration.org. Once an arbitration is initiated with one of these arbitral forums, it must be maintained exclusively before that arbitral forum and the other arbitral forum specified herein may not be used. Any arbitration relating to this Agreement must be conducted in the Counties of Nassau, New York, Queens, or Kings in the State of New York. Notwithstanding any provision of any applicable arbitration rules, any witness in an arbitration who does not reside in or have a place for the regular transaction of business located in New York City or the Counties of Nassau, Suffolk, or Westchester in the State of New York will be permitted to appear and testify remotely by telephone or video conferencing. In case any Event of Default occurs and is not waived, each Merchant and each Guarantor consents to FF making an application to the arbitrator, without notice to any Merchant or any Guarantor, for the issuance of an injunction, restraining order, or other equitable relief in FF's favor, subject to court or arbitrator approval, restraining each Merchant's accounts and/or receivables up to the amount due to FF as a result of the Event of Default.

Each Merchant acknowledges and agrees that this Agreement is the product of communications conducted by telephone and the Internet, which are instrumentalities of interstate commerce, that the transactions contemplated under this Agreement will be made by wire transfer and ACH, which are also instrumentalities of interstate commerce, and that this Agreement therefore evidences a transaction affecting interstate commerce. Accordingly, notwithstanding any provision in this Agreement to the contrary, all matters of arbitration relating to this Agreement will be governed by and construed in accordance with the provisions of the Federal Arbitration Act, codified as Title 9 of the United States Code, however any application for injunctive relief in aid of arbitration or to confirm an arbitration award may be made under Article 75 of the New York Civil Practice Law and Rules. The arbitration agreement contained in this Section may also be enforced by any employee, agent, attorney, member, manager, officer, subsidiary, affiliate entity, successor, or assign of FF.

**49. Service of Process.** Each Merchant and each Guarantor consent to service of process and legal notices made by First Class or Priority Mail delivered by the United States Postal Service and addressed to the Contact Address set forth on the first page of this Agreement or any other address(es) provided in writing to FF by any Merchant or any Guarantor, and unless applicable law or rules provide otherwise, any such service will be deemed complete upon dispatch. Each Merchant and each Guarantor agrees that it will be precluded from asserting that it did not receive service of process or any other notice mailed to the Contact Address set forth on the first page of this Agreement if it does not furnish a certified mail return receipt signed by FF demonstrating that FF was provided with notice of a change in the Contact Address.

**50. Survival of Representation, etc.** All representations, warranties, and covenants herein shall survive the execution and delivery of this Agreement and shall continue in full force until all obligations under this Agreement shall have been satisfied in full and this Agreement shall have terminated.

**51. Waiver.** No failure on the part of FF to exercise, and no delay in exercising, any right under this Agreement, shall operate as a waiver thereof, nor shall any single or partial exercise of any right under this Agreement preclude any other or further exercise thereof or the exercise of any other right. The remedies provided hereunder are cumulative and

**I have read and agree to the terms and conditions set forth above:**

DocuSigned by:

*RONNIE FRANK WALRAVEN JR*

190D4E5D0D8B459...

Name and Title: RONNIE FRANK WALRAVEN JR          Date:     7/24/2025

Case 1:26-cv-03849-MKV     Document 1-3     Filed 05/08/26     Page 50 of 118

## STANDARD MERCHANT CASH ADVANCE AGREEMENT

not exclusive of any remedies provided by law or equity.

**52. Independent Sales Organizations/Brokers.** Each Merchant and each Guarantor acknowledge that it may have been introduced to FF by or received assistance in entering into this Agreement or its Guarantee from an independent sales organization or broker ("ISO"). Each Merchant and each Guarantor agree that any ISO is separate from and is not an agent or representative of FF. Each Merchant and each Guarantor acknowledge that FF is not bound by any promises or agreements made by any ISO that are not contained within this Agreement. Each Merchant and each Guarantor exculpate from liability and agree to hold harmless and indemnify FF and its officers, directors, members, shareholders, employees, and agents from and against all losses, damages, claims, liabilities, and expenses (including reasonable attorney and expert fees) incurred by any Merchant or any Guarantor resulting from any act or omission by any ISO. Each Merchant and each Guarantor acknowledge that any fee that they paid to any ISO for its services is separate and apart from any payment under this Agreement. Each Merchant and each Guarantor acknowledge that FF does not in any way require the use of an ISO and that any fees charged by any ISO are not required as a condition or incident to this Agreement.

**53. Modifications; Agreements.** No modification, amendment, waiver, or consent of any provision of this Agreement shall be effective unless the same shall be in writing and signed by all parties.

**54. Severability.** If any provision of this Agreement is deemed invalid or unenforceable as written, it will be construed, to the greatest extent possible, in a manner which will render it valid and enforceable, and any limitation on the scope or duration of any such provision necessary to make it valid and enforceable will be deemed to be part thereof. If any provision of this Agreement is deemed void, all other provisions will remain in effect.

**I have read and agree to the terms and conditions set forth above:**

DocuSigned by:

*RONNIE FRANK WALRAVEN JR*

190D4E5D0D8B459...

Name and Title: RONNIE FRANK WALRAVEN JR     Date:     7/24/2025

Case 1:26-cv-03849-MKV    Document 1-3    Filed 05/08/26    Page 51 of 118

Page **12** of **20**

## STANDARD MERCHANT CASH ADVANCE AGREEMENT

**55. Headings.** Headings of the various articles and/or sections of this Agreement are for convenience only and do not necessarily define, limit, describe, or construe the contents of such articles or sections.

**56. Attorney Review.** Each Merchant acknowledges that it has had an opportunity to review this Agreement and all addenda with counsel of its choosing before signing the documents or has chosen not to avail itself of the opportunity to do so.

**57. Entire Agreement.** This Agreement, inclusive of all addenda, if any, executed simultaneously herewith constitutes the full understanding of the parties to the transaction herein and may not be amended, modified, or canceled except in writing signed by all parties. Should there arise any conflict between this Agreement and any other document preceding it, this Agreement will govern. This Agreement does not affect any previous agreement between the parties unless such an agreement is specifically referenced herein. This Agreement will not be affected by any subsequent agreement between the parties unless this Agreement is specifically referenced therein. FF will not be permitted to enforce any of its rights under this Agreement if so expressed by in writing by Gene Rosen's Law Firm.

**58. Counterparts; Fax and Electronic Signatures.** This Agreement may be executed electronically and in counterparts. Facsimile and electronic copies of this Agreement will have the full force and effect of an original.

### EACH UNDERSIGNED HEREBY ACCEPTS THE TERMS OF THIS AGREEMENT

**FOR THE MERCHANT/OWNER (#1)**

By: RONNIE FRANK WALRAVEN JR
　　　　　(Print Name and Title)

DocuSigned by:
*RONNIE FRANK WALRAVEN JR*
190D4E5D0D8B459...
(Signature)

SS# ████████

Driver License Number ████████

**FOR THE MERCHANT/OWNER (#2)**

By:
　　　　　(Print Name and Title)

(Signature)

SS#

Driver License Number

Approved for FOREVER FUNDING LLC by:

DocuSign Envelope ID: 3F18A94D-62FE-4583-8216-A7EAFA9CF7A9

Case 1:26-cv-03849-MKV    Document 1-3    Filed 05/08/26    Page 52 of 118

## STANDARD MERCHANT CASH ADVANCE AGREEMENT

## GUARANTEE

**G1. Personal Guarantee of Performance.** This is a personal guaranty of performance, dated Jul. 24, 2025, of the Standard Merchant Cash Advance Agreement, dated Jul. 24, 2025 ("Agreement"), inclusive of all addenda, if any, executed simultaneously therewith, by and between FOREVER FUNDING LLC ("FF") and ER OF TEXAS, LLC       ("Merchant"). Each undersigned Guarantor hereby guarantees each Merchant's performance of all of the representations, warranties, and covenants made by each Merchant to FF in the Agreement, inclusive of all addenda, if any, executed simultaneously herewith, as the Agreement may be renewed, amended, extended, or otherwise modified (the "Guaranteed Obligations"). Each Guarantor's obligations are due at the time of any breach by any Merchant of any representation, warranty, or covenant made by any Merchant in the Agreement.

**G2. Communications.** FF may use automated telephone dialing, text messaging systems, and e-mail to provide messages to Guarantor(s) about Merchant(s)'s account. Telephone messages may be played by a machine automatically when the telephone is answered, whether answered by an Owner, a Guarantor, or someone else. These messages may also be recorded by the recipient's answering machine or voice mail. Each Guarantor gives FF permission to call or send a text message to any telephone number given to FF in connection with this Agreement and to play pre-recorded messages and/or send text messages with information about this Agreement and/or any Merchant's account over the phone. Each Guarantor also gives FF permission to communicate such information to them by e-mail. Each Guarantor agrees that FF will not be liable to any of them for any such calls or electronic communications, even if information is communicated to an unintended recipient. Each Guarantor acknowledges that when they receive such calls or electronic communications, they may incur a charge from the company that provides them with telecommunications, wireless, and/or Internet services, and that FF has no liability for any such charges.

**G3. Guarantor Waivers.** If FF considers any Event of Default to have taken place under the Agreement, then FF may enforce its rights under this Guarantee without first seeking to obtain payment from any Merchant, any other guarantor, or any Collateral, Additional Collateral, or Cross-Collateral FF may hold pursuant to this Guarantee or any other agreement or guarantee. FF does not have to notify any Guarantor of any of the following events and Guarantor(s) will not be released from its obligations under this Guarantee even if it is not notified of: (i) any Merchant's failure to pay timely any amount owed under the Agreement; (ii) any adverse change in any Merchant's financial condition or business; (iii) any sale or other disposition of any collateral securing the Guaranteed Obligations or any other guarantee of the Guaranteed Obligations; (iv) FF's acceptance of the Agreement with any Merchant; and (v) any renewal, extension, or other modification of the Agreement or any Merchant's other obligations to FF. In addition, FF may take any of the following actions without releasing any Guarantor from any obligations under this Guarantee: (i) renew, extend, or otherwise modify the Agreement or any Merchant's other obligations to FF; (ii) if there is more than one Merchant, release a Merchant from its obligations to FF such that at least one Merchant remains obligated to FF; (iii) sell, release, impair, waive, or otherwise fail to realize upon any collateral securing the Guaranteed Obligations or any other guarantee of the Guaranteed Obligations; and (iv) foreclose on any collateral securing the Guaranteed Obligations or any other guarantee of the Guaranteed Obligations in a manner that impairs or precludes the right of Guarantor to obtain reimbursement for payment under the Agreement. Until the Receivables Purchased Amount and each Merchant's other obligations to FF under the Agreement and this Guarantee are paid in full, each Guarantor shall not seek reimbursement from any Merchant or any other guarantor for any amounts paid by it under the Agreement. Each Guarantor permanently waives and shall not seek to exercise any of the following rights that it may have against any Merchant, any other guarantor, or any collateral provided by any Merchant or any other guarantor, for any amounts paid by it or acts performed by it under this Guarantee: (i) subrogation; (ii) reimbursement; (iii) performance; (iv) indemnification; or (v) contribution.

**G4. Joint and Several Liability.** The obligations hereunder of the persons or entities constituting each Guarantor under this Guarantee are joint and several.

**G5. Injunctive Relief.** In case any Event of Default occurs and is not waived, FF will be entitled to the issuance of an injunction, restraining order, or other equitable relief in FF's favor, subject to court or arbitrator approval, restraining each Guarantor's accounts and/or receivables up to the amount due to FF as a result of the Event of Default, and each Guarantor

**I have read and agree to the terms and conditions set forth above:**

DocuSigned by:

*RONNIE FRANK WALRAVEN JR*

190D4E5D0D8B459...

Name and Title: RONNIE FRANK WALRAVEN JR        Date:    7/24/2025

Case 1:26-cv-03849-MKV    Document 1-3    Filed 05/08/26    Page 53 of 118

Page **14** of **20**

## STANDARD MERCHANT CASH ADVANCE AGREEMENT

will be deemed to have consented to the granting of an application for the same to any court or arbitral tribunal of competent jurisdiction without any prior notice to any Merchant or Guarantor and without FF being required to furnish a bond or other undertaking in connection with the application.

**G6. Choice of Law.** Each Guarantor acknowledges and agrees that the Agreement and this Guarantee were made in the State of New York, that the Purchase Price is being paid by FF in the State of New York, that the Receivables Purchased Amount is being delivered to FF in the State of New York, and that the State of New York has a reasonable relationship to the transactions encompassed by the Agreement and this Guarantee. This Guarantee and the relationship between FF, each Merchant, and each Guarantor will be governed by and construed in accordance with the laws of the State of New York, without regard to any applicable principles of conflict of laws.

**G7. Forum and Venue Selection.** Any litigation relating to this Agreement or this Guarantee or involving FF on one side and any Merchant or any Guarantor on the other must be commenced and maintained in any court located in the Counties of Nassau, New York, or Sullivan in the State of New York (the "Acceptable Forums"). The parties agree that the Acceptable Forums are convenient, submit to the jurisdiction of the Acceptable Forums, and waive any and all objections to the jurisdiction or venue of the Acceptable Forums. If any litigation is initiated in any other venue or forum, the parties waive any right to oppose any motion or application made by any party to transfer such litigation to an Acceptable Forum. The parties agree that this Guarantee encompasses the transaction of business within the City of New York and that the Civil Court of the City of New York ("Civil Court") will have jurisdiction over any litigation relating to this Guarantee that is within the jurisdictional limit of the Civil Court. In addition to the Acceptable Forums, any action or proceeding to enforce a judgment or arbitration award against any Merchant or Guarantor or to restrain or collect any amount due to FF may be commenced and maintained in any other court of competent jurisdiction.

**G8. Jury Waiver.** Each Guarantor agrees to waive trial by jury in any dispute with FF.

**G9. Counterclaim Waiver.** In any litigation or arbitration commenced by FF, each Merchant and each Guarantor will not be permitted to interpose any counterclaim.

**G10. Statutes of Limitations.** Each Merchant and each Guarantor agree that any claim that is not asserted against FF within one year of its accrual will be time barred.

**G11. Costs.** Each Merchant and each Guarantor must pay all of FF's reasonable costs associated with a breach by any Merchant of the covenants in this Agreement or this Guarantee and the enforcement thereof, including but not limited to collection agency fees, expert witness fees, and costs of suit.

**G12. Prejudgment and Postjudgment Interest.** If FF becomes entitled to the entry of a judgment against any Merchant or any Guarantor, then FF will be entitled to the recovery of prejudgment interest at a rate of 24% per annum (or 16% per annum if any Merchant is a sole proprietorship), or the maximum rate permitted by applicable law if less, and upon entry of any such judgment, it will accrue interest at a postjudgment rate of 24% per annum (or 16% per annum if any Merchant is a sole proprietorship), or the maximum rate permitted by applicable law if less, which rate will govern over the statutory rate of interest up until actual satisfaction of the judgment.

**G13. Legal Fees.** If FF prevails in any litigation or arbitration with any Merchant or any Guarantor, then that Merchant and/or Guarantor must pay FF's reasonable attorney fees, which may include a contingency fee of up to 40% of the amount claimed.

**G14. Class Action Waiver.** FF, each Merchant, and each Guarantor agree that they may bring claims against each other relating to this Agreement only in their individual capacities, and not as a plaintiff or class action member in any purported class or representative proceedings.

**G15. Arbitration.** Any action or dispute relating to this Agreement or this Guarantee or involving FF on one side

**I have read and agree to the terms and conditions set forth above:**

RONNIE FRANK WALRAVEN JR
DocuSigned by:
190D4E5D0D8B459...

Name and Title: RONNIE FRANK WALRAVEN JR          Date:    7/24/2025

Docusign Envelope ID: 3F18404D-63EP-4628-8218-A7ATA9CF7F36

Case 1:26-cv-03849-MKV    Document 1-3    Filed 05/08/26    Page 54 of 118

## STANDARD MERCHANT CASH ADVANCE AGREEMENT

and any Merchant or any Guarantor on the other, including, but not limited to issues of arbitrability, will, at the option of any party to such action or dispute, be determined by arbitration before a single arbitrator. The arbitration will be administered either by Arbitration Services, Inc. under its Commercial Arbitration Rules as are in effect at that time, which rules are available at www.arbitrationservicesinc.com, or by Mediation & Commercial Arbitration, Inc. under its Commercial Arbitration Rules as are in effect at that time, which rules are available at www.mcarbitration.org. Once an arbitration is initiated with one of these arbitral forums, it must be maintained exclusively before that arbitral forum and the other arbitral forum specified herein may not be used. Any arbitration relating to this Agreement or this Guarantee must be conducted in the Counties of Nassau, New York, Queens, or Kings in the State of New York. Notwithstanding any provision of any applicable arbitration rules, any witness in an arbitration who does not reside in or have a place for the regular transaction of business located in New York City or the Counties of Nassau, Suffolk, or Westchester in the State of New York will be permitted to appear and testify remotely by telephone or video conferencing. In case any Event of Default occurs and is not waived, each Guarantor consents to FF making an application to the arbitrator, without notice to any Merchant or any Guarantor, for the issuance of an injunction, restraining order, or other equitable relief in FF's favor, subject to court or arbitrator approval, restraining each Guarantor's accounts and/or receivables up to the amount due to FF as a result of the Event of Default.

Each Guarantor acknowledges and agrees that the Agreement and this Guarantee are the product of communications conducted by telephone and the Internet, which are instrumentalities of interstate commerce, that the transactions contemplated under the Agreement and this Guarantee will be made by wire transfer and ACH, which are also instrumentalities of interstate commerce, and that the Agreement and this Guarantee therefore evidence a transaction affecting interstate commerce. Accordingly, notwithstanding any provision in the Agreement or this Guarantee to the contrary, all matters of arbitration relating to the Agreement or this Guarantee will be governed by and construed in accordance with the provisions of the Federal Arbitration Act, codified as Title 9 of the United States Code, however any application for injunctive relief in aid of arbitration or to confirm an arbitration award may be made under Article 75 of the New York Civil Practice Law and Rules. The arbitration agreement contained in this Section may also be enforced by any employee, agent, attorney, member, manager, officer, subsidiary, affiliate entity, successor, or assign of FF.

**G16. Service of Process.** Each Merchant and each Guarantor consent to service of process and legal notices made by First Class or Priority Mail delivered by the United States Postal Service and addressed to the Contact Address set forth on the first page of the Agreement or any other address(es) provided in writing to FF by any Merchant or any Guarantor, and unless applicable law or rules provide otherwise, any such service will be deemed complete upon dispatch. Each Merchant and each Guarantor agrees that it will be precluded from asserting that it did not receive service of process or any other notice mailed to the Contact Address set forth on the first page of the Agreement if it does not furnish a certified mail return receipt signed by FF demonstrating that FF was provided with notice of a change in the Contact Address.

**G17. Severability.** If any provision of this Guarantee is deemed invalid or unenforceable as written, it will be construed, to the greatest extent possible, in a manner which will render it valid and enforceable, and any limitation on the scope or duration of any such provision necessary to make it valid and enforceable will be deemed to be part thereof. If any provision of this Guarantee is deemed void, all other provisions will remain in effect.

**G18. Survival.** The provisions of Sections G2, G3, G4, G5, G6, G7, G8, G9, G10, G11, G12, G13, G14, G15, G16, G17, G18, G19, G20, G21, and G22 shall survive any termination of this Guarantee.

**G19. Headings.** Headings of the various articles and/or sections of this Guarantee are for convenience only and do not necessarily define, limit, describe, or construe the contents of such articles or sections.

**G20. Attorney Review.** Each Guarantor acknowledges that it has had an opportunity to review this Guarantee, the Agreement, and all addenda with counsel of its choosing before signing the documents or has chosen not to avail itself of the opportunity to do so.

**G21. Entire Agreement.** This Guarantee, inclusive of all addenda, if any, executed simultaneously herewith may not be amended, modified, or canceled except in writing signed by all parties. Should there arise any conflict between this Guarantee and any other document preceding it, this Guarantee will govern. This Guarantee does not affect any previous

**I have read and agree to the terms and conditions set forth above:**

DocuSigned by:

*RONNIE FRANK WALRAVEN JR*

190D4E5D0D8B459...

Name and Title: RONNIE FRANK WALRAVEN JR          Date:      7/24/2025

DocuSign Envelope ID: 3F18A84D-62EC-4653-8216-A7474A9CF7C6
Case 1:26-cv-03849-MKV    Document 1-3    Filed 05/08/26    Page 55 of 118

## STANDARD MERCHANT CASH ADVANCE AGREEMENT

agreement between the parties unless such an agreement is specifically referenced in the Agreement or herein. This Guarantee will not be affected by any subsequent agreement between the parties unless this Guarantee is specifically referenced therein.

**I have read and agree to the terms and conditions set forth above:**

DocuSigned by:

RONNIE FRANK WALRAVEN JR

190D4E5D0D8B459...

Name and Title: RONNIE FRANK WALRAVEN JR    Date:    7/24/2025

DocuSign Envelope ID: 3F18404D-63EC-4508-8219-A7747A9CF7C6

## STANDARD MERCHANT CASH ADVANCE AGREEMENT

**G22. Counterparts; Fax and Electronic Signatures.** This Guarantee may be executed electronically and in counterparts. Facsimile and electronic copies of this Guarantee will have the full force and effect of an original.

THE TERMS, DEFINITIONS, CONDITIONS AND INFORMATION SET FORTH IN THE "STANDARD MERCHANT CASH ADVANCE AGREEMENT", INCLUDING THE "TERMS AND CONDITIONS", ARE HEREBY INCORPORATED IN AND MADE A PART OF THIS GUARANTEE. CAPITALIZED TERMS NOT DEFINED IN THIS GUARANTEE SHALL HAVE THE MEANING SET FORTH IN THE STANDARD MERCHANT CASH ADVANCE AGREEMENT, INCLUDING THE TERMS AND CONDITIONS.

### EACH UNDERSIGNED HEREBY ACCEPTS THE TERMS OF THIS GUARANTEE

**GUARANTOR (#1)**

By: RONNIE FRANK WALRAVEN JR
        (Print Name)

DocuSigned by:

*RONNIE FRANK WALRAVEN JR*
190D4E5D0D8B459...
        (Signature)

SS# █████████    Driver License Number █████████

**GUARANTOR (#2)**

By:
        (Print Name)            (Signature)

SS#    Driver License Number

Case 1:26-cv-03849-MKV    Document 1-3    Filed 05/08/26    Page 57 of 118

Page **18** of **20**

STANDARD MERCHANT CASH ADVANCE AGREEMENT

# BANK INFORMATION

Dear Merchant,

Thank you for accepting this offer from FOREVER FUNDING LLC. We look forward to being your funding partner. You authorize FOREVER FUNDING LLC to collect the Receivables Purchased Amount under this Agreement by ACH debiting your bank account with the bank listed below. FOREVER FUNDING LLC will require viewing access to your bank account each business day. FOREVER FUNDING LLC will also require viewing access to your bank account, prior to funding, as part of our underwriting process. Please fill out the form below with the information necessary to access your account.

**\* Be sure to indicate capital or lower case letters.**

Name of bank:  Chase

Name of account:  Na

Routing number: 111000614

Account number: █████████

Bank portal website:  Na

Username:  Na

Password:  Na

Security Question/Answer 1:  Na

Security Question/Answer 2:  Na

Security Question/Answer 3:  Na

Any other information necessary to access your account:

 Na

If you have any questions please feel free to contact us directly at (347) 719-7290.

INDEX NO. 651550/2026

DocuSign Envelope ID: 3F18404D-63FC-4608-8218-A7A4F9CF7C64

RECEIVED NYSCEF: 03/12/2026

# Emergency Contacts

**4 valid emergency contacts are required to receive funding. Contacts will be verified.**

**Name:**  Na

**Relation:**  Na

**Phone Number:**  Na

**Email Address:**  Na

**Name:**  Na

**Relation:**  Na

**Phone Number:**  Na

**Email Address:**  Na

**Name:**  Na

**Relation:**  Na

**Phone Number:**  Na

**Email Address:**  Na

**Name:**  Na

**Relation:**  Na

**Phone Number:**  Na

**Email Address:**  Na

FILED: NEW YORK COUNTY CLERK 03/12/2026 02:56 PM
NYSCEF DOC. NO. 5

INDEX NO. 651550/2026
RECEIVED NYSCEF: 03/12/2026

Case 1:26-cv-03849-MKV    Document 1-3    Filed 05/08/26    Page 59 of 118

DocuSign Envelope ID: 3F18404D-63EC4598-8216-A7777A9CF7CC

## ADDENDUM TO CONTRACT
## WAIVER OF PERSONAL SERVICE

This Addendum ("Addendum") is to be made a part of purchase and sale of future receivables agreement (the "Contract") between FOREVER FUNDING LLC ("Purchaser") and ER OF TEXAS, LLC    ("Merchant") and RONNIE FRANK WALRAVEN JR  ("Guarantor") (collectively the "Parties").

1. **Merchant** hereby irrevocably and unconditionally waives personal service of any summons, complaint, or other process, which may be made by any other means permitted by New York law.  Merchant understands and agrees that an action, lawsuit, or controversy may be taken up and considered by a court without any further notice. Merchant further agrees to waive any objection to the absence of formal service of process.

2. **Guarantor** hereby irrevocably and unconditionally waives personal service of any summons, complaint, or other process, which may be made by any other means permitted by New York law.  Guarantor understands and agrees that an action, lawsuit, or controversy may be taken up and considered by a court without any further notice.  Guarantor further agrees to waive any objection to the absence of formal service of process.

3. **MERCHANT** HEREBY AGREES TO ACCEPT SERVICE OF ANY SUMMONS, COMPLAINT,  OR OTHER PROCESS BY ELECTRONIC MAIL ("EMAIL")AT ███████████████ OR BY UNITED STATES POSTAL SERVICE ("USPS") AT THE ADDRESS LISTED ON THE CONTRACT FOR THE MERCHANT OR BY ANY OTHER MEANS PERMITTED BY NEW YORK LAW.

4. **GUARANTOR** HEREBY AGREES TO ACCEPT SERVICE OF ANY SUMMONS, COMPLAINT,  OR OTHER PROCESS BY ELECTRONIC MAIL ("EMAIL") AT ███████████████ OR USPS AT THE ADDRESS LISTED ON THE CONTRACT FOR THE GUARANTOR OR BY ANY OTHER MEANS PERMITTED BY NEW YORK LAW.

5. Service shall be effective upon sending the electronic mail or depositing the summons and complaint in a USPS mailbox. Merchants' or Guarantors' email address or physical address provided shall be presumed to be valid and current unless Merchants or Guarantors provide a new email or physical address for service of process.

6. Merchant or Guarantor shall notify Purchaser of any changes to its physical address or email address for service. Unless Seller is notified of a change in address, all addresses shall be presumed to be accurate.

7. This Addendum shall supersede any inconsistent notice requirements in the Contract with respect to service of process.

8. Any parties, including additional guarantors shall agree to waive service of process and accept service at the email address provided or last known address.

**For the Merchant**

DocuSigned by:

*RONNIE FRANK WALRAVEN JR*

190D4E5D0D8B459...

_____
**Name:** RONNIE FRANK WALRAVEN JR

**Date:** Jul. 24, 2025

**Additional Guarantor (if applicable)**

_____
**Name:**
**Date:** Jul. 24, 2025

Case 1:26-cv-03849-MKV     Document 1-3     Filed 05/08/26     Page 60 of 118

COMPLAINT

EXHIBIT "E"

| | Jun 10, 2025 | WIRE TO ER OF TEXAS HILLCREST LLC | 720,000.00 |

Case 1:26-cv-03849-MKV   Document 1-3   Filed 05/08/26   Page 62 of 118

COMPLAINT

EXHIBIT "F"

| | | Date | Description | Amount |
|---|---|---|---|---|
| Deal ID | FE1197 | 7/25/2025 | FOREVER FUNDING FE1197 ER Jul 25 CCD 067015096 | $7,495.00 |
| Name | ER OF TEXAS, LLC 5 | 7/28/2025 | FOREVER FUNDING FE1197 ER Jul 28 CCD 067015096 | $7,495.00 |
| Date | 7/24/2025 | 7/29/2025 | FOREVER FUNDING FE1197 ER Jul 29 CCD 067015096 | $7,495.00 |
| Status | Default | 7/30/2025 | FOREVER FUNDING FE1197 ER Jul 30 CCD 067015096 | $7,495.00 |
| | | 7/31/2025 | R01 Insufficient Funds (07/29/2025) FE1197 ER OF TEXAS, LL Ending**8168 | ($7,495.00) |
| Principal | $500,000.00 | 7/31/2025 | FOREVER FUNDING FE1197 ER Jul 31 CCD 067015096 | $7,495.00 |
| Payback | $749,500.00 | 8/1/2025 | FOREVER FUNDING FE1197 ER Aug 1 CCD 067015096 | $7,495.00 |
| Bank Fee | $25,000.00 | 8/4/2025 | FOREVER FUNDING FE1197 ER Aug 4 CCD 067015096 | $7,495.00 |
| Type | MCA | 8/5/2025 | FOREVER FUNDING FE1197 ER Aug 5 CCD 067015096 | $7,495.00 |
| | | 8/6/2025 | FOREVER FUNDING FE1197 ER Aug 6 CCD 067015096 | $7,495.00 |
| Net | $475,000.00 | 8/7/2025 | FOREVER FUNDING FE1197 ER Aug 7 CCD 067015096 | $7,495.00 |
| | | 8/8/2025 | FOREVER FUNDING FE1197 ER Aug 8 CCD 067015096 | $7,495.00 |
| Paid | $367,647.15 | 8/11/2025 | FOREVER FUNDING FE1197 ER Aug 11 CCD 067015096 | $7,495.00 |
| Paid % | 49.05% | 8/12/2025 | FOREVER FUNDING FE1197 ER Aug 12 CCD 067015096 | $7,495.00 |
| Balance | $381,852.85 | 8/13/2025 | FOREVER FUNDING FE1197 ER Aug 13 CCD 067015096 | $7,495.00 |
| | | 8/14/2025 | FOREVER FUNDING FE1197 ER Aug 14 CCD 067015096 | $7,495.00 |
| | | 8/15/2025 | FOREVER FUNDING FE1197 ER Aug 15 CCD 067015096 | $7,495.00 |
| | | 8/18/2025 | WIRE FROM ER OF TEXAS HILLCREST L | $7,495.00 |
| | | 8/18/2025 | FOREVER FUNDING FE1197 ER Aug 18 CCD 067015096 | $7,495.00 |
| | | 8/18/2025 | R29 Corporate Customer Advises Not Authorized (08/15/2025) FE1197 ER OF TEXAS, LL Ending**8168 | ($7,495.00) |
| | | 8/19/2025 | FOREVER FUNDING FE1197 ER Aug 19 CCD 067015096 | $7,495.00 |
| | | 8/20/2025 | FOREVER FUNDING FE1197 ER Aug 20 CCD 067015096 | $7,495.00 |
| | | 8/21/2025 | FOREVER FUNDING FE1197 ER Aug 21 CCD 067015096 | $7,495.00 |
| | | 8/22/2025 | FOREVER FUNDING FE1197 ER Aug 22 CCD 067015096 | $7,495.00 |
| | | 8/25/2025 | FOREVER FUNDING FE1197 ER Aug 25 CCD 067015096 | $7,495.00 |
| | | 8/26/2025 | FOREVER FUNDING FE1197 ER Aug 26 CCD 067015096 | $7,495.00 |
| | | 8/27/2025 | FOREVER FUNDING FE1197 ER Aug 27 CCD 067015096 | $7,495.00 |
| | | 8/28/2025 | FOREVER FUNDING FE1197 ER Aug 28 CCD 067015096 | $7,495.00 |
| | | 8/29/2025 | FOREVER FUNDING FE1197 ER Aug 29 CCD 067015096 | $7,495.00 |
| | | 8/29/2025 | FOREVER FUNDING FE1197 ER Aug 29 CCD 067015096 | $7,495.00 |
| | | 9/2/2025 | R01 Insufficient Funds (08/28/2025) FE1197 ER OF TEXAS, LL Ending**8168 | ($7,495.00) |
| | | 9/2/2025 | FOREVER FUNDING FE1197 ER Sep 2 CCD 067015096 | $7,495.00 |
| | | 9/3/2025 | FOREVER FUNDING FE1197 ER Sep 3 CCD 067015096 | $7,495.00 |
| | | 9/4/2025 | FOREVER FUNDING FE1197 ER Sep 4 CCD 067015096 | $7,495.00 |
| | | 9/5/2025 | FOREVER FUNDING FE1197 ER Sep 5 CCD 067015096 | $7,495.00 |
| | | 9/8/2025 | FOREVER FUNDING FE1197 ER Sep 8 CCD 067015096 | $7,495.00 |
| | | 9/9/2025 | FOREVER FUNDING FE1197 ER Sep 9 CCD 067015096 | $7,495.00 |
| | | 9/10/2025 | FOREVER FUNDING FE1197 ER Sep 10 CCD 067015096 | $7,495.00 |
| | | 9/11/2025 | FOREVER FUNDING FE1197 ER Sep 11 CCD 067015096 | $7,495.00 |
| | | 9/12/2025 | FOREVER FUNDING FE1197 ER Sep 12 CCD 067015096 | $7,495.00 |

| Date | Description | Amount |
|---|---|---|
| 9/15/2025 | FOREVER FUNDING FE1197 ER Sep 15 CCD 067015096 | $7,495.00 |
| 9/16/2025 | FOREVER FUNDING FE1197 ER Sep 16 CCD 067015096 | $7,495.00 |
| 9/17/2025 | FOREVER FUNDING FE1197 ER Sep 17 CCD 067015096 | $7,495.00 |
| 9/18/2025 | FOREVER FUNDING FE1197 ER Sep 18 CCD 067015096 | $7,495.00 |
| 9/19/2025 | FOREVER FUNDING FE1197 ER Sep 19 CCD 067015096 | $7,495.00 |
| 9/22/2025 | FOREVER FUNDING FE1197 ER Sep 22 CCD 067015096 | $7,495.00 |
| 9/23/2025 | R01 Insufficient Funds (09/19/2025) FE1197 ER OF TEXAS, LL Ending**8168 | ($7,495.00) |
| 9/23/2025 | FOREVER FUNDING FE1197 ER Sep 23 CCD 067015096 | $7,495.00 |
| 9/24/2025 | FOREVER FUNDING FE1197 ER Sep 24 CCD 067015096 | $7,495.00 |
| 9/25/2025 | FOREVER FUNDING FE1197 ER Sep 25 CCD 067015096 | $7,495.00 |
| 9/26/2025 | FOREVER FUNDING FE1197 ER Sep 26 CCD 067015096 | $7,495.00 |
| 9/29/2025 | R01 Insufficient Funds (09/25/2025) FE1197 ER OF TEXAS, LL Ending**8168 | ($7,495.00) |
| 9/29/2025 | FOREVER FUNDING FE1197 ER Sep 29 CCD 067015096 | $7,495.00 |
| 9/30/2025 | FOREVER FUNDING FE1197 ER Sep 30 CCD 067015096 | $7,495.00 |
| 10/1/2025 | FOREVER FUNDING FE1197 ER Oct 1 CCD 067015096 | $7,495.00 |
| 10/2/2025 | FOREVER FUNDING FE1197 ER Oct 2 CCD 067015096 | $7,495.00 |
| 10/3/2025 | R01 Insufficient Funds (10/01/2025) FE1197 ER OF TEXAS, LL Ending**8168 | ($7,495.00) |
| 10/3/2025 | FOREVER FUNDING FE1197 ER Oct 3 CCD 067015096 | $7,495.00 |
| 10/6/2025 | FOREVER FUNDING FE1197 ER Oct 6 CCD 067015096 | $7,495.00 |
| 10/7/2025 | R01 Insufficient Funds (10/03/2025) FE1197 ER OF TEXAS, LL Ending**8168 | ($7,495.00) |
| 10/7/2025 | FOREVER FUNDING FE1197 ER Oct 7 CCD 067015096 | $7,495.00 |
| 10/8/2025 | R29 Corporate Customer Advises Not Authorized (10/06/2025) FE1197 ER OF TEXAS, LL Ending**8168 | ($7,495.00) |
| 10/8/2025 | R29 Corporate Customer Advises Not Authorized (10/07/2025) FE1197 ER OF TEXAS, LL Ending**8168 | ($7,495.00) |
| 10/8/2025 | FOREVER FUNDING FE1197 ER Oct 8 CCD 067015096 | $7,495.00 |
| 10/9/2025 | FOREVER FUNDING FE1197 ER Oct 9 CCD 067015096 | $7,495.00 |
| 10/10/2025 | R29 Corporate Customer Advises Not Authorized (10/08/2025) FE1197 ER OF TEXAS, LL Ending**8168 | ($7,495.00) |
| 10/10/2025 | R29 Corporate Customer Advises Not Authorized (10/09/2025) FE1197 ER OF TEXAS, LL Ending**8168 | ($7,495.00) |
| 10/10/2025 | FOREVER FUNDING FE1197 ER Oct 10 CCD 067015096 | $7,495.00 |
| 10/14/2025 | R29 Corporate Customer Advises Not Authorized (10/10/2025) FE1197 ER OF TEXAS, LL Ending**8168 | ($7,495.00) |
| 10/14/2025 | FOREVER FUNDING FE1197 ER Oct 14 CCD 067015096 | $7,495.00 |
| 10/15/2025 | R29 Corporate Customer Advises Not Authorized (10/14/2025) FE1197 ER OF TEXAS, LL Ending**8168 | ($7,495.00) |
| 10/24/2025 | WIRE FROM STATE FINANCIAL LLC | $10,124.05 |
| 10/31/2025 | WIRE FROM EPPS LLC | $10,124.05 |
| 11/10/2025 | WIRE FROM EPPS LLC | $10,124.05 |

Case 1:26-cv-03849-MKV    Document 1-3    Filed 05/08/26    Page 65 of 118

COMPLAINT

EXHIBIT "G"

DocuSign Envelope ID: CF3A395-D4ED-4F45-8F54-F42BD2B576C5

Case 1:26-cv-03849-MKV    Document 1-3    Filed 05/08/26    Page 66 of 118



## FOREVER FUNDING LLC
2389 Main St STE 100, Glastonbury, CT 06033
(347) 719-7290

# STANDARD MERCHANT CASH ADVANCE AGREEMENT

This is an Agreement dated Sep. 22, 2025 by and between FOREVER FUNDING LLC ("FF") and each merchant listed below ("Merchant").

Merchant's Legal Name: ER OF TEXAS, LLC

D/B/A/: ER OF TEXAS                                    Fed ID #: ▮▮▮▮▮▮▮

Type of Entity: Limited Liability Company

| | | | |
|---|---|---|---|
| Business Address: 1441 LATIGO CT | City: PROSPER | State: TX | Zip: 75078 |
| Contact Address: 4267 SHAVANO DR | City: FRISCO | State: TX | Zip: 75034 |

E-mail Address: ▮▮▮▮▮▮▮                    Phone Number: ▮▮▮▮▮▮▮

| | |
|---|---|
| **Purchase Price**<br>*This is the amount being paid to Merchant(s) for the Receivables Purchased Amount (defined below).* | **$ 500,000.00** |
| **Receivables Purchased Amount**<br>*This is the amount of Receivables (defined in Section 1 below) being sold.* | **$ 749,500.00** |
| **Specified Percentage**<br>*This is the percentage of Receivables (defined below) to be delivered until the Receivables Purchased Amount is paid in full.* | **25.00%** |
| **Net Funds Provided**<br>*This is the net amount being paid to or on behalf of Merchant(s) after deduction of applicable fees listed in Section 2 below.* | **$ 475,000.00** |
| **Initial Estimated Payment**<br>*This is only applicable if an Addendum for Estimated Payments is being signed. This is the initial amount of periodic payments collected from Merchant(s) as an approximation of no more than the Specified Percentage of the Receivables and is subject to reconciliation as set forth in Section 4 below.* | **$ 37,475.00**<br><br>**per week** |

**I have read and agree to the terms and conditions set forth above:**

DocuSigned by:

*RONNIE FRANK WALRAVEN JR*

190D4E5D0D8B459...

Name and Title: RONNIE FRANK WALRAVEN JR          Date:    9/22/2025

DocuSign Envelope ID: CF3A865-D4E0-41A4-8B54-FA25BD2857DE3
Case 1:26-cv-03849-MKV    Document 1-3    Filed 05/08/26    Page 67 of 118

## STANDARD MERCHANT CASH ADVANCE AGREEMENT

### TERMS AND CONDITIONS

**1. Sale of Future Receipts.** Merchant(s) hereby sell, assign, and transfer to FF (making FF the absolute owner) in consideration of the funds provided ("Purchase Price") specified above, all of each Merchant's future accounts, contract rights, and other obligations arising from or relating to the payment of monies from each Merchant's customers and/or other third party payors (the "Receivables", defined as all payments made by cash, check, credit or debit card, electronic transfer, or other form of monetary payment in the ordinary course of each merchant's business), for the payment of each Merchant's sale of goods or services until the amount specified above (the "Receivables Purchased Amount") has been delivered by Merchant(s) to FF. Each Merchant hereby acknowledges that until the Receivables Purchased Amount has been received in full by FF, each Merchant's Receivables, up to the balance of the Receivables Purchased Amount, are the property of FF and not the property of any Merchant. Each Merchant agrees that it is a fiduciary for FF and that each Merchant will hold Receivables in trust for FF in its capacity as a fiduciary for FF.

The Receivables Purchased Amount shall be paid to FF by each Merchant irrevocably authorizing only one depositing account acceptable to FF (the "Account") to remit the percentage specified above (the "Specified Percentage") of each Merchant's settlement amounts due from each transaction, until such time as FF receives payment in full of the Receivables Purchased Amount. Each Merchant hereby authorizes FF to ACH debit the specified remittances from the Account on a daily basis as of the next business day after the date of this Agreement and will provide FF with all required access codes and monthly bank statements. Each Merchant understands that it will be held responsible for any fees resulting from a rejected ACH attempt or an Event of Default (see Section 2). FF is not responsible for any overdrafts or rejected transactions that may result from FF's ACH debiting the Specified Percentage amounts under the terms of this Agreement.

**2. Additional Fees.** In addition to the Receivables Purchased Amount, each Merchant will be held responsible to FF for the following fees, where applicable:

A. $25,000.00 - to cover underwriting and the ACH debit program, as well as related expenses. This will be deducted from payment of the Purchase Price.

B. Wire Fee - Merchant(s) shall receive funding electronically to the Account and will be charged $50.00 for a Fed Wire or $0.00 for a bank ACH. This will be deducted from payment of the Purchase Price.

C. Blocked Account/Default - $2,500.00 - If FF considers an Event of Default to have taken place under Section 34.

D. UCC Fee - $195.00 – to cover FF filing a UCC-1 financing statement to secure its interest in the Receivables Purchased Amount. A $195.00 UCC termination fee will be charged if a UCC filing is terminated.

E. Court costs, arbitration fees, collection agency fees, attorney fees, expert fees, and any other expenses incurred in litigation, arbitration, or the enforcement of any of FF's legal or contractual rights against each Merchant and/or each Guarantor, if required, as explained in other Sections of this Agreement.

**3. Cap on Collection of the Receivables Purchased Amount.** The amount that FF will collect from Merchant(s) towards the Receivables Purchased Amount during any specific week will be capped at $37,475.00 (the "Cap"). If the Specified Percentage of all Receivables for a specific week is less than the Cap, then in addition to the Specified Percentage of Receivables for that week, FF will be permitted to collect any Receivables it did not previously collect due to the Cap such that the total amount collected during that week does not exceed the Cap. The Cap is not applicable to make up for a business day on which FF is closed and does not ACH debit the Account, to subsequent attempts to collect a rejected or blocked ACH payment, or for the collection of any of the fees listed in Section 2 or if any Event of Default listed in Section 34 is considered by FF to have taken place.

**4. Reconciliations**. Any Merchant may give written notice to FF requesting that FF conduct a reconciliation in order to ensure that the amount that FF has collected equals the Specified Percentage of Merchant(s)'s Receivables under this Agreement. Any Merchant may give written notice requesting a reconciliation. A reconciliation may also be requested by e-mail to office@foreverfunding.co and such notice will be deemed to have been received if and when FF sends a reply e-mail (but not a read receipt). If such reconciliation determines that FF collected more than it was entitled to, then FF will credit to the Account all amounts to which FF was not entitled within seven days thereafter. If such reconciliation determines

**I have read and agree to the terms and conditions set forth above:**

DocuSigned by:

*RONNIE FRANK WALRAVEN JR*

190D4E5D0D8B459...

Name and Title: RONNIE FRANK WALRAVEN JR          Date:     9/22/2025

DocuSign Envelope ID: CF5A898-D4ED-4F4E-8754-EE8D1235767F
Case 1:26-cv-03849-MKV    Document 1-3    Filed 05/08/26    Page 68 of 118

Page **3** of **20**

## STANDARD MERCHANT CASH ADVANCE AGREEMENT

that FF collected less than it was entitled to, then FF will debit from the Account all additional amounts to which FF was entitled within seven days thereafter. In order to effectuate this reconciliation, any Merchant must produce with its request the login and password for the Account and any and all bank statements and merchant statements covering the period from the date of this Agreement through the date of the request for a reconciliation. FF will complete each such reconciliation within two business days after receipt of a written request for one accompanied by the information and documents required for it. Nothing herein limits the amount of times that such a reconciliation may be requested.

**5. Prepayments.** Although there is no obligation to do so, any Merchant may prepay any amount towards the Receivables Purchased Amount. There will be no penalty for any prepayment made by any Merchant. Any Merchant may elect to terminate this Agreement by prepaying FF the amount of the balance of the Receivables Purchased Amount at that time.

**6. Merchant Deposit Agreement.** Merchant(s) shall appoint a bank acceptable to FF, to obtain electronic fund transfer services and/or "ACH" payments. Merchant(s) shall provide FF and/or its authorized agent with all of the information, authorizations, and passwords necessary to verify each Merchant's Receivables. Merchant(s) shall authorize FF and/or its agent(s) to deduct the amounts owed to FF for the Receivables as specified herein from settlement amounts which would otherwise be due to each Merchant and to pay such amounts to FF by permitting FF to withdraw the Specified Percentage by ACH debiting of the account. The authorization shall be irrevocable absent FF's written consent.

**7. Term of Agreement.** The term of this Agreement is indefinite and shall continue until FF receives the full Receivables Purchased Amount, or earlier if terminated pursuant to any provision of this Agreement. The provisions of Sections 4, 6, 7, 8, 10, 11, 13, 14, 15, 17, 18, 19, 22, 23, 28, 31, 32, 33, 34, 35, 37, 38, 39, 40, 41, 42, 43, 44, 45, 46, 47, 48, 49, 50, 51, 52, 53, 54, 55, 56, 57, and 58 shall survive any termination of this Agreement.

**8. Ordinary Course of Business.** Each Merchant acknowledges that it is entering into this Agreement in the ordinary course of its business and that the payments to be made from each Merchant to FF under this Agreement are being made in the ordinary course of each Merchant's business.

**9. Financial Condition.** Each Merchant and each Guarantor (Guarantor being defined as each signatory to the Guarantee of this Agreement) authorizes FF and its agent(s) to investigate each Merchant's financial responsibility and history, and will provide to FF any bank or financial statements, tax returns, and other documents and records, as FF deems necessary prior to or at any time after execution of this Agreement. A photocopy of this authorization will be deemed as acceptable for release of financial information. FF is authorized to update such information and financial profiles from time to time as it deems appropriate.

**10. Monitoring, Recording, and Electronic Communications.** FF may choose to monitor and/or record telephone calls with any Merchant and its owners, employees, and agents. By signing this Agreement, each Merchant agrees that any call between FF and any Merchant or its representatives may be monitored and/or recorded. Each Merchant and each Guarantor grants access for FF to enter any Merchant's premises and to observe any Merchant's premises without any prior notice to any Merchant at any time after execution of this Agreement.

FF may use automated telephone dialing, text messaging systems, and e-mail to provide messages to Merchant(s), Owner(s) (Owner being defined as each person who signs this Agreement on behalf of a Merchant), and Guarantor(s) about Merchant(s)'s account. Telephone messages may be played by a machine automatically when the telephone is answered, whether answered by an Owner, a Guarantor, or someone else. These messages may also be recorded by the recipient's answering machine or voice mail. Each Merchant, each Owner, and each Guarantor gives FF permission to call or send a text message to any telephone number given to FF in connection with this Agreement and to play pre-recorded messages and/or send text messages with information about this Agreement and/or any Merchant's account over the phone. Each Merchant, each Owner, and each Guarantor also gives FF permission to communicate such information to them by e-mail. Each Merchant, each Owner, and each Guarantor agree that FF will not be liable to any of them for any such calls or electronic communications, even if information is communicated to an unintended recipient. Each Merchant, each Owner, and each Guarantor acknowledge that when they receive such calls or electronic communications, they may incur a charge

**I have read and agree to the terms and conditions set forth above:**

DocuSigned by:

*RONNIE FRANK WALRAVEN JR*

190D4E5D0D8B459...

Name and Title: RONNIE FRANK WALRAVEN JR          Date:     9/22/2025

DocuSign Envelope ID: CF3A898-D4E0-4434-B154-FB2BD28576E8
Case 1:26-cv-03849-MKV     Document 1-3     Filed 05/08/26     Page 69 of 118

Page **4** of **20**

## STANDARD MERCHANT CASH ADVANCE AGREEMENT

from the company that provides them with telecommunications, wireless, and/or Internet services, and that FF has no liability for any such charges.

**11. Accuracy of Information Furnished by Merchant and Investigation Thereof.** To the extent set forth herein, each of the parties is obligated upon his, her, or its execution of the Agreement to all terms of the Agreement. Each Merchant and each Owner signing this Agreement represent that he or she is authorized to sign this Agreement for each Merchant, legally binding said Merchant to its obligations under this Agreement and that the information provided herein and in all of FF's documents, forms, and recorded interview(s) is true, accurate, and complete in all respects. FF may produce a monthly statement reflecting the delivery of the Specified Percentage of Receivables from Merchant(s) to FF. An investigative report may be made in connection with the Agreement. Each Merchant and each Owner signing this Agreement authorize FF, its agents and representatives, and any credit-reporting agency engaged by FF, to (i) investigate any references given or any other statements obtained from or about each Merchant or any of its Owners for the purpose of this Agreement, and (ii) pull credit report at any time now or for so long as any Merchant and/or Owners(s) continue to have any obligation to FF under this Agreement or for FF's ability to determine any Merchant's eligibility to enter into any future agreement with FF. Any misrepresentation made by any Merchant or Owner in connection with this Agreement may constitute a separate claim for fraud or intentional misrepresentation.

*Authorization for soft pulls:* Each Merchant and each Owner understands that by signing this Agreement, they are providing 'written instructions' to FF under the Fair Credit Reporting Act, authorizing FF to obtain information from their personal credit profile or other information from Experian, TransUnion, and Equifax. Each Merchant and each Guarantor authorizes FF to obtain such information solely to conduct a pre-qualification for credit.

*Authorization for hard pulls:* Each Merchant and each Owner understands that by signing this Agreement, they are providing 'written instructions' to FF under the Fair Credit Reporting Act, authorizing FF to obtain information from their personal credit profile or other information from Experian, TransUnion, and Equifax. Each Merchant and each Guarantor authorizes FF to obtain such information in accordance with a merchant cash advance application.

**12. Transactional History.** Each Merchant authorizes its bank to provide FF with its banking and/or credit card processing history.

**13. Indemnification.** Each Merchant and each Guarantor jointly and severally indemnify and hold harmless each Merchant's credit card and check processors (collectively, "Processor") and Processor's officers, directors, and shareholders against all losses, damages, claims, liabilities, and expenses (including reasonable attorney and expert fees) incurred by Processor resulting from (a) claims asserted by FF for monies owed to FF from any Merchant and (b) actions taken by any Processor in reliance upon information or instructions provided by FF.

**14. No Liability.** In no event will FF be liable for any claims asserted by any Merchant under any legal theory for lost profits, lost revenues, lost business opportunities, exemplary, punitive, special, incidental, indirect, or consequential damages, each of which is waived by each Merchant and each Guarantor.

**15. Sale of Receivables.** Each Merchant and FF agree that the Purchase Price under this Agreement is in exchange for the Receivables Purchased Amount and that such Purchase Price is not intended to be, nor shall it be construed as a loan from FF to any Merchant. FF is entering into this Agreement knowing the risks that each Merchant's business may decline or fail, resulting in FF not receiving the Receivables Purchased Amount. Each Merchant agrees that the Purchase Price in exchange for the Receivables pursuant to this Agreement equals the fair market value of such Receivables. FF has purchased and shall own all the Receivables described in this Agreement up to the full Receivables Purchased Amount as the Receivables are created. Payments made to FF in respect to the full amount of the Receivables shall be conditioned upon each Merchant's sale of products and services and the payment therefor by each Merchant's customers in the manner provided in this Agreement. Although certain jurisdictions require the disclosure of an Annual Percentage Rate or APR in connection with this Agreement, those disclosures do not change the fact that the transaction encompassed by this Agreement is not a loan and does not have an interest rate.

**16. Power of Attorney.** Each Merchant irrevocably appoints FF as its agent and attorney-in-fact with full authority

**I have read and agree to the terms and conditions set forth above:**

DocuSigned by:

RONNIE FRANK WALRAVEN JR

190D4E5D0D8B459...

Name and Title: RONNIE FRANK WALRAVEN JR          Date:      9/22/2025

DocuSign Envelope ID: CF3A83C-D4ED-447A-8E54-EB281285707E

## STANDARD MERCHANT CASH ADVANCE AGREEMENT

to take any action or execute any instrument or document to settle all obligations due to FF, or, if FF considers an Event of Default to have taken place under Section 34, to settle all obligations due to FF from each Merchant, including without limitation (i) to obtain and adjust insurance; (ii) to collect monies due or to become due under or in respect of any of the Collateral (which is defined in Section 33); (iii) to receive, endorse and collect any checks, notes, drafts, instruments, documents, or chattel paper in connection with clause (i) or clause (ii) above; (iv) to sign each Merchant's name on any invoice, bill of lading, or assignment directing customers or account debtors to make payment directly to FF; and (v) to file any claims or take any action or institute any proceeding which FF may deem necessary for the collection of any of the unpaid Receivables Purchased Amount from the Collateral, or otherwise to enforce its rights with respect to payment of the Receivables Purchased Amount.

**17. Protections Against Default.** The following Protections 1 through 7 may be invoked by FF, immediately and without notice to any Merchant in the event:

(a) Any Merchant takes any action to discourage the use of methods of payment ordinarily and customarily used by its customers or permits any event to occur that could have an adverse effect on the use, acceptance, or authorization of checks and credit cards for the purchase of any Merchant's services and products;

(b) Any Merchant changes its arrangements with any Processor in any way that is adverse to FF;

(c) Any Merchant changes any Processor through which the Receivables are settled to another electronic check and/or credit card processor or permits any event to occur that could cause diversion of any Merchant's check and/or credit card transactions to another such processor;

(d) Any Merchant interrupts the operation of its business (other than adverse weather, natural disasters, or acts of God) or transfers, moves, sells, disposes, or otherwise conveys its business or assets without (i) the express prior written consent of FF and (ii) the written agreement of any purchaser or transferee to the assumption of all of any Merchant's obligations under this Agreement pursuant to documentation satisfactory to FF; or

(e) Any Merchant takes any action, fails to take any action, or offers any incentive—economic or otherwise—the result of which will be to induce any customer or customers to pay for any Merchant's goods or services with any means other than checks and/or credit cards that are settled through Processor. These protections are in addition to any other remedies available to FF at law, in equity, or otherwise available pursuant to this Agreement.

(f) FF considers any Event of Default listed in Section 34 to have taken place.

Protection 1: The full uncollected Receivables Purchased Amount plus all fees due under this Agreement may become due and payable in full immediately.

Protection 2. FF may enforce the provisions of the Guarantee against Guarantor.

Protection 3. FF may enforce its security interest in the Collateral identified in Section 33.

Protection 4. FF may proceed to protect and enforce its rights and remedies by litigation or arbitration.

Protection 5. If requested by FF, Merchant shall deliver to FF an executed assignment of lease of each Merchant's premises in favor of FF. Upon breach of any provision in this Section 17, FF may exercise its rights under such assignment of lease.

Protection 6. FF may debit any Merchant's depository accounts wherever situated by means of ACH debit or electronic or facsimile signature on a computer-generated check drawn on any Merchant's bank account or otherwise, in an amount consistent with the terms of this Agreement.

Protection 7. FF will have the right, without waiving any of its rights and remedies and without notice to any Merchant and/or Guarantor, to notify each Merchant's credit card and/or check processor of the sale of Receivables hereunder and to direct such credit card processor to make payment to FF of all or any portion of the amounts received by such credit card processor on behalf of each Merchant. Each Merchant hereby grants to FF an irrevocable power-of-attorney, which power-of-attorney will be coupled with an interest, and hereby appoints FF and its representatives as each Merchant's attorney-in-fact to take any and all action necessary to direct such new or additional credit card and/or check processor to make payment to FF as contemplated by this Section.

**18. Protection of Information.** Each Merchant and each person signing this Agreement on behalf of each Merchant and/or as Owner, in respect of himself or herself personally, authorizes FF to disclose information concerning each Merchant, Owner and/or Guarantor's credit standing and business conduct to agents, affiliates, subsidiaries, and credit reporting bureaus. Each Merchant, Guarantor, and Owner hereby waives to the maximum extent permitted by law any claim

**I have read and agree to the terms and conditions set forth above:**

DocuSigned by:

*RONNIE FRANK WALRAVEN JR*

190D4E5D0D8B459...

Name and Title: RONNIE FRANK WALRAVEN JR          Date:    9/22/2025

DocuSign Envelope ID: CF3A998-D4ED-4D4A-8E54-E82BD235769F

## STANDARD MERCHANT CASH ADVANCE AGREEMENT

for damages against FF or any of its affiliates relating to any (i) investigation undertaken by or on behalf of FF as permitted by this Agreement or (ii) disclosure of information as permitted by this Agreement.

**19. Confidentiality.** Each Merchant understands and agrees that the terms and conditions of the products and services offered by FF, including this Agreement and any other FF documents (collectively, "Confidential Information") are proprietary and confidential information of FF. Accordingly, unless disclosure is required by law or court order, Merchant(s) shall not disclose Confidential Information of FF to any person other than an attorney, accountant, financial advisor, or employee of any Merchant who needs to know such information for the purpose of advising any Merchant ("Advisor"), provided such Advisor uses such information solely for the purpose of advising any Merchant and first agrees in writing to be bound by the terms of this Section 19.

**20. D/B/As.** Each Merchant hereby acknowledges and agrees that FF may be using "doing business as" or "d/b/a" names in connection with various matters relating to the transaction between FF and each Merchant, including the filing of UCC-1 financing statements and other notices or filings.

**21. Financial Condition and Financial Information.** Each Merchant represents, warrants, and covenants that its bank and financial statements, copies of which have been furnished to FF, and future statements which will be furnished hereafter at the request of FF, fairly represent the financial condition of each Merchant at such dates, and that since those dates there have been no material adverse changes, financial or otherwise, in such condition, operation, or ownership of any Merchant. Each Merchant has a continuing affirmative obligation to advise FF of any material adverse change in its financial condition, operation, or ownership.

**22. Governmental Approvals.** Each Merchant represents, warrants, and covenants that it is in compliance and shall comply with all laws and has valid permits, authorizations, and licenses to own, operate, and lease its properties and to conduct the business in which it is presently engaged.

**23. Authorization.** Each Merchant represents, warrants, and covenants that it and each person signing this Agreement on behalf of each Merchant has full power and authority to incur and perform the obligations under this Agreement, all of which have been duly authorized.

**24. Insurance.** Each Merchant represents, warrants, and covenants that it will maintain business-interruption insurance naming FF as loss payee and additional insured in amounts and against risks as are satisfactory to FF and shall provide FF proof of such insurance upon request.

**25. Electronic Check Processing Agreement.** Each Merchant represents, warrants, and covenants that it will not, without FF's prior written consent, change its Processor, add terminals, change its financial institution or bank account, or take any other action that could have any adverse effect upon any Merchant's obligations under this Agreement.

**26. Change of Name or Location.** Each Merchant represents, warrants, and covenants that it will not conduct its business under any name other than as disclosed to FF or change any place(s) of its business without prior written consent from FF.

**27. Estoppel Certificate.** Each Merchant represents, warrants, and covenants that it will, at any time, and from time to time, upon at least two day's prior notice from FF to that Merchant, execute, acknowledge, and deliver to FF and/or to any other person or entity specified by FF, a statement certifying that this Agreement is unmodified and in full force and effect (or, if there have been modifications, that the same is in full force and effect as modified and stating the modifications) and stating the dates which the Receivables Purchased Amount or any portion thereof have been paid.

**28. No Bankruptcy.** Each Merchant represents, warrants, and covenants that as of the date of this Agreement, it does not contemplate and has not filed any petition for bankruptcy protection under Title 11 of the United States Code and there has been no involuntary petition brought or pending against any Merchant. Each Merchant further warrants that it

**I have read and agree to the terms and conditions set forth above:**

DocuSigned by:

*RONNIE FRANK WALRAVEN JR*

190D4E5D0D8B459...

Name and Title: RONNIE FRANK WALRAVEN JR

Date:    9/22/2025

DocuSign Envelope ID: CF3A899-D4ED-41A3-8F54-FB2B9285767F

## STANDARD MERCHANT CASH ADVANCE AGREEMENT

does not anticipate filing any such bankruptcy petition and it does not anticipate that an involuntary petition will be filed against it. Each Merchant further warrants that there will be no statutory presumption that it would have been insolvent on the date of this Agreement.

**29. Unencumbered Receivables.** Each Merchant represents, warrants, and covenants that it has good, complete, and marketable title to all Receivables, free and clear of any and all liabilities, liens, claims, changes, restrictions, conditions, options, rights, mortgages, security interests, equities, pledges, and encumbrances of any kind or nature whatsoever or any other rights or interests that may be inconsistent with this Agreement or adverse to the interests of FF, other than any for which FF has actual or constructive knowledge as of the date of this Agreement.

**30. Stacking.** Each Merchant represents, warrants, and covenants that it will not enter into with any party other than FF any arrangement, agreement, or commitment that relates to or involves the Receivables, whether in the form of a purchase of, a loan against, collateral against, or the sale or purchase of credits against Receivables without the prior written consent of FF.

**31. Business Purpose.** Each Merchant represents, warrants, and covenants that it is a valid business in good standing under the laws of the jurisdictions in which it is organized and/or operates, and each Merchant is entering into this Agreement for business purposes and not as a consumer for personal, family, or household purposes.

**32. Default Under Other Contracts.** Each Merchant represents, warrants, and covenants that its execution of and/or performance under this Agreement will not cause or create an event of default by any Merchant under any contract with another person or entity.

**33. Security Interest.** To secure each Merchant's payment and performance obligations to FF under this Agreement and any future agreement with FF, each Merchant hereby grants to FF a security interest in collateral (the "Collateral"), that is defined as collectively: (a) all accounts, including without limitation, all deposit accounts, accounts-receivable, and other receivables, chattel paper, documents, equipment, general intangibles, instruments, and inventory, as those terms are defined by Article 9 of the Uniform Commercial Code (the "UCC"), now or hereafter owned or acquired by any Merchant; and (b) all proceeds, as that term is defined by Article 9 of the UCC. The parties acknowledge and agree that any security interest granted to FF under any other agreement between any Merchant or Guarantor and FF (the "Cross-Collateral") will secure the obligations hereunder and under this Agreement. Negative Pledge: Each Merchant agrees not to create, incur, assume, or permit to exist, directly or indirectly, any lien on or with respect to any of the Collateral or the Cross-Collateral, as applicable.

Each Merchant agrees to execute any documents or take any action in connection with this Agreement as FF deems necessary to perfect or maintain FF's first priority security interest in the Collateral and the Cross-Collateral, including the execution of any account control agreements. Each Merchant hereby authorizes FF to file any financing statements deemed necessary by FF to perfect or maintain FF's security interest, which financing statements may contain notification that each Merchant has granted a negative pledge to FF with respect to the Collateral and the Cross-Collateral, and that any subsequent lienor may be tortiously interfering with FF's rights. Each Merchant shall be liable for and FF may charge and collect all costs and expenses, including but not limited to attorney fees, which may be incurred by FF in protecting, preserving, and enforcing FF's security interest and rights. Each Merchant further acknowledges that FF may use another legal name and/or D/B/A or an agent when designating the Secured Party when FF files the above-referenced financing statement(s).

**34. Events of Default.** An "Event of Default" may be considered to have taken place if any of the following occur:
(1) Any Merchant violates any term or covenant in this Agreement;
(2) Any representation or warranty by any Merchant in any Agreement with FF that has not been terminated proves to have been incorrect, false, or misleading in any material respect when made;
(3) Any Merchant fails to provide FF with written notice of any material change in its financial condition, operation, or ownership within seven days thereafter (unless a different notice period is specifically provided for elsewhere in this Agreement;

**I have read and agree to the terms and conditions set forth above:**

DocuSigned by:

*RONNIE FRANK WALRAVEN JR*

190D4E5D0D8B459...

Name and Title: RONNIE FRANK WALRAVEN JR          Date:     9/22/2025

DocuSign Envelope ID: CF3A928-D4E0-43A9-8E54-E728D7285765

## STANDARD MERCHANT CASH ADVANCE AGREEMENT

(4) the sending of notice of termination by any Merchant or Guarantor;

(5) Any Merchant transports, moves, interrupts, suspends, dissolves, or terminates its business without the prior written consent of FF other than a bankruptcy filing;

(6) Any Merchant transfers or sells all or substantially all of its assets without the prior written consent of FF;

(7) Any Merchant makes or sends notice of any intended bulk sale or transfer by any Merchant without the prior written consent of FF;

(8) Any Merchant uses multiple depository accounts without the prior written consent of FF;

(9) Any Merchant changes the Account without the prior written consent of FF;

(10) FF is not provided with updated login or password information for the Account within one business day after any such change is made by any Merchant;

(11) Any Merchant fails to send bank statements, merchant account statements, or bank login information for the Account within two business days after a written request for same is made by FF;

(12) Any Merchant performs any act that reduces the value of any Collateral granted under this Agreement;

(13) Any Merchant fails to deposit its Receivables into the Account;

(14) Any Merchant causes any ACH debit to the Account by FF to be blocked or stopped without providing any advance written notice to FF, which notice may be given by e-mail to office@foreverfunding.co; or

(15) Any Merchant prevents FF from collecting any part of the Receivables Purchased Amount;

(16) Any Merchant causes any ACH debit to the Account to be stopped or otherwise returned that would result in an ACH Return Code of R08, R10, or R29 and that Merchant does not within two business days thereafter provide FF with written notice thereof explaining why that Merchant caused the ACH debit to be stopped or otherwise returned, which notice may be given by e-mail to office@foreverfunding.co; or

(17) Any Merchant defaults under any of the terms, covenants, and conditions of any other agreement with FF.

**35. Remedies.** In case any Event of Default occurs and is not waived, FF may proceed to protect and enforce its rights or remedies by suit in equity or by action at law, or both, whether for the specific performance of any covenant, agreement, or other provision contained herein, or to enforce the discharge of each Merchant's obligations hereunder, or any other legal or equitable right or remedy. All rights, powers, and remedies of FF in connection with this Agreement, including each Protection listed in Section 17, may be exercised at any time by FF after the occurrence of an Event of Default, are cumulative and not exclusive, and will be in addition to any other rights, powers, or remedies provided by law or equity. In addition to the foregoing, in case any Event of Default occurs and is not waived, FF will be entitled to the issuance of an injunction, restraining order, or other equitable relief in FF's favor, subject to court or arbitrator approval, restraining each Merchant's accounts and/or receivables up to the amount due to FF as a result of the Event of Default, and each Merchant will be deemed to have consented to the granting of an application for the same to any court or arbitral tribunal of competent jurisdiction without any prior notice to any Merchant or Guarantor and without FF being required to furnish a bond or other undertaking in connection with the application.

**36. Required Notifications.** Each Merchant is required to give FF written notice at least one day prior to any filing under Title 11 of the United States Code. Merchant(s) are required to give FF at least seven days' written notice prior to the closing of any sale of all or substantially all of any Merchant's assets or stock.

**37. Assignment.** This Agreement shall be binding upon and inure to the benefit of the parties and their respective successors and assigns, except that Merchant(s) shall not have the right to assign its rights hereunder or any interest herein without the prior written consent of FF, which consent may be withheld in FF's sole discretion. FF may assign, transfer, or sell its rights under this Agreement, including, without limitation, its rights to receive the Receivables Purchased Amount, and its rights under Section 33 of this Agreement, the Guarantee, and any other agreement, instrument, or document executed in connection with the transactions contemplated by this Agreement (a "Related Agreement"), or delegate its duties hereunder or thereunder, either in whole or in part. From and after the effective date of any such assignment or transfer by FF, whether or not any Merchant has actual notice thereof, this Agreement and each Related Agreement shall be deemed amended and modified (without the need for any further action on the part of any Merchant or FF) such that the assignee shall be deemed a party to this Agreement and any such Related Agreement and, to the extent provided in the assignment document between FF and such assignee (the "Assignment Agreement"), have the rights and obligations of FF

**I have read and agree to the terms and conditions set forth above:**

DocuSigned by:

RONNIE FRANK WALRAVEN JR

190D4E5D0D8B459...

Name and Title: RONNIE FRANK WALRAVEN JR          Date:   9/22/2025

DocuSign Envelope ID: CF3A89B-D4E0-4F58-8E54-EE28D12857C3

Case 1:26-cv-03849-MKV     Document 1-3     Filed 05/08/26     Page 74 of 118

Page **9** of **20**

## STANDARD MERCHANT CASH ADVANCE AGREEMENT

under this Agreement and such Related Agreements with respect to the portion of the Receivables Purchased Amount set forth in such Assignment Agreement, including but not limited to rights in the Receivables, Collateral and Additional Collateral, the benefit of each Guarantor's guaranty regarding the full and prompt performance of every obligation that is a subject of the Guarantee, FF's rights under Section 17 of this Agreement (Protections Against Default), and to receive damages from any Merchant following a breach of this Agreement by any Merchant. In connection with such assignment, FF may disclose all information that FF has relating to any Merchant or its business. Each Merchant agrees to acknowledge any such assignment in writing upon FF's request.

**38. Notices.** All notices, requests, consents, demands, and other communications hereunder shall be delivered by certified mail, return receipt requested, or by overnight delivery with signature confirmation to the respective parties to this Agreement at their addresses set forth in this Agreement and shall become effective only upon receipt. Written notice may also be given to any Merchant or Guarantor by e-mail to the E-mail Address listed on the first page of this Agreement. Each Merchant must set its spam or junk mail filter to accept e-mails sent by office@foreverfunding.co and its domain. This Section is not applicable to service of process or notices in any legal proceedings.

**39. Choice of Law.** Each Merchant acknowledges and agrees that this Agreement was made in the State of New York, that the Purchase Price is being paid by FF in the State of New York, that the Receivables Purchased Amount is being delivered to FF in the State of New York, and that the State of New York has a reasonable relationship to the transactions encompassed by this Agreement. This Agreement and the relationship between FF, each Merchant, and each Guarantor will be governed by and construed in accordance with the laws of the State of New York, without regard to any applicable principles of conflict of laws.

**40. Forum and Venue Selection.** Any litigation relating to this Agreement or involving FF on one side and any Merchant or any Guarantor on the other must be commenced and maintained in any court located in the Counties of Nassau, New York, or Sullivan in the State of New York (the "Acceptable Forums"). The parties agree that the Acceptable Forums are convenient, submit to the jurisdiction of the Acceptable Forums, and waive any and all objections to the jurisdiction or venue of the Acceptable Forums. If any litigation is initiated in any other venue or forum, the parties waive any right to oppose any motion or application made by any party to transfer such litigation to an Acceptable Forum. The parties agree that this Agreement encompasses the transaction of business within the City of New York and that the Civil Court of the City of New York ("Civil Court") will have jurisdiction over any litigation relating to this Agreement that is within the jurisdictional limit of the Civil Court. In addition to the Acceptable Forums, any action or proceeding to enforce a judgment or arbitration award against any Merchant or Guarantor or to restrain or collect any amount due to FF may be commenced and maintained in any other court of competent jurisdiction.

**41. Jury Waiver.** The parties agree to waive trial by jury in any dispute between them.

**42. Counterclaim Waiver.** In any litigation or arbitration commenced by FF, each Merchant and each Guarantor will not be permitted to interpose any counterclaim.

**43. Statutes of Limitations.** Each Merchant and each Guarantor agree that any claim that is not asserted against FF within one year of its accrual will be time barred.

**44. Costs.** Each Merchant and each Guarantor must pay all of FF's reasonable costs associated with a breach by any Merchant of the covenants in this Agreement and the enforcement thereof, including but not limited to collection agency fees, attorney fees, which may include a contingency fee of up to 40% of the amount claimed, expert witness fees, and costs of suit.

**45. Prejudgment and Postjudgment Interest.** If FF becomes entitled to the entry of a judgment against any Merchant or any Guarantor, then FF will be entitled to the recovery of prejudgment interest at a rate of 24% per annum (or 16% per annum if any Merchant is a sole proprietorship), or the maximum rate permitted by applicable law if less, and upon entry of any such judgment, it will accrue interest at a postjudgment rate of 24% per annum (or 16% per annum if any

**I have read and agree to the terms and conditions set forth above:**

DocuSigned by:

*RONNIE FRANK WALRAVEN JR*

190D4E5D0D8B459...

Name and Title: RONNIE FRANK WALRAVEN JR          Date:     9/22/2025

DocuSign Envelope ID: CF3A888-D4E0-4A4D-8E54-E7E26EF28376F
Case 1:26-cv-03849-MKV   Document 1-3   Filed 05/08/26   Page 75 of 118

## STANDARD MERCHANT CASH ADVANCE AGREEMENT

Merchant is a sole proprietorship), or the maximum rate permitted by applicable law if less, which rate will govern over the statutory rate of interest up until actual satisfaction of the judgment.

**46. Legal Fees.** If FF prevails in any litigation or arbitration with any Merchant or any Guarantor, then that Merchant and/or Guarantor must pay FF's reasonable attorney fees, which may include a contingency fee of up to 40% of the amount claimed.

**47. Class Action Waiver.** FF, each Merchant, and each Guarantor agree that they may bring claims against each other relating to this Agreement only in their individual capacities, and not as a plaintiff or class action member in any purported class or representative proceedings.

**48. Arbitration.** Any action or dispute relating to this Agreement or involving FF on one side and any Merchant or any Guarantor on the other, including, but not limited to issues of arbitrability, will, at the option of any party to such action or dispute, be determined by arbitration before a single arbitrator. The arbitration will be administered either by Arbitration Services, Inc. under its Commercial Arbitration Rules as are in effect at that time, which rules are available at www.arbitrationservicesinc.com, or by Mediation & Commercial Arbitration, Inc. under its Commercial Arbitration Rules as are in effect at that time, which rules are available at www.mcarbitration.org. Once an arbitration is initiated with one of these arbitral forums, it must be maintained exclusively before that arbitral forum and the other arbitral forum specified herein may not be used. Any arbitration relating to this Agreement must be conducted in the Counties of Nassau, New York, Queens, or Kings in the State of New York. Notwithstanding any provision of any applicable arbitration rules, any witness in an arbitration who does not reside in or have a place for the regular transaction of business located in New York City or the Counties of Nassau, Suffolk, or Westchester in the State of New York will be permitted to appear and testify remotely by telephone or video conferencing. In case any Event of Default occurs and is not waived, each Merchant and each Guarantor consents to FF making an application to the arbitrator, without notice to any Merchant or any Guarantor, for the issuance of an injunction, restraining order, or other equitable relief in FF's favor, subject to court or arbitrator approval, restraining each Merchant's accounts and/or receivables up to the amount due to FF as a result of the Event of Default.

Each Merchant acknowledges and agrees that this Agreement is the product of communications conducted by telephone and the Internet, which are instrumentalities of interstate commerce, that the transactions contemplated under this Agreement will be made by wire transfer and ACH, which are also instrumentalities of interstate commerce, and that this Agreement therefore evidences a transaction affecting interstate commerce. Accordingly, notwithstanding any provision in this Agreement to the contrary, all matters of arbitration relating to this Agreement will be governed by and construed in accordance with the provisions of the Federal Arbitration Act, codified as Title 9 of the United States Code, however any application for injunctive relief in aid of arbitration or to confirm an arbitration award may be made under Article 75 of the New York Civil Practice Law and Rules. The arbitration agreement contained in this Section may also be enforced by any employee, agent, attorney, member, manager, officer, subsidiary, affiliate entity, successor, or assign of FF.

**49. Service of Process.** Each Merchant and each Guarantor consent to service of process and legal notices made by First Class or Priority Mail delivered by the United States Postal Service and addressed to the Contact Address set forth on the first page of this Agreement or any other address(es) provided in writing to FF by any Merchant or any Guarantor, and unless applicable law or rules provide otherwise, any such service will be deemed complete upon dispatch. Each Merchant and each Guarantor agrees that it will be precluded from asserting that it did not receive service of process or any other notice mailed to the Contact Address set forth on the first page of this Agreement if it does not furnish a certified mail return receipt signed by FF demonstrating that FF was provided with notice of a change in the Contact Address.

**50. Survival of Representation, etc.** All representations, warranties, and covenants herein shall survive the execution and delivery of this Agreement and shall continue in full force until all obligations under this Agreement shall have been satisfied in full and this Agreement shall have terminated.

**51. Waiver.** No failure on the part of FF to exercise, and no delay in exercising, any right under this Agreement, shall operate as a waiver thereof, nor shall any single or partial exercise of any right under this Agreement preclude any other or further exercise thereof or the exercise of any other right. The remedies provided hereunder are cumulative and

**I have read and agree to the terms and conditions set forth above:**

DocuSigned by:

RONNIE FRANK WALRAVEN JR

190D4E5D0D8B459...

Name and Title: RONNIE FRANK WALRAVEN JR          Date:     9/22/2025

Docusign Envelope ID: CF3A89D-D4ED-4F43-8E54-E423BF28576B5
Case 1:26-cv-03849-MKV    Document 1-3    Filed 05/08/26    Page 76 of 118

Page **11** of **20**

## STANDARD MERCHANT CASH ADVANCE AGREEMENT

not exclusive of any remedies provided by law or equity.

**52. Independent Sales Organizations/Brokers.** Each Merchant and each Guarantor acknowledge that it may have been introduced to FF by or received assistance in entering into this Agreement or its Guarantee from an independent sales organization or broker ("ISO"). Each Merchant and each Guarantor agree that any ISO is separate from and is not an agent or representative of FF. Each Merchant and each Guarantor acknowledge that FF is not bound by any promises or agreements made by any ISO that are not contained within this Agreement. Each Merchant and each Guarantor exculpate from liability and agree to hold harmless and indemnify FF and its officers, directors, members, shareholders, employees, and agents from and against all losses, damages, claims, liabilities, and expenses (including reasonable attorney and expert fees) incurred by any Merchant or any Guarantor resulting from any act or omission by any ISO. Each Merchant and each Guarantor acknowledge that any fee that they paid to any ISO for its services is separate and apart from any payment under this Agreement. Each Merchant and each Guarantor acknowledge that FF does not in any way require the use of an ISO and that any fees charged by any ISO are not required as a condition or incident to this Agreement.

**53. Modifications; Agreements.** No modification, amendment, waiver, or consent of any provision of this Agreement shall be effective unless the same shall be in writing and signed by all parties.

**54. Severability.** If any provision of this Agreement is deemed invalid or unenforceable as written, it will be construed, to the greatest extent possible, in a manner which will render it valid and enforceable, and any limitation on the scope or duration of any such provision necessary to make it valid and enforceable will be deemed to be part thereof. If any provision of this Agreement is deemed void, all other provisions will remain in effect.

**I have read and agree to the terms and conditions set forth above:**

DocuSigned by:

*RONNIE FRANK WALRAVEN JR*

190D4E5D0D8B459...

Name and Title: RONNIE FRANK WALRAVEN JR          Date:    9/22/2025

DocuSign Envelope ID: CF3A898-D4E0-4...-8F54-FA28D12857671
Case 1:26-cv-03849-MKV    Document 1-3    Filed 05/08/26    Page 77 of 118

Page **12** of **20**

## STANDARD MERCHANT CASH ADVANCE AGREEMENT

**55. Headings.** Headings of the various articles and/or sections of this Agreement are for convenience only and do not necessarily define, limit, describe, or construe the contents of such articles or sections.

**56. Attorney Review.** Each Merchant acknowledges that it has had an opportunity to review this Agreement and all addenda with counsel of its choosing before signing the documents or has chosen not to avail itself of the opportunity to do so.

**57. Entire Agreement.** This Agreement, inclusive of all addenda, if any, executed simultaneously herewith constitutes the full understanding of the parties to the transaction herein and may not be amended, modified, or canceled except in writing signed by all parties. Should there arise any conflict between this Agreement and any other document preceding it, this Agreement will govern. This Agreement does not affect any previous agreement between the parties unless such an agreement is specifically referenced herein. This Agreement will not be affected by any subsequent agreement between the parties unless this Agreement is specifically referenced therein. FF will not be permitted to enforce any of its rights under this Agreement if so expressed by in writing by Gene Rosen's Law Firm.

**58. Counterparts; Fax and Electronic Signatures.** This Agreement may be executed electronically and in counterparts. Facsimile and electronic copies of this Agreement will have the full force and effect of an original.

### EACH UNDERSIGNED HEREBY ACCEPTS THE TERMS OF THIS AGREEMENT

**FOR THE MERCHANT/OWNER (#1)**

By: RONNIE FRANK WALRAVEN JR

      (Print Name and Title)

DocuSigned by:

*RONNIE FRANK WALRAVEN JR*

190D4E5D0D8B459...

(Signature)

SS# ▮▮▮▮▮

Driver License Number ▮▮▮▮▮

**FOR THE MERCHANT/OWNER (#2)**

By:

      (Print Name and Title)

(Signature)

SS#

Driver License Number

Approved for FOREVER FUNDING LLC by:

DocuSign Envelope ID: CF3A99F-D4E9-4439-8F54-F79EBD2387670

## STANDARD MERCHANT CASH ADVANCE AGREEMENT

## GUARANTEE

**G1. Personal Guarantee of Performance.** This is a personal guaranty of performance, dated Sep. 22, 2025, of the Standard Merchant Cash Advance Agreement, dated Sep. 22, 2025 ("Agreement"), inclusive of all addenda, if any, executed simultaneously therewith, by and between FOREVER FUNDING LLC ("FF") and ER OF TEXAS, LLC ("Merchant"). Each undersigned Guarantor hereby guarantees each Merchant's performance of all of the representations, warranties, and covenants made by each Merchant to FF in the Agreement, inclusive of all addenda, if any, executed simultaneously herewith, as the Agreement may be renewed, amended, extended, or otherwise modified (the "Guaranteed Obligations"). Each Guarantor's obligations are due at the time of any breach by any Merchant of any representation, warranty, or covenant made by any Merchant in the Agreement.

**G2. Communications.** FF may use automated telephone dialing, text messaging systems, and e-mail to provide messages to Guarantor(s) about Merchant(s)'s account. Telephone messages may be played by a machine automatically when the telephone is answered, whether answered by an Owner, a Guarantor, or someone else. These messages may also be recorded by the recipient's answering machine or voice mail. Each Guarantor gives FF permission to call or send a text message to any telephone number given to FF in connection with this Agreement and to play pre-recorded messages and/or send text messages with information about this Agreement and/or any Merchant's account over the phone. Each Guarantor also gives FF permission to communicate such information to them by e-mail. Each Guarantor agrees that FF will not be liable to any of them for any such calls or electronic communications, even if information is communicated to an unintended recipient. Each Guarantor acknowledges that when they receive such calls or electronic communications, they may incur a charge from the company that provides them with telecommunications, wireless, and/or Internet services, and that FF has no liability for any such charges.

**G3. Guarantor Waivers.** If FF considers any Event of Default to have taken place under the Agreement, then FF may enforce its rights under this Guarantee without first seeking to obtain payment from any Merchant, any other guarantor, or any Collateral, Additional Collateral, or Cross-Collateral FF may hold pursuant to this Guarantee or any other agreement or guarantee. FF does not have to notify any Guarantor of any of the following events and Guarantor(s) will not be released from its obligations under this Guarantee even if it is not notified of: (i) any Merchant's failure to pay timely any amount owed under the Agreement; (ii) any adverse change in any Merchant's financial condition or business; (iii) any sale or other disposition of any collateral securing the Guaranteed Obligations or any other guarantee of the Guaranteed Obligations; (iv) FF's acceptance of the Agreement with any Merchant; and (v) any renewal, extension, or other modification of the Agreement or any Merchant's other obligations to FF. In addition, FF may take any of the following actions without releasing any Guarantor from any obligations under this Guarantee: (i) renew, extend, or otherwise modify the Agreement or any Merchant's other obligations to FF; (ii) if there is more than one Merchant, release a Merchant from its obligations to FF such that at least one Merchant remains obligated to FF; (iii) sell, release, impair, waive, or otherwise fail to realize upon any collateral securing the Guaranteed Obligations or any other guarantee of the Guaranteed Obligations; and (iv) foreclose on any collateral securing the Guaranteed Obligations or any other guarantee of the Guaranteed Obligations in a manner that impairs or precludes the right of Guarantor to obtain reimbursement for payment under the Agreement. Until the Receivables Purchased Amount and each Merchant's other obligations to FF under the Agreement and this Guarantee are paid in full, each Guarantor shall not seek reimbursement from any Merchant or any other guarantor for any amounts paid by it under the Agreement. Each Guarantor permanently waives and shall not seek to exercise any of the following rights that it may have against any Merchant, any other guarantor, or any collateral provided by any Merchant or any other guarantor, for any amounts paid by it or acts performed by it under this Guarantee: (i) subrogation; (ii) reimbursement; (iii) performance; (iv) indemnification; or (v) contribution.

**G4. Joint and Several Liability.** The obligations hereunder of the persons or entities constituting each Guarantor under this Guarantee are joint and several.

**G5. Injunctive Relief.** In case any Event of Default occurs and is not waived, FF will be entitled to the issuance of an injunction, restraining order, or other equitable relief in FF's favor, subject to court or arbitrator approval, restraining each Guarantor's accounts and/or receivables up to the amount due to FF as a result of the Event of Default, and each Guarantor

**I have read and agree to the terms and conditions set forth above:**

DocuSigned by:

*RONNIE FRANK WALRAVEN JR*

190D4E5D0D8B459...

Name and Title: RONNIE FRANK WALRAVEN JR        Date:    9/22/2025

FILED: NEW YORK COUNTY CLERK 03/12/2026 02:56 PM
INDEX NO. 651550/2026
NYSCEF DOC. NO. 8
RECEIVED NYSCEF: 03/12/2026

Case 1:26-cv-03849-MKV    Document 1-3    Filed 05/08/26    Page 79 of 118

Page **14** of **20**

## STANDARD MERCHANT CASH ADVANCE AGREEMENT

will be deemed to have consented to the granting of an application for the same to any court or arbitral tribunal of competent jurisdiction without any prior notice to any Merchant or Guarantor and without FF being required to furnish a bond or other undertaking in connection with the application.

**G6. Choice of Law.** Each Guarantor acknowledges and agrees that the Agreement and this Guarantee were made in the State of New York, that the Purchase Price is being paid by FF in the State of New York, that the Receivables Purchased Amount is being delivered to FF in the State of New York, and that the State of New York has a reasonable relationship to the transactions encompassed by the Agreement and this Guarantee. This Guarantee and the relationship between FF, each Merchant, and each Guarantor will be governed by and construed in accordance with the laws of the State of New York, without regard to any applicable principles of conflict of laws.

**G7. Forum and Venue Selection.** Any litigation relating to this Agreement or this Guarantee or involving FF on one side and any Merchant or any Guarantor on the other must be commenced and maintained in any court located in the Counties of Nassau, New York, or Sullivan in the State of New York (the "Acceptable Forums"). The parties agree that the Acceptable Forums are convenient, submit to the jurisdiction of the Acceptable Forums, and waive any and all objections to the jurisdiction or venue of the Acceptable Forums. If any litigation is initiated in any other venue or forum, the parties waive any right to oppose any motion or application made by any party to transfer such litigation to an Acceptable Forum. The parties agree that this Guarantee encompasses the transaction of business within the City of New York and that the Civil Court of the City of New York ("Civil Court") will have jurisdiction over any litigation relating to this Guarantee that is within the jurisdictional limit of the Civil Court. In addition to the Acceptable Forums, any action or proceeding to enforce a judgment or arbitration award against any Merchant or Guarantor or to restrain or collect any amount due to FF may be commenced and maintained in any other court of competent jurisdiction.

**G8. Jury Waiver.** Each Guarantor agrees to waive trial by jury in any dispute with FF.

**G9. Counterclaim Waiver.** In any litigation or arbitration commenced by FF, each Merchant and each Guarantor will not be permitted to interpose any counterclaim.

**G10. Statutes of Limitations.** Each Merchant and each Guarantor agree that any claim that is not asserted against FF within one year of its accrual will be time barred.

**G11. Costs.** Each Merchant and each Guarantor must pay all of FF's reasonable costs associated with a breach by any Merchant of the covenants in this Agreement or this Guarantee and the enforcement thereof, including but not limited to collection agency fees, expert witness fees, and costs of suit.

**G12. Prejudgment and Postjudgment Interest.** If FF becomes entitled to the entry of a judgment against any Merchant or any Guarantor, then FF will be entitled to the recovery of prejudgment interest at a rate of 24% per annum (or 16% per annum if any Merchant is a sole proprietorship), or the maximum rate permitted by applicable law if less, and upon entry of any such judgment, it will accrue interest at a postjudgment rate of 24% per annum (or 16% per annum if any Merchant is a sole proprietorship), or the maximum rate permitted by applicable law if less, which rate will govern over the statutory rate of interest up until actual satisfaction of the judgment.

**G13. Legal Fees.** If FF prevails in any litigation or arbitration with any Merchant or any Guarantor, then that Merchant and/or Guarantor must pay FF's reasonable attorney fees, which may include a contingency fee of up to 40% of the amount claimed.

**G14. Class Action Waiver.** FF, each Merchant, and each Guarantor agree that they may bring claims against each other relating to this Agreement only in their individual capacities, and not as a plaintiff or class action member in any purported class or representative proceedings.

**G15. Arbitration.** Any action or dispute relating to this Agreement or this Guarantee or involving FF on one side

**I have read and agree to the terms and conditions set forth above:**

DocuSigned by:

RONNIE FRANK WALRAVEN JR

190D4E5D0D8B459...

Name and Title: RONNIE FRANK WALRAVEN JR          Date:    9/22/2025

DocuSign Envelope ID: Case 1:26-cv-03849-MKV   Document 1-3   Filed 05/08/26   Page 80 of 118

## STANDARD MERCHANT CASH ADVANCE AGREEMENT

and any Merchant or any Guarantor on the other, including, but not limited to issues of arbitrability, will, at the option of any party to such action or dispute, be determined by arbitration before a single arbitrator. The arbitration will be administered either by Arbitration Services, Inc. under its Commercial Arbitration Rules as are in effect at that time, which rules are available at www.arbitrationservicesinc.com, or by Mediation & Commercial Arbitration, Inc. under its Commercial Arbitration Rules as are in effect at that time, which rules are available at www.mcarbitration.org. Once an arbitration is initiated with one of these arbitral forums, it must be maintained exclusively before that arbitral forum and the other arbitral forum specified herein may not be used. Any arbitration relating to this Agreement or this Guarantee must be conducted in the Counties of Nassau, New York, Queens, or Kings in the State of New York. Notwithstanding any provision of any applicable arbitration rules, any witness in an arbitration who does not reside in or have a place for the regular transaction of business located in New York City or the Counties of Nassau, Suffolk, or Westchester in the State of New York will be permitted to appear and testify remotely by telephone or video conferencing. In case any Event of Default occurs and is not waived, each Guarantor consents to FF making an application to the arbitrator, without notice to any Merchant or any Guarantor, for the issuance of an injunction, restraining order, or other equitable relief in FF's favor, subject to court or arbitrator approval, restraining each Guarantor's accounts and/or receivables up to the amount due to FF as a result of the Event of Default.

Each Guarantor acknowledges and agrees that the Agreement and this Guarantee are the product of communications conducted by telephone and the Internet, which are instrumentalities of interstate commerce, that the transactions contemplated under the Agreement and this Guarantee will be made by wire transfer and ACH, which are also instrumentalities of interstate commerce, and that the Agreement and this Guarantee therefore evidence a transaction affecting interstate commerce. Accordingly, notwithstanding any provision in the Agreement or this Guarantee to the contrary, all matters of arbitration relating to the Agreement or this Guarantee will be governed by and construed in accordance with the provisions of the Federal Arbitration Act, codified as Title 9 of the United States Code, however any application for injunctive relief in aid of arbitration or to confirm an arbitration award may be made under Article 75 of the New York Civil Practice Law and Rules. The arbitration agreement contained in this Section may also be enforced by any employee, agent, attorney, member, manager, officer, subsidiary, affiliate entity, successor, or assign of FF.

**G16. Service of Process.** Each Merchant and each Guarantor consent to service of process and legal notices made by First Class or Priority Mail delivered by the United States Postal Service and addressed to the Contact Address set forth on the first page of the Agreement or any other address(es) provided in writing to FF by any Merchant or any Guarantor, and unless applicable law or rules provide otherwise, any such service will be deemed complete upon dispatch. Each Merchant and each Guarantor agrees that it will be precluded from asserting that it did not receive service of process or any other notice mailed to the Contact Address set forth on the first page of the Agreement if it does not furnish a certified mail return receipt signed by FF demonstrating that FF was provided with notice of a change in the Contact Address.

**G17. Severability.** If any provision of this Guarantee is deemed invalid or unenforceable as written, it will be construed, to the greatest extent possible, in a manner which will render it valid and enforceable, and any limitation on the scope or duration of any such provision necessary to make it valid and enforceable will be deemed to be part thereof. If any provision of this Guarantee is deemed void, all other provisions will remain in effect.

**G18. Survival.** The provisions of Sections G2, G3, G4, G5, G6, G7, G8, G9, G10, G11, G12, G13, G14, G15, G16, G17, G18, G19, G20, G21, and G22 shall survive any termination of this Guarantee.

**G19. Headings.** Headings of the various articles and/or sections of this Guarantee are for convenience only and do not necessarily define, limit, describe, or construe the contents of such articles or sections.

**G20. Attorney Review.** Each Guarantor acknowledges that it has had an opportunity to review this Guarantee, the Agreement, and all addenda with counsel of its choosing before signing the documents or has chosen not to avail itself of the opportunity to do so.

**G21. Entire Agreement.** This Guarantee, inclusive of all addenda, if any, executed simultaneously herewith may not be amended, modified, or canceled except in writing signed by all parties. Should there arise any conflict between this Guarantee and any other document preceding it, this Guarantee will govern. This Guarantee does not affect any previous

**I have read and agree to the terms and conditions set forth above:**

DocuSigned by:

*RONNIE FRANK WALRAVEN JR*
190D4E5D0D8B459...

Name and Title: RONNIE FRANK WALRAVEN JR          Date:   9/22/2025

Case 1:26-cv-03849-MKV   Document 1-3   Filed 05/08/26   Page 81 of 118

## STANDARD MERCHANT CASH ADVANCE AGREEMENT

agreement between the parties unless such an agreement is specifically referenced in the Agreement or herein. This Guarantee will not be affected by any subsequent agreement between the parties unless this Guarantee is specifically referenced therein.

**I have read and agree to the terms and conditions set forth above:**

DocuSigned by:

RONNE FRANK WALRAVEN JR

190D4E5D0D8B459...

Name and Title: RONNIE FRANK WALRAVEN JR          Date:     9/22/2025

Docusign Envelope ID: CF3A898-D4E04AE48EF54E42B1235769E-

## STANDARD MERCHANT CASH ADVANCE AGREEMENT

**G22. Counterparts; Fax and Electronic Signatures.** This Guarantee may be executed electronically and in counterparts. Facsimile and electronic copies of this Guarantee will have the full force and effect of an original.

THE TERMS, DEFINITIONS, CONDITIONS AND INFORMATION SET FORTH IN THE "STANDARD MERCHANT CASH ADVANCE AGREEMENT", INCLUDING THE "TERMS AND CONDITIONS", ARE HEREBY INCORPORATED IN AND MADE A PART OF THIS GUARANTEE. CAPITALIZED TERMS NOT DEFINED IN THIS GUARANTEE SHALL HAVE THE MEANING SET FORTH IN THE STANDARD MERCHANT CASH ADVANCE AGREEMENT, INCLUDING THE TERMS AND CONDITIONS.

### EACH UNDERSIGNED HEREBY ACCEPTS THE TERMS OF THIS GUARANTEE

**GUARANTOR (#1)**

By: RONNIE FRANK WALRAVEN JR

(Print Name)

DocuSigned by:

RONNIE FRANK WALRAVEN JR
190D4E5D0D8B459...

(Signature)

SS# ▮▮▮▮▮▮▮

Driver License Number ▮▮▮▮▮▮▮

**GUARANTOR (#2)**

By:

(Print Name)

(Signature)

SS#

Driver License Number

Docusign Envelope ID: CF3A698-D4E0-431A-8E54-E42B12D37691
Case 1:26-cv-03849-MKV    Document 1-3    Filed 05/08/26    Page 83 of 118

STANDARD MERCHANT CASH ADVANCE AGREEMENT

# BANK INFORMATION

Dear Merchant,

Thank you for accepting this offer from FOREVER FUNDING LLC. We look forward to being your funding partner. You authorize FOREVER FUNDING LLC to collect the Receivables Purchased Amount under this Agreement by ACH debiting your bank account with the bank listed below. FOREVER FUNDING LLC will require viewing access to your bank account each business day. FOREVER FUNDING LLC will also require viewing access to your bank account, prior to funding, as part of our underwriting process. Please fill out the form below with the information necessary to access your account.

**\* Be sure to indicate capital or lower case letters.**

Name of bank:   Chase

Name of account:   NA

Routing number: 111000614

Account number: ████████

Bank portal website:   NA

Username:   NA

Password:   NA

Security Question/Answer 1:   NA

Security Question/Answer 2:   NA

Security Question/Answer 3:   NA

Any other information necessary to access your account:

NA

If you have any questions please feel free to contact us directly at (347) 719-7290.

Docusign Envelope ID: CF3A89B-D4ED-4B3B-8F54-FA2BD2857691

# Emergency Contacts

**4 valid emergency contacts are required to receive funding. Contacts will be verified.**

**Name:** NA

**Relation:** NA

**Phone Number:** NA

**Email Address:** NA


**Name:** NA

**Relation:** NA

**Phone Number:** NA

**Email Address:** NA


**Name:** NA

**Relation:** NA

**Phone Number:** NA

**Email Address:** NA


**Name:** NA

**Relation:** NA

**Phone Number:** NA

**Email Address:** NA

FILED: NEW YORK COUNTY CLERK 03/12/2026 02:56 PM INDEX NO. 651550/2026
NYSCEF DOC. NO. 8 RECEIVED NYSCEF: 03/12/2026
Docusign Envelope ID: CF3A89B-D4ED-4B3B-8F54-FA2BD2857691
Case 1:26-cv-03849-MKV    Document 1-3    Filed 05/08/26    Page 84 of 118

# ADDENDUM TO CONTRACT
## WAIVER OF PERSONAL SERVICE

This Addendum ("Addendum") is to be made a part of purchase and sale of future receivables agreement (the "Contract") between FOREVER FUNDING LLC ("Purchaser") and ER OF TEXAS, LLC ("Merchant") and RONNIE FRANK WALRAVEN JR ("Guarantor") (collectively the "Parties").

1. **Merchant** hereby irrevocably and unconditionally waives personal service of any summons, complaint, or other process, which may be made by any other means permitted by New York law. Merchant understands and agrees that an action, lawsuit, or controversy may be taken up and considered by a court without any further notice. Merchant further agrees to waive any objection to the absence of formal service of process.
2. **Guarantor** hereby irrevocably and unconditionally waives personal service of any summons, complaint, or other process, which may be made by any other means permitted by New York law. Guarantor understands and agrees that an action, lawsuit, or controversy may be taken up and considered by a court without any further notice. Guarantor further agrees to waive any objection to the absence of formal service of process.
3. **MERCHANT** HEREBY AGREES TO ACCEPT SERVICE OF ANY SUMMONS, COMPLAINT, OR OTHER PROCESS BY ELECTRONIC MAIL ("EMAIL")AT ▮▮▮▮▮▮▮▮ OR BY UNITED STATES POSTAL SERVICE ("USPS") AT THE ADDRESS LISTED ON THE CONTRACT FOR THE MERCHANT OR BY ANY OTHER MEANS PERMITTED BY NEW YORK LAW.
4. **GUARANTOR** HEREBY AGREES TO ACCEPT SERVICE OF ANY SUMMONS, COMPLAINT, OR OTHER PROCESS BY ELECTRONIC MAIL ("EMAIL") AT ▮▮▮▮▮▮▮▮ OR USPS AT THE ADDRESS LISTED ON THE CONTRACT FOR THE GUARANTOR OR BY ANY OTHER MEANS PERMITTED BY NEW YORK LAW.
5. Service shall be effective upon sending the electronic mail or depositing the summons and complaint in a USPS mailbox. Merchants' or Guarantors' email address or physical address provided shall be presumed to be valid and current unless Merchants or Guarantors provide a new email or physical address for service of process.
6. Merchant or Guarantor shall notify Purchaser of any changes to its physical address or email address for service. Unless Seller is notified of a change in address, all addresses shall be presumed to be accurate.
7. This Addendum shall supersede any inconsistent notice requirements in the Contract with respect to service of process.
8. Any parties, including additional guarantors shall agree to waive service of process and accept service at the email address provided or last known address.

**For the Merchant**

DocuSigned by:

*RONNIE FRANK WALRAVEN JR*

190D4E5D0D8B459...

_____

**Name:** RONNIE FRANK WALRAVEN JR

**Date:** Sep. 22, 2025

**Additional Guarantor (if applicable)**

_____

**Name:**

**Date:** Sep. 22, 2025

DocuSign Envelope ID: CF3A898-D4E0-4242-8E54-FA28012857C2

Case 1:26-cv-03849-MKV    Document 1-3    Filed 05/08/26    Page 86 of 118

COMPLAINT

EXHIBIT "H"

Case 1:26-cv-03849-MKV    Document 1-3    Filed 05/08/26    Page 87 of 118

● Jul 25, 2025    FOREVER FUNDING ER OF TEXA Jul 25 CCD    475,000.00
067015096

Case 1:26-cv-03849-MKV     Document 1-3     Filed 05/08/26     Page 88 of 118

COMPLAINT

EXHIBIT "I"

Case 1:26-cv-03849-MKV    Document 1-3    Filed 05/08/26    Page 89 of 118

| Deal ID | FE1212 | | Date | Description | Amount |
|---|---|---|---|---|---|
| Name | ER OF TEXAS, LLC 6 | | 9/30/2025 | WIRE FROM ER OF TEXAS HILLCREST L | $37,475.00 |
| Date | 9/22/2025 | | | | |
| Status | Default | | | | |
| | | | | | |
| Principal | $500,000.00 | | | | |
| Payback | $749,500.00 | | | | |
| Bank Fee | $25,000.00 | | | | |
| Type | MCA | | | | |
| | | | | | |
| Net | $475,000.00 | | | | |
| | | | | | |
| Paid | $37,475.00 | | | | |
| Paid % | 5.00% | | | | |
| Balance | $712,025.00 | | | | |

COMPLAINT

EXHIBIT "J"

DocuSign Envelope ID: 1F84FD47-F3EF-47A5-B694-F852C8300DD3

Case 1:26-cv-03849-MKV    Document 1-3    Filed 05/08/26    Page 91 of 118



## FOREVER FUNDING LLC
2389 Main St STE 100, Glastonbury, CT 06033
(347) 719-7290

# STANDARD MERCHANT CASH ADVANCE AGREEMENT

     This is an Agreement dated Dec. 01, 2025 by and between FOREVER FUNDING LLC ("FF") and each merchant listed below ("Merchant").

Merchant's Legal Name: ER OF TEXAS, LLC
D/B/A/: ER OF TEXAS                              Fed ID #: ▮▮▮▮▮▮▮
Type of Entity: Limited Liability Company
Business Address: 1441 LATIGO CT    City: PROSPER    State: TX    Zip: 75078
Contact Address: 4267 SHAVANO DR    City: FRISCO    State: TX    Zip: 75034
E-mail Address: ▮▮▮▮▮▮▮▮▮▮▮           Phone Number: ▮▮▮▮▮▮▮▮

| | |
|---|---:|
| **Purchase Price**<br>*This is the amount being paid to Merchant(s) for the Receivables Purchased Amount (defined below).* | **$ 325,000.00** |
| **Receivables Purchased Amount**<br>*This is the amount of Receivables (defined in Section 1 below) being sold.* | **$ 487,175.00** |
| **Specified Percentage**<br>*This is the percentage of Receivables (defined below) to be delivered until the Receivables Purchased Amount is paid in full.* | **25.00%** |
| **Net Funds Provided**<br>*This is the net amount being paid to or on behalf of Merchant(s) after deduction of applicable fees listed in Section 2 below.* | **$ 292,500.00** |
| **Initial Estimated Payment**<br>*This is only applicable if an Addendum for Estimated Payments is being signed. This is the initial amount of periodic payments collected from Merchant(s) as an approximation of no more than the Specified Percentage of the Receivables and is subject to reconciliation as set forth in Section 4 below.* | **$ 8,000.00**<br>**per day** |

**I have read and agree to the terms and conditions set forth above:**

DocuSigned by:

*RONNIE FRANK WALRAVEN JR*
190D4E5D0D8B459...

Name and Title: RONNIE FRANK WALRAVEN JR      Date:   12/1/2025

FILED: NEW YORK COUNTY CLERK 03/12/2026 02:56 PM

NYSCEF DOC. NO. 11

INDEX NO. 651550/2026

RECEIVED NYSCEF: 03/12/2026

DocuSign Envelope ID: 1F84FB77-F5EF-42A9-BB04-EBB29C300DB3

Case 1:26-cv-03849-MKV    Document 1-3    Filed 05/08/26    Page 92 of 118

## STANDARD MERCHANT CASH ADVANCE AGREEMENT

### TERMS AND CONDITIONS

**1. Sale of Future Receipts.** Merchant(s) hereby sell, assign, and transfer to FF (making FF the absolute owner) in consideration of the funds provided ("Purchase Price") specified above, all of each Merchant's future accounts, contract rights, and other obligations arising from or relating to the payment of monies from each Merchant's customers and/or other third party payors (the "Receivables", defined as all payments made by cash, check, credit or debit card, electronic transfer, or other form of monetary payment in the ordinary course of each merchant's business), for the payment of each Merchant's sale of goods or services until the amount specified above (the "Receivables Purchased Amount") has been delivered by Merchant(s) to FF. Each Merchant hereby acknowledges that until the Receivables Purchased Amount has been received in full by FF, each Merchant's Receivables, up to the balance of the Receivables Purchased Amount, are the property of FF and not the property of any Merchant. Each Merchant agrees that it is a fiduciary for FF and that each Merchant will hold Receivables in trust for FF in its capacity as a fiduciary for FF.

The Receivables Purchased Amount shall be paid to FF by each Merchant irrevocably authorizing only one depositing account acceptable to FF (the "Account") to remit the percentage specified above (the "Specified Percentage") of each Merchant's settlement amounts due from each transaction, until such time as FF receives payment in full of the Receivables Purchased Amount. Each Merchant hereby authorizes FF to ACH debit the specified remittances from the Account on a daily basis as of the next business day after the date of this Agreement and will provide FF with all required access codes and monthly bank statements. Each Merchant understands that it will be held responsible for any fees resulting from a rejected ACH attempt or an Event of Default (see Section 2). FF is not responsible for any overdrafts or rejected transactions that may result from FF's ACH debiting the Specified Percentage amounts under the terms of this Agreement.

**2. Additional Fees.** In addition to the Receivables Purchased Amount, each Merchant will be held responsible to FF for the following fees, where applicable:

A. $32,500.00 - to cover underwriting and the ACH debit program, as well as related expenses. This will be deducted from payment of the Purchase Price.

B. Wire Fee - Merchant(s) shall receive funding electronically to the Account and will be charged $50.00 for a Fed Wire or $0.00 for a bank ACH. This will be deducted from payment of the Purchase Price.

C. Blocked Account/Default - $2,500.00 - If FF considers an Event of Default to have taken place under Section 34.

D. UCC Fee - $195.00 – to cover FF filing a UCC-1 financing statement to secure its interest in the Receivables Purchased Amount. A $195.00 UCC termination fee will be charged if a UCC filing is terminated.

E. Court costs, arbitration fees, collection agency fees, attorney fees, expert fees, and any other expenses incurred in litigation, arbitration, or the enforcement of any of FF's legal or contractual rights against each Merchant and/or each Guarantor, if required, as explained in other Sections of this Agreement.

**3. Cap on Collection of the Receivables Purchased Amount.** The amount that FF will collect from Merchant(s) towards the Receivables Purchased Amount during any specific day will be capped at $8,000.00 (the "Cap"). If the Specified Percentage of all Receivables for a specific day is less than the Cap, then in addition to the Specified Percentage of Receivables for that day, FF will be permitted to collect any Receivables it did not previously collect due to the Cap such that the total amount collected during that day does not exceed the Cap. The Cap is not applicable to make up for a business day on which FF is closed and does not ACH debit the Account, to subsequent attempts to collect a rejected or blocked ACH payment, or for the collection of any of the fees listed in Section 2 or if any Event of Default listed in Section 34 is considered by FF to have taken place.

**4. Reconciliations**. Any Merchant may give written notice to FF requesting that FF conduct a reconciliation in order to ensure that the amount that FF has collected equals the Specified Percentage of Merchant(s)'s Receivables under this Agreement. Any Merchant may give written notice requesting a reconciliation. A reconciliation may also be requested by e-mail to office@foreverfunding.co and such notice will be deemed to have been received if and when FF sends a reply e-mail (but not a read receipt). If such reconciliation determines that FF collected more than it was entitled to, then FF will credit to the Account all amounts to which FF was not entitled within seven days thereafter. If such reconciliation determines

**I have read and agree to the terms and conditions set forth above:**

DocuSigned by:

*RONNIE FRANK WALRAVEN JR*

190D4E5D0D8B459...

Name and Title: RONNIE FRANK WALRAVEN JR          Date:   12/1/2025

DocuSign Envelope ID: 1F84FD77-F5EF-42A2-9B04-EB226369D0D3

Case 1:26-cv-03849-MKV    Document 1-3    Filed 05/08/26    Page 93 of 118

## STANDARD MERCHANT CASH ADVANCE AGREEMENT

that FF collected less than it was entitled to, then FF will debit from the Account all additional amounts to which FF was entitled within seven days thereafter. In order to effectuate this reconciliation, any Merchant must produce with its request the login and password for the Account and any and all bank statements and merchant statements covering the period from the date of this Agreement through the date of the request for a reconciliation. FF will complete each such reconciliation within two business days after receipt of a written request for one accompanied by the information and documents required for it. Nothing herein limits the amount of times that such a reconciliation may be requested.

**5. Prepayments.** Although there is no obligation to do so, any Merchant may prepay any amount towards the Receivables Purchased Amount. There will be no penalty for any prepayment made by any Merchant. Any Merchant may elect to terminate this Agreement by prepaying FF the amount of the balance of the Receivables Purchased Amount at that time.

**6. Merchant Deposit Agreement.** Merchant(s) shall appoint a bank acceptable to FF, to obtain electronic fund transfer services and/or "ACH" payments. Merchant(s) shall provide FF and/or its authorized agent with all of the information, authorizations, and passwords necessary to verify each Merchant's Receivables. Merchant(s) shall authorize FF and/or its agent(s) to deduct the amounts owed to FF for the Receivables as specified herein from settlement amounts which would otherwise be due to each Merchant and to pay such amounts to FF by permitting FF to withdraw the Specified Percentage by ACH debiting of the account. The authorization shall be irrevocable absent FF's written consent.

**7. Term of Agreement.** The term of this Agreement is indefinite and shall continue until FF receives the full Receivables Purchased Amount, or earlier if terminated pursuant to any provision of this Agreement. The provisions of Sections 4, 6, 7, 8, 10, 11, 13, 14, 15, 17, 18, 19, 22, 23, 28, 31, 32, 33, 34, 35, 37, 38, 39, 40, 41, 42, 43, 44, 45, 46, 47, 48, 49, 50, 51, 52, 53, 54, 55, 56, 57, and 58 shall survive any termination of this Agreement.

**8. Ordinary Course of Business.** Each Merchant acknowledges that it is entering into this Agreement in the ordinary course of its business and that the payments to be made from each Merchant to FF under this Agreement are being made in the ordinary course of each Merchant's business.

**9. Financial Condition.** Each Merchant and each Guarantor (Guarantor being defined as each signatory to the Guarantee of this Agreement) authorizes FF and its agent(s) to investigate each Merchant's financial responsibility and history, and will provide to FF any bank or financial statements, tax returns, and other documents and records, as FF deems necessary prior to or at any time after execution of this Agreement. A photocopy of this authorization will be deemed as acceptable for release of financial information. FF is authorized to update such information and financial profiles from time to time as it deems appropriate.

**10. Monitoring, Recording, and Electronic Communications.** FF may choose to monitor and/or record telephone calls with any Merchant and its owners, employees, and agents. By signing this Agreement, each Merchant agrees that any call between FF and any Merchant or its representatives may be monitored and/or recorded. Each Merchant and each Guarantor grants access for FF to enter any Merchant's premises and to observe any Merchant's premises without any prior notice to any Merchant at any time after execution of this Agreement.

FF may use automated telephone dialing, text messaging systems, and e-mail to provide messages to Merchant(s), Owner(s) (Owner being defined as each person who signs this Agreement on behalf of a Merchant), and Guarantor(s) about Merchant(s)'s account. Telephone messages may be played by a machine automatically when the telephone is answered, whether answered by an Owner, a Guarantor, or someone else. These messages may also be recorded by the recipient's answering machine or voice mail. Each Merchant, each Owner, and each Guarantor gives FF permission to call or send a text message to any telephone number given to FF in connection with this Agreement and to play pre-recorded messages and/or send text messages with information about this Agreement and/or any Merchant's account over the phone. Each Merchant, each Owner, and each Guarantor also gives FF permission to communicate such information to them by e-mail. Each Merchant, each Owner, and each Guarantor agree that FF will not be liable to any of them for any such calls or electronic communications, even if information is communicated to an unintended recipient. Each Merchant, each Owner, and each Guarantor acknowledge that when they receive such calls or electronic communications, they may incur a charge

**I have read and agree to the terms and conditions set forth above:**

DocuSigned by:

*RONNIE FRANK WALRAVEN JR*

190D4E5D0D8B459...

Name and Title: RONNIE FRANK WALRAVEN JR          Date:    12/1/2025

DocuSign Envelope ID: 1F84FD77-F5EF-4A78-BE04-EBB258300B43
Case 1:26-cv-03849-MKV   Document 1-3   Filed 05/08/26   Page 94 of 118

## STANDARD MERCHANT CASH ADVANCE AGREEMENT

from the company that provides them with telecommunications, wireless, and/or Internet services, and that FF has no liability for any such charges.

**11. Accuracy of Information Furnished by Merchant and Investigation Thereof.** To the extent set forth herein, each of the parties is obligated upon his, her, or its execution of the Agreement to all terms of the Agreement. Each Merchant and each Owner signing this Agreement represent that he or she is authorized to sign this Agreement for each Merchant, legally binding said Merchant to its obligations under this Agreement and that the information provided herein and in all of FF's documents, forms, and recorded interview(s) is true, accurate, and complete in all respects. FF may produce a monthly statement reflecting the delivery of the Specified Percentage of Receivables from Merchant(s) to FF. An investigative report may be made in connection with the Agreement. Each Merchant and each Owner signing this Agreement authorize FF, its agents and representatives, and any credit-reporting agency engaged by FF, to (i) investigate any references given or any other statements obtained from or about each Merchant or any of its Owners for the purpose of this Agreement, and (ii) pull credit report at any time now or for so long as any Merchant and/or Owners(s) continue to have any obligation to FF under this Agreement or for FF's ability to determine any Merchant's eligibility to enter into any future agreement with FF. Any misrepresentation made by any Merchant or Owner in connection with this Agreement may constitute a separate claim for fraud or intentional misrepresentation.

*Authorization for soft pulls:* Each Merchant and each Owner understands that by signing this Agreement, they are providing 'written instructions' to FF under the Fair Credit Reporting Act, authorizing FF to obtain information from their personal credit profile or other information from Experian, TransUnion, and Equifax. Each Merchant and each Guarantor authorizes FF to obtain such information solely to conduct a pre-qualification for credit.

*Authorization for hard pulls:* Each Merchant and each Owner understands that by signing this Agreement, they are providing 'written instructions' to FF under the Fair Credit Reporting Act, authorizing FF to obtain information from their personal credit profile or other information from Experian, TransUnion, and Equifax. Each Merchant and each Guarantor authorizes FF to obtain such information in accordance with a merchant cash advance application.

**12. Transactional History.** Each Merchant authorizes its bank to provide FF with its banking and/or credit card processing history.

**13. Indemnification.** Each Merchant and each Guarantor jointly and severally indemnify and hold harmless each Merchant's credit card and check processors (collectively, "Processor") and Processor's officers, directors, and shareholders against all losses, damages, claims, liabilities, and expenses (including reasonable attorney and expert fees) incurred by Processor resulting from (a) claims asserted by FF for monies owed to FF from any Merchant and (b) actions taken by any Processor in reliance upon information or instructions provided by FF.

**14. No Liability.** In no event will FF be liable for any claims asserted by any Merchant under any legal theory for lost profits, lost revenues, lost business opportunities, exemplary, punitive, special, incidental, indirect, or consequential damages, each of which is waived by each Merchant and each Guarantor.

**15. Sale of Receivables.** Each Merchant and FF agree that the Purchase Price under this Agreement is in exchange for the Receivables Purchased Amount and that such Purchase Price is not intended to be, nor shall it be construed as a loan from FF to any Merchant. FF is entering into this Agreement knowing the risks that each Merchant's business may decline or fail, resulting in FF not receiving the Receivables Purchased Amount. Each Merchant agrees that the Purchase Price in exchange for the Receivables pursuant to this Agreement equals the fair market value of such Receivables. FF has purchased and shall own all the Receivables described in this Agreement up to the full Receivables Purchased Amount as the Receivables are created. Payments made to FF in respect to the full amount of the Receivables shall be conditioned upon each Merchant's sale of products and services and the payment therefor by each Merchant's customers in the manner provided in this Agreement. Although certain jurisdictions require the disclosure of an Annual Percentage Rate or APR in connection with this Agreement, those disclosures do not change the fact that the transaction encompassed by this Agreement is not a loan and does not have an interest rate.

**16. Power of Attorney.** Each Merchant irrevocably appoints FF as its agent and attorney-in-fact with full authority

**I have read and agree to the terms and conditions set forth above:**

DocuSigned by:

RONNIE FRANK WALRAVEN JR

190D4E5D0D8B459...

Name and Title: RONNIE FRANK WALRAVEN JR          Date:    12/1/2025

DocuSign Envelope ID: 1F84FD77-F5EF-4 ... -B304-E882E9300DF3

Case 1:26-cv-03849-MKV    Document 1-3    Filed 05/08/26    Page 95 of 118

## STANDARD MERCHANT CASH ADVANCE AGREEMENT

to take any action or execute any instrument or document to settle all obligations due to FF, or, if FF considers an Event of Default to have taken place under Section 34, to settle all obligations due to FF from each Merchant, including without limitation (i) to obtain and adjust insurance; (ii) to collect monies due or to become due under or in respect of any of the Collateral (which is defined in Section 33); (iii) to receive, endorse and collect any checks, notes, drafts, instruments, documents, or chattel paper in connection with clause (i) or clause (ii) above; (iv) to sign each Merchant's name on any invoice, bill of lading, or assignment directing customers or account debtors to make payment directly to FF; and (v) to file any claims or take any action or institute any proceeding which FF may deem necessary for the collection of any of the unpaid Receivables Purchased Amount from the Collateral, or otherwise to enforce its rights with respect to payment of the Receivables Purchased Amount.

**17. Protections Against Default.** The following Protections 1 through 7 may be invoked by FF, immediately and without notice to any Merchant in the event:

(a) Any Merchant takes any action to discourage the use of methods of payment ordinarily and customarily used by its customers or permits any event to occur that could have an adverse effect on the use, acceptance, or authorization of checks and credit cards for the purchase of any Merchant's services and products;

(b) Any Merchant changes its arrangements with any Processor in any way that is adverse to FF;

(c) Any Merchant changes any Processor through which the Receivables are settled to another electronic check and/or credit card processor or permits any event to occur that could cause diversion of any Merchant's check and/or credit card transactions to another such processor;

(d) Any Merchant interrupts the operation of its business (other than adverse weather, natural disasters, or acts of God) or transfers, moves, sells, disposes, or otherwise conveys its business or assets without (i) the express prior written consent of FF and (ii) the written agreement of any purchaser or transferee to the assumption of all of any Merchant's obligations under this Agreement pursuant to documentation satisfactory to FF; or

(e) Any Merchant takes any action, fails to take any action, or offers any incentive—economic or otherwise—the result of which will be to induce any customer or customers to pay for any Merchant's goods or services with any means other than checks and/or credit cards that are settled through Processor. These protections are in addition to any other remedies available to FF at law, in equity, or otherwise available pursuant to this Agreement.

(f) FF considers any Event of Default listed in Section 34 to have taken place.

Protection 1: The full uncollected Receivables Purchased Amount plus all fees due under this Agreement may become due and payable in full immediately.

Protection 2. FF may enforce the provisions of the Guarantee against Guarantor.

Protection 3. FF may enforce its security interest in the Collateral identified in Section 33.

Protection 4. FF may proceed to protect and enforce its rights and remedies by litigation or arbitration.

Protection 5. If requested by FF, Merchant shall deliver to FF an executed assignment of lease of each Merchant's premises in favor of FF. Upon breach of any provision in this Section 17, FF may exercise its rights under such assignment of lease.

Protection 6. FF may debit any Merchant's depository accounts wherever situated by means of ACH debit or electronic or facsimile signature on a computer-generated check drawn on any Merchant's bank account or otherwise, in an amount consistent with the terms of this Agreement.

Protection 7. FF will have the right, without waiving any of its rights and remedies and without notice to any Merchant and/or Guarantor, to notify each Merchant's credit card and/or check processor of the sale of Receivables hereunder and to direct such credit card processor to make payment to FF of all or any portion of the amounts received by such credit card processor on behalf of each Merchant. Each Merchant hereby grants to FF an irrevocable power-of-attorney, which power-of-attorney will be coupled with an interest, and hereby appoints FF and its representatives as each Merchant's attorney-in-fact to take any and all action necessary to direct such new or additional credit card and/or check processor to make payment to FF as contemplated by this Section.

**18. Protection of Information.** Each Merchant and each person signing this Agreement on behalf of each Merchant and/or as Owner, in respect of himself or herself personally, authorizes FF to disclose information concerning each Merchant, Owner and/or Guarantor's credit standing and business conduct to agents, affiliates, subsidiaries, and credit reporting bureaus. Each Merchant, Guarantor, and Owner hereby waives to the maximum extent permitted by law any claim

**I have read and agree to the terms and conditions set forth above:**

DocuSigned by:

*RONNIE FRANK WALRAVEN JR*

190D4E5D0D8B459...

Name and Title: RONNIE FRANK WALRAVEN JR          Date:    12/1/2025

DocuSign Envelope ID: 1F84FD7-FBEF-42A9-B801-EBE26300DB3

Case 1:26-cv-03849-MKV     Document 1-3     Filed 05/08/26     Page 96 of 118

Page **6** of **20**

## STANDARD MERCHANT CASH ADVANCE AGREEMENT

for damages against FF or any of its affiliates relating to any (i) investigation undertaken by or on behalf of FF as permitted by this Agreement or (ii) disclosure of information as permitted by this Agreement.

**19. Confidentiality.** Each Merchant understands and agrees that the terms and conditions of the products and services offered by FF, including this Agreement and any other FF documents (collectively, "Confidential Information") are proprietary and confidential information of FF. Accordingly, unless disclosure is required by law or court order, Merchant(s) shall not disclose Confidential Information of FF to any person other than an attorney, accountant, financial advisor, or employee of any Merchant who needs to know such information for the purpose of advising any Merchant ("Advisor"), provided such Advisor uses such information solely for the purpose of advising any Merchant and first agrees in writing to be bound by the terms of this Section 19.

**20. D/B/As.** Each Merchant hereby acknowledges and agrees that FF may be using "doing business as" or "d/b/a" names in connection with various matters relating to the transaction between FF and each Merchant, including the filing of UCC-1 financing statements and other notices or filings.

**21. Financial Condition and Financial Information.** Each Merchant represents, warrants, and covenants that its bank and financial statements, copies of which have been furnished to FF, and future statements which will be furnished hereafter at the request of FF, fairly represent the financial condition of each Merchant at such dates, and that since those dates there have been no material adverse changes, financial or otherwise, in such condition, operation, or ownership of any Merchant. Each Merchant has a continuing affirmative obligation to advise FF of any material adverse change in its financial condition, operation, or ownership.

**22. Governmental Approvals.** Each Merchant represents, warrants, and covenants that it is in compliance and shall comply with all laws and has valid permits, authorizations, and licenses to own, operate, and lease its properties and to conduct the business in which it is presently engaged.

**23. Authorization.** Each Merchant represents, warrants, and covenants that it and each person signing this Agreement on behalf of each Merchant has full power and authority to incur and perform the obligations under this Agreement, all of which have been duly authorized.

**24. Insurance.** Each Merchant represents, warrants, and covenants that it will maintain business-interruption insurance naming FF as loss payee and additional insured in amounts and against risks as are satisfactory to FF and shall provide FF proof of such insurance upon request.

**25. Electronic Check Processing Agreement.** Each Merchant represents, warrants, and covenants that it will not, without FF's prior written consent, change its Processor, add terminals, change its financial institution or bank account, or take any other action that could have any adverse effect upon any Merchant's obligations under this Agreement.

**26. Change of Name or Location.** Each Merchant represents, warrants, and covenants that it will not conduct its business under any name other than as disclosed to FF or change any place(s) of its business without prior written consent from FF.

**27. Estoppel Certificate.** Each Merchant represents, warrants, and covenants that it will, at any time, and from time to time, upon at least two day's prior notice from FF to that Merchant, execute, acknowledge, and deliver to FF and/or to any other person or entity specified by FF, a statement certifying that this Agreement is unmodified and in full force and effect (or, if there have been modifications, that the same is in full force and effect as modified and stating the modifications) and stating the dates which the Receivables Purchased Amount or any portion thereof have been paid.

**28. No Bankruptcy.** Each Merchant represents, warrants, and covenants that as of the date of this Agreement, it does not contemplate and has not filed any petition for bankruptcy protection under Title 11 of the United States Code and there has been no involuntary petition brought or pending against any Merchant. Each Merchant further warrants that it

**I have read and agree to the terms and conditions set forth above:**

DocuSigned by:

RONNIE FRANK WALRAVEN JR

190D4E5D0D8B459...

Name and Title: RONNIE FRANK WALRAVEN JR          Date:   12/1/2025

DocuSign Envelope ID: 1F84FD77-F5EF-4743-8404-EB22E830E0D3
Case 1:26-cv-03849-MKV    Document 1-3    Filed 05/08/26    Page 97 of 118

## STANDARD MERCHANT CASH ADVANCE AGREEMENT

does not anticipate filing any such bankruptcy petition and it does not anticipate that an involuntary petition will be filed against it. Each Merchant further warrants that there will be no statutory presumption that it would have been insolvent on the date of this Agreement.

**29. Unencumbered Receivables.** Each Merchant represents, warrants, and covenants that it has good, complete, and marketable title to all Receivables, free and clear of any and all liabilities, liens, claims, changes, restrictions, conditions, options, rights, mortgages, security interests, equities, pledges, and encumbrances of any kind or nature whatsoever or any other rights or interests that may be inconsistent with this Agreement or adverse to the interests of FF, other than any for which FF has actual or constructive knowledge as of the date of this Agreement.

**30. Stacking.** Each Merchant represents, warrants, and covenants that it will not enter into with any party other than FF any arrangement, agreement, or commitment that relates to or involves the Receivables, whether in the form of a purchase of, a loan against, collateral against, or the sale or purchase of credits against Receivables without the prior written consent of FF.

**31. Business Purpose.** Each Merchant represents, warrants, and covenants that it is a valid business in good standing under the laws of the jurisdictions in which it is organized and/or operates, and each Merchant is entering into this Agreement for business purposes and not as a consumer for personal, family, or household purposes.

**32. Default Under Other Contracts.** Each Merchant represents, warrants, and covenants that its execution of and/or performance under this Agreement will not cause or create an event of default by any Merchant under any contract with another person or entity.

**33. Security Interest.** To secure each Merchant's payment and performance obligations to FF under this Agreement and any future agreement with FF, each Merchant hereby grants to FF a security interest in collateral (the "Collateral"), that is defined as collectively: (a) all accounts, including without limitation, all deposit accounts, accounts-receivable, and other receivables, chattel paper, documents, equipment, general intangibles, instruments, and inventory, as those terms are defined by Article 9 of the Uniform Commercial Code (the "UCC"), now or hereafter owned or acquired by any Merchant; and (b) all proceeds, as that term is defined by Article 9 of the UCC. The parties acknowledge and agree that any security interest granted to FF under any other agreement between any Merchant or Guarantor and FF (the "Cross-Collateral") will secure the obligations hereunder and under this Agreement. Negative Pledge: Each Merchant agrees not to create, incur, assume, or permit to exist, directly or indirectly, any lien on or with respect to any of the Collateral or the Cross-Collateral, as applicable.

Each Merchant agrees to execute any documents or take any action in connection with this Agreement as FF deems necessary to perfect or maintain FF's first priority security interest in the Collateral and the Cross-Collateral, including the execution of any account control agreements. Each Merchant hereby authorizes FF to file any financing statements deemed necessary by FF to perfect or maintain FF's security interest, which financing statements may contain notification that each Merchant has granted a negative pledge to FF with respect to the Collateral and the Cross-Collateral, and that any subsequent lienor may be tortiously interfering with FF's rights. Each Merchant shall be liable for and FF may charge and collect all costs and expenses, including but not limited to attorney fees, which may be incurred by FF in protecting, preserving, and enforcing FF's security interest and rights. Each Merchant further acknowledges that FF may use another legal name and/or D/B/A or an agent when designating the Secured Party when FF files the above-referenced financing statement(s).

**34. Events of Default.** An "Event of Default" may be considered to have taken place if any of the following occur:
(1) Any Merchant violates any term or covenant in this Agreement;
(2) Any representation or warranty by any Merchant in any Agreement with FF that has not been terminated proves to have been incorrect, false, or misleading in any material respect when made;
(3) Any Merchant fails to provide FF with written notice of any material change in its financial condition, operation, or ownership within seven days thereafter (unless a different notice period is specifically provided for elsewhere in this Agreement;

**I have read and agree to the terms and conditions set forth above:**

DocuSigned by:

RONNIE FRANK WALRAVEN JR

190D4E5D0D8B459...

Name and Title: RONNIE FRANK WALRAVEN JR          Date:    12/1/2025

DocuSign Envelope ID: 1F84FD47-F3EF-47A5-BE04-EB02E6300BB3

## STANDARD MERCHANT CASH ADVANCE AGREEMENT

(4) the sending of notice of termination by any Merchant or Guarantor;

(5) Any Merchant transports, moves, interrupts, suspends, dissolves, or terminates its business without the prior written consent of FF other than a bankruptcy filing;

(6) Any Merchant transfers or sells all or substantially all of its assets without the prior written consent of FF;

(7) Any Merchant makes or sends notice of any intended bulk sale or transfer by any Merchant without the prior written consent of FF;

(8) Any Merchant uses multiple depository accounts without the prior written consent of FF;

(9) Any Merchant changes the Account without the prior written consent of FF;

(10) FF is not provided with updated login or password information for the Account within one business day after any such change is made by any Merchant;

(11) Any Merchant fails to send bank statements, merchant account statements, or bank login information for the Account within two business days after a written request for same is made by FF;

(12) Any Merchant performs any act that reduces the value of any Collateral granted under this Agreement;

(13) Any Merchant fails to deposit its Receivables into the Account;

(14) Any Merchant causes any ACH debit to the Account by FF to be blocked or stopped without providing any advance written notice to FF, which notice may be given by e-mail to office@foreverfunding.co; or

(15) Any Merchant prevents FF from collecting any part of the Receivables Purchased Amount;

(16) Any Merchant causes any ACH debit to the Account to be stopped or otherwise returned that would result in an ACH Return Code of R08, R10, or R29 and that Merchant does not within two business days thereafter provide FF with written notice thereof explaining why that Merchant caused the ACH debit to be stopped or otherwise returned, which notice may be given by e-mail to office@foreverfunding.co; or

(17) Any Merchant defaults under any of the terms, covenants, and conditions of any other agreement with FF.

**35. Remedies.** In case any Event of Default occurs and is not waived, FF may proceed to protect and enforce its rights or remedies by suit in equity or by action at law, or both, whether for the specific performance of any covenant, agreement, or other provision contained herein, or to enforce the discharge of each Merchant's obligations hereunder, or any other legal or equitable right or remedy. All rights, powers, and remedies of FF in connection with this Agreement, including each Protection listed in Section 17, may be exercised at any time by FF after the occurrence of an Event of Default, are cumulative and not exclusive, and will be in addition to any other rights, powers, or remedies provided by law or equity. In addition to the foregoing, in case any Event of Default occurs and is not waived, FF will be entitled to the issuance of an injunction, restraining order, or other equitable relief in FF's favor, subject to court or arbitrator approval, restraining each Merchant's accounts and/or receivables up to the amount due to FF as a result of the Event of Default, and each Merchant will be deemed to have consented to the granting of an application for the same to any court or arbitral tribunal of competent jurisdiction without any prior notice to any Merchant or Guarantor and without FF being required to furnish a bond or other undertaking in connection with the application.

**36. Required Notifications.** Each Merchant is required to give FF written notice at least one day prior to any filing under Title 11 of the United States Code. Merchant(s) are required to give FF at least seven days' written notice prior to the closing of any sale of all or substantially all of any Merchant's assets or stock.

**37. Assignment.** This Agreement shall be binding upon and inure to the benefit of the parties and their respective successors and assigns, except that Merchant(s) shall not have the right to assign its rights hereunder or any interest herein without the prior written consent of FF, which consent may be withheld in FF's sole discretion. FF may assign, transfer, or sell its rights under this Agreement, including, without limitation, its rights to receive the Receivables Purchased Amount, and its rights under Section 33 of this Agreement, the Guarantee, and any other agreement, instrument, or document executed in connection with the transactions contemplated by this Agreement (a "Related Agreement"), or delegate its duties hereunder or thereunder, either in whole or in part. From and after the effective date of any such assignment or transfer by FF, whether or not any Merchant has actual notice thereof, this Agreement and each Related Agreement shall be deemed amended and modified (without the need for any further action on the part of any Merchant or FF) such that the assignee shall be deemed a party to this Agreement and any such Related Agreement and, to the extent provided in the assignment document between FF and such assignee (the "Assignment Agreement"), have the rights and obligations of FF

**I have read and agree to the terms and conditions set forth above:**

DocuSigned by:

RONNIE FRANK WALRAVEN JR

190D4E5D0D8B459...

Name and Title: RONNIE FRANK WALRAVEN JR          Date:    12/1/2025

DocuSign Envelope ID: 1F84FB77-F5EF-4-7AJ-8B04-EB923030DB3

Case 1:26-cv-03849-MKV    Document 1-3    Filed 05/08/26    Page 99 of 118

Page **9** of **20**

### STANDARD MERCHANT CASH ADVANCE AGREEMENT

under this Agreement and such Related Agreements with respect to the portion of the Receivables Purchased Amount set forth in such Assignment Agreement, including but not limited to rights in the Receivables, Collateral and Additional Collateral, the benefit of each Guarantor's guaranty regarding the full and prompt performance of every obligation that is a subject of the Guarantee, FF's rights under Section 17 of this Agreement (Protections Against Default), and to receive damages from any Merchant following a breach of this Agreement by any Merchant. In connection with such assignment, FF may disclose all information that FF has relating to any Merchant or its business. Each Merchant agrees to acknowledge any such assignment in writing upon FF's request.

**38. Notices.** All notices, requests, consents, demands, and other communications hereunder shall be delivered by certified mail, return receipt requested, or by overnight delivery with signature confirmation to the respective parties to this Agreement at their addresses set forth in this Agreement and shall become effective only upon receipt. Written notice may also be given to any Merchant or Guarantor by e-mail to the E-mail Address listed on the first page of this Agreement. Each Merchant must set its spam or junk mail filter to accept e-mails sent by office@foreverfunding.co and its domain. This Section is not applicable to service of process or notices in any legal proceedings.

**39. Choice of Law.** Each Merchant acknowledges and agrees that this Agreement was made in the State of New York, that the Purchase Price is being paid by FF in the State of New York, that the Receivables Purchased Amount is being delivered to FF in the State of New York, and that the State of New York has a reasonable relationship to the transactions encompassed by this Agreement. This Agreement and the relationship between FF, each Merchant, and each Guarantor will be governed by and construed in accordance with the laws of the State of New York, without regard to any applicable principles of conflict of laws.

**40. Forum and Venue Selection.** Any litigation relating to this Agreement or involving FF on one side and any Merchant or any Guarantor on the other must be commenced and maintained in any court located in the Counties of Nassau, New York, or Sullivan in the State of New York (the "Acceptable Forums"). The parties agree that the Acceptable Forums are convenient, submit to the jurisdiction of the Acceptable Forums, and waive any and all objections to the jurisdiction or venue of the Acceptable Forums. If any litigation is initiated in any other venue or forum, the parties waive any right to oppose any motion or application made by any party to transfer such litigation to an Acceptable Forum. The parties agree that this Agreement encompasses the transaction of business within the City of New York and that the Civil Court of the City of New York ("Civil Court") will have jurisdiction over any litigation relating to this Agreement that is within the jurisdictional limit of the Civil Court. In addition to the Acceptable Forums, any action or proceeding to enforce a judgment or arbitration award against any Merchant or Guarantor or to restrain or collect any amount due to FF may be commenced and maintained in any other court of competent jurisdiction.

**41. Jury Waiver.** The parties agree to waive trial by jury in any dispute between them.

**42. Counterclaim Waiver.** In any litigation or arbitration commenced by FF, each Merchant and each Guarantor will not be permitted to interpose any counterclaim.

**43. Statutes of Limitations.** Each Merchant and each Guarantor agree that any claim that is not asserted against FF within one year of its accrual will be time barred.

**44. Costs.** Each Merchant and each Guarantor must pay all of FF's reasonable costs associated with a breach by any Merchant of the covenants in this Agreement and the enforcement thereof, including but not limited to collection agency fees, attorney fees, which may include a contingency fee of up to 40% of the amount claimed, expert witness fees, and costs of suit.

**45. Prejudgment and Postjudgment Interest.** If FF becomes entitled to the entry of a judgment against any Merchant or any Guarantor, then FF will be entitled to the recovery of prejudgment interest at a rate of 24% per annum (or 16% per annum if any Merchant is a sole proprietorship), or the maximum rate permitted by applicable law if less, and upon entry of any such judgment, it will accrue interest at a postjudgment rate of 24% per annum (or 16% per annum if any

**I have read and agree to the terms and conditions set forth above:**

DocuSigned by:

*RONNIE FRANK WALRAVEN JR*

190D4E5D0D8B459...

Name and Title: RONNIE FRANK WALRAVEN JR          Date:    12/1/2025

Case 1:26-cv-03849-MKV    Document 1-3    Filed 05/08/26    Page 100 of 118

## STANDARD MERCHANT CASH ADVANCE AGREEMENT

Merchant is a sole proprietorship), or the maximum rate permitted by applicable law if less, which rate will govern over the statutory rate of interest up until actual satisfaction of the judgment.

**46. Legal Fees.** If FF prevails in any litigation or arbitration with any Merchant or any Guarantor, then that Merchant and/or Guarantor must pay FF's reasonable attorney fees, which may include a contingency fee of up to 40% of the amount claimed.

**47. Class Action Waiver.** FF, each Merchant, and each Guarantor agree that they may bring claims against each other relating to this Agreement only in their individual capacities, and not as a plaintiff or class action member in any purported class or representative proceedings.

**48. Arbitration.** Any action or dispute relating to this Agreement or involving FF on one side and any Merchant or any Guarantor on the other, including, but not limited to issues of arbitrability, will, at the option of any party to such action or dispute, be determined by arbitration before a single arbitrator. The arbitration will be administered either by Arbitration Services, Inc. under its Commercial Arbitration Rules as are in effect at that time, which rules are available at www.arbitrationservicesinc.com, or by Mediation & Commercial Arbitration, Inc. under its Commercial Arbitration Rules as are in effect at that time, which rules are available at www.mcarbitration.org. Once an arbitration is initiated with one of these arbitral forums, it must be maintained exclusively before that arbitral forum and the other arbitral forum specified herein may not be used. Any arbitration relating to this Agreement must be conducted in the Counties of Nassau, New York, Queens, or Kings in the State of New York. Notwithstanding any provision of any applicable arbitration rules, any witness in an arbitration who does not reside in or have a place for the regular transaction of business located in New York City or the Counties of Nassau, Suffolk, or Westchester in the State of New York will be permitted to appear and testify remotely by telephone or video conferencing. In case any Event of Default occurs and is not waived, each Merchant and each Guarantor consents to FF making an application to the arbitrator, without notice to any Merchant or any Guarantor, for the issuance of an injunction, restraining order, or other equitable relief in FF's favor, subject to court or arbitrator approval, restraining each Merchant's accounts and/or receivables up to the amount due to FF as a result of the Event of Default.

Each Merchant acknowledges and agrees that this Agreement is the product of communications conducted by telephone and the Internet, which are instrumentalities of interstate commerce, that the transactions contemplated under this Agreement will be made by wire transfer and ACH, which are also instrumentalities of interstate commerce, and that this Agreement therefore evidences a transaction affecting interstate commerce. Accordingly, notwithstanding any provision in this Agreement to the contrary, all matters of arbitration relating to this Agreement will be governed by and construed in accordance with the provisions of the Federal Arbitration Act, codified as Title 9 of the United States Code, however any application for injunctive relief in aid of arbitration or to confirm an arbitration award may be made under Article 75 of the New York Civil Practice Law and Rules. The arbitration agreement contained in this Section may also be enforced by any employee, agent, attorney, member, manager, officer, subsidiary, affiliate entity, successor, or assign of FF.

**49. Service of Process.** Each Merchant and each Guarantor consent to service of process and legal notices made by First Class or Priority Mail delivered by the United States Postal Service and addressed to the Contact Address set forth on the first page of this Agreement or any other address(es) provided in writing to FF by any Merchant or any Guarantor, and unless applicable law or rules provide otherwise, any such service will be deemed complete upon dispatch. Each Merchant and each Guarantor agrees that it will be precluded from asserting that it did not receive service of process or any other notice mailed to the Contact Address set forth on the first page of this Agreement if it does not furnish a certified mail return receipt signed by FF demonstrating that FF was provided with notice of a change in the Contact Address.

**50. Survival of Representation, etc.** All representations, warranties, and covenants herein shall survive the execution and delivery of this Agreement and shall continue in full force until all obligations under this Agreement shall have been satisfied in full and this Agreement shall have terminated.

**51. Waiver.** No failure on the part of FF to exercise, and no delay in exercising, any right under this Agreement, shall operate as a waiver thereof, nor shall any single or partial exercise of any right under this Agreement preclude any other or further exercise thereof or the exercise of any other right. The remedies provided hereunder are cumulative and

**I have read and agree to the terms and conditions set forth above:**

DocuSigned by:

*RONNIE FRANK WALRAVEN JR*

190D4E5D0D8B459...

Name and Title: RONNIE FRANK WALRAVEN JR    Date: 12/1/2025

Case 1:26-cv-03849-MKV    Document 1-3    Filed 05/08/26    Page 101 of 118

## STANDARD MERCHANT CASH ADVANCE AGREEMENT

not exclusive of any remedies provided by law or equity.

**52. Independent Sales Organizations/Brokers.** Each Merchant and each Guarantor acknowledge that it may have been introduced to FF by or received assistance in entering into this Agreement or its Guarantee from an independent sales organization or broker ("ISO"). Each Merchant and each Guarantor agree that any ISO is separate from and is not an agent or representative of FF. Each Merchant and each Guarantor acknowledge that FF is not bound by any promises or agreements made by any ISO that are not contained within this Agreement. Each Merchant and each Guarantor exculpate from liability and agree to hold harmless and indemnify FF and its officers, directors, members, shareholders, employees, and agents from and against all losses, damages, claims, liabilities, and expenses (including reasonable attorney and expert fees) incurred by any Merchant or any Guarantor resulting from any act or omission by any ISO. Each Merchant and each Guarantor acknowledge that any fee that they paid to any ISO for its services is separate and apart from any payment under this Agreement. Each Merchant and each Guarantor acknowledge that FF does not in any way require the use of an ISO and that any fees charged by any ISO are not required as a condition or incident to this Agreement.

**53. Modifications; Agreements.** No modification, amendment, waiver, or consent of any provision of this Agreement shall be effective unless the same shall be in writing and signed by all parties.

**54. Severability.** If any provision of this Agreement is deemed invalid or unenforceable as written, it will be construed, to the greatest extent possible, in a manner which will render it valid and enforceable, and any limitation on the scope or duration of any such provision necessary to make it valid and enforceable will be deemed to be part thereof. If any provision of this Agreement is deemed void, all other provisions will remain in effect.

**I have read and agree to the terms and conditions set forth above:**

DocuSigned by:

*RONNIE FRANK WALRAVEN JR*
190D4E5D0D8B459...

Name and Title: RONNIE FRANK WALRAVEN JR          Date:   12/1/2025

Docusign Envelope ID: 1C84FD75-F5FF-4045-BF04-E8D29330DD03

Case 1:26-cv-03849-MKV    Document 1-3    Filed 05/08/26    Page 102 of 118

## STANDARD MERCHANT CASH ADVANCE AGREEMENT

**55. Headings.** Headings of the various articles and/or sections of this Agreement are for convenience only and do not necessarily define, limit, describe, or construe the contents of such articles or sections.

**56. Attorney Review.** Each Merchant acknowledges that it has had an opportunity to review this Agreement and all addenda with counsel of its choosing before signing the documents or has chosen not to avail itself of the opportunity to do so.

**57. Entire Agreement.** This Agreement, inclusive of all addenda, if any, executed simultaneously herewith constitutes the full understanding of the parties to the transaction herein and may not be amended, modified, or canceled except in writing signed by all parties. Should there arise any conflict between this Agreement and any other document preceding it, this Agreement will govern. This Agreement does not affect any previous agreement between the parties unless such an agreement is specifically referenced herein. This Agreement will not be affected by any subsequent agreement between the parties unless this Agreement is specifically referenced therein. FF will not be permitted to enforce any of its rights under this Agreement if so expressed by in writing by Gene Rosen's Law Firm.

**58. Counterparts; Fax and Electronic Signatures.** This Agreement may be executed electronically and in counterparts. Facsimile and electronic copies of this Agreement will have the full force and effect of an original.

### EACH UNDERSIGNED HEREBY ACCEPTS THE TERMS OF THIS AGREEMENT

**FOR THE MERCHANT/OWNER (#1)**

By: RONNIE FRANK WALRAVEN JR

        (Print Name and Title)

DocuSigned by:

RONNIE FRANK WALRAVEN JR

190D4E5D0D8B459...

(Signature)

SS# ▮▮▮▮▮▮

Driver License Number ▮▮▮▮▮

**FOR THE MERCHANT/OWNER (#2)**

By:

        (Print Name and Title)

        (Signature)

SS#

Driver License Number

Approved for FOREVER FUNDING LLC by:

DocuSign Envelope ID: 1E84FD75-E5EF-4D45-B1D4-E8EE2D530DD3
Case 1:26-cv-03849-MKV    Document 1-3    Filed 05/08/26    Page 103 of 118

Page **13** of **20**

### STANDARD MERCHANT CASH ADVANCE AGREEMENT

## GUARANTEE

**G1. Personal Guarantee of Performance.** This is a personal guaranty of performance, dated Dec. 01, 2025, of the Standard Merchant Cash Advance Agreement, dated Dec. 01, 2025 ("Agreement"), inclusive of all addenda, if any, executed simultaneously therewith, by and between FOREVER FUNDING LLC ("FF") and ER OF TEXAS, LLC ("Merchant"). Each undersigned Guarantor hereby guarantees each Merchant's performance of all of the representations, warranties, and covenants made by each Merchant to FF in the Agreement, inclusive of all addenda, if any, executed simultaneously herewith, as the Agreement may be renewed, amended, extended, or otherwise modified (the "Guaranteed Obligations"). Each Guarantor's obligations are due at the time of any breach by any Merchant of any representation, warranty, or covenant made by any Merchant in the Agreement.

**G2. Communications.** FF may use automated telephone dialing, text messaging systems, and e-mail to provide messages to Guarantor(s) about Merchant(s)'s account. Telephone messages may be played by a machine automatically when the telephone is answered, whether answered by an Owner, a Guarantor, or someone else. These messages may also be recorded by the recipient's answering machine or voice mail. Each Guarantor gives FF permission to call or send a text message to any telephone number given to FF in connection with this Agreement and to play pre-recorded messages and/or send text messages with information about this Agreement and/or any Merchant's account over the phone. Each Guarantor also gives FF permission to communicate such information to them by e-mail. Each Guarantor agrees that FF will not be liable to any of them for any such calls or electronic communications, even if information is communicated to an unintended recipient. Each Guarantor acknowledges that when they receive such calls or electronic communications, they may incur a charge from the company that provides them with telecommunications, wireless, and/or Internet services, and that FF has no liability for any such charges.

**G3. Guarantor Waivers.** If FF considers any Event of Default to have taken place under the Agreement, then FF may enforce its rights under this Guarantee without first seeking to obtain payment from any Merchant, any other guarantor, or any Collateral, Additional Collateral, or Cross-Collateral FF may hold pursuant to this Guarantee or any other agreement or guarantee. FF does not have to notify any Guarantor of any of the following events and Guarantor(s) will not be released from its obligations under this Guarantee even if it is not notified of: (i) any Merchant's failure to pay timely any amount owed under the Agreement; (ii) any adverse change in any Merchant's financial condition or business; (iii) any sale or other disposition of any collateral securing the Guaranteed Obligations or any other guarantee of the Guaranteed Obligations; (iv) FF's acceptance of the Agreement with any Merchant; and (v) any renewal, extension, or other modification of the Agreement or any Merchant's other obligations to FF. In addition, FF may take any of the following actions without releasing any Guarantor from any obligations under this Guarantee: (i) renew, extend, or otherwise modify the Agreement or any Merchant's other obligations to FF; (ii) if there is more than one Merchant, release a Merchant from its obligations to FF such that at least one Merchant remains obligated to FF; (iii) sell, release, impair, waive, or otherwise fail to realize upon any collateral securing the Guaranteed Obligations or any other guarantee of the Guaranteed Obligations; and (iv) foreclose on any collateral securing the Guaranteed Obligations or any other guarantee of the Guaranteed Obligations in a manner that impairs or precludes the right of Guarantor to obtain reimbursement for payment under the Agreement. Until the Receivables Purchased Amount and each Merchant's other obligations to FF under the Agreement and this Guarantee are paid in full, each Guarantor shall not seek reimbursement from any Merchant or any other guarantor for any amounts paid by it under the Agreement. Each Guarantor permanently waives and shall not seek to exercise any of the following rights that it may have against any Merchant, any other guarantor, or any collateral provided by any Merchant or any other guarantor, for any amounts paid by it or acts performed by it under this Guarantee: (i) subrogation; (ii) reimbursement; (iii) performance; (iv) indemnification; or (v) contribution.

**G4. Joint and Several Liability.** The obligations hereunder of the persons or entities constituting each Guarantor under this Guarantee are joint and several.

**G5. Injunctive Relief.** In case any Event of Default occurs and is not waived, FF will be entitled to the issuance of an injunction, restraining order, or other equitable relief in FF's favor, subject to court or arbitrator approval, restraining each Guarantor's accounts and/or receivables up to the amount due to FF as a result of the Event of Default, and each Guarantor

**I have read and agree to the terms and conditions set forth above:**

DocuSigned by:

*RONNIE FRANK WALRAVEN JR*
190D4E5D0D8B459...

Name and Title: RONNIE FRANK WALRAVEN JR          Date:    12/1/2025

DocuSign Envelope ID: 1E84FD75-E5FF-40AB-B404-F5B82B530DD3
Case 1:26-cv-03849-MKV    Document 1-3    Filed 05/08/26    Page 104 of 118

### STANDARD MERCHANT CASH ADVANCE AGREEMENT

will be deemed to have consented to the granting of an application for the same to any court or arbitral tribunal of competent jurisdiction without any prior notice to any Merchant or Guarantor and without FF being required to furnish a bond or other undertaking in connection with the application.

**G6. Choice of Law.** Each Guarantor acknowledges and agrees that the Agreement and this Guarantee were made in the State of New York, that the Purchase Price is being paid by FF in the State of New York, that the Receivables Purchased Amount is being delivered to FF in the State of New York, and that the State of New York has a reasonable relationship to the transactions encompassed by the Agreement and this Guarantee. This Guarantee and the relationship between FF, each Merchant, and each Guarantor will be governed by and construed in accordance with the laws of the State of New York, without regard to any applicable principles of conflict of laws.

**G7. Forum and Venue Selection.** Any litigation relating to this Agreement or this Guarantee or involving FF on one side and any Merchant or any Guarantor on the other must be commenced and maintained in any court located in the Counties of Nassau, New York, or Sullivan in the State of New York (the "Acceptable Forums"). The parties agree that the Acceptable Forums are convenient, submit to the jurisdiction of the Acceptable Forums, and waive any and all objections to the jurisdiction or venue of the Acceptable Forums. If any litigation is initiated in any other venue or forum, the parties waive any right to oppose any motion or application made by any party to transfer such litigation to an Acceptable Forum. The parties agree that this Guarantee encompasses the transaction of business within the City of New York and that the Civil Court of the City of New York ("Civil Court") will have jurisdiction over any litigation relating to this Guarantee that is within the jurisdictional limit of the Civil Court. In addition to the Acceptable Forums, any action or proceeding to enforce a judgment or arbitration award against any Merchant or Guarantor or to restrain or collect any amount due to FF may be commenced and maintained in any other court of competent jurisdiction.

**G8. Jury Waiver.** Each Guarantor agrees to waive trial by jury in any dispute with FF.

**G9. Counterclaim Waiver.** In any litigation or arbitration commenced by FF, each Merchant and each Guarantor will not be permitted to interpose any counterclaim.

**G10. Statutes of Limitations.** Each Merchant and each Guarantor agree that any claim that is not asserted against FF within one year of its accrual will be time barred.

**G11. Costs.** Each Merchant and each Guarantor must pay all of FF's reasonable costs associated with a breach by any Merchant of the covenants in this Agreement or this Guarantee and the enforcement thereof, including but not limited to collection agency fees, expert witness fees, and costs of suit.

**G12. Prejudgment and Postjudgment Interest.** If FF becomes entitled to the entry of a judgment against any Merchant or any Guarantor, then FF will be entitled to the recovery of prejudgment interest at a rate of 24% per annum (or 16% per annum if any Merchant is a sole proprietorship), or the maximum rate permitted by applicable law if less, and upon entry of any such judgment, it will accrue interest at a postjudgment rate of 24% per annum (or 16% per annum if any Merchant is a sole proprietorship), or the maximum rate permitted by applicable law if less, which rate will govern over the statutory rate of interest up until actual satisfaction of the judgment.

**G13. Legal Fees.** If FF prevails in any litigation or arbitration with any Merchant or any Guarantor, then that Merchant and/or Guarantor must pay FF's reasonable attorney fees, which may include a contingency fee of up to 40% of the amount claimed.

**G14. Class Action Waiver.** FF, each Merchant, and each Guarantor agree that they may bring claims against each other relating to this Agreement only in their individual capacities, and not as a plaintiff or class action member in any purported class or representative proceedings.

**G15. Arbitration.** Any action or dispute relating to this Agreement or this Guarantee or involving FF on one side

**I have read and agree to the terms and conditions set forth above:**

DocuSigned by:

*RONNIE FRANK WALRAVEN JR*
190D4E5D0D8B459...

Name and Title: RONNIE FRANK WALRAVEN JR          Date:    12/1/2025

Case 1.26-cv-03849-MKV    Document 1-3    Filed 05/08/26    Page 105 of 118

## STANDARD MERCHANT CASH ADVANCE AGREEMENT

and any Merchant or any Guarantor on the other, including, but not limited to issues of arbitrability, will, at the option of any party to such action or dispute, be determined by arbitration before a single arbitrator. The arbitration will be administered either by Arbitration Services, Inc. under its Commercial Arbitration Rules as are in effect at that time, which rules are available at www.arbitrationservicesinc.com, or by Mediation & Commercial Arbitration, Inc. under its Commercial Arbitration Rules as are in effect at that time, which rules are available at www.mcarbitration.org. Once an arbitration is initiated with one of these arbitral forums, it must be maintained exclusively before that arbitral forum and the other arbitral forum specified herein may not be used. Any arbitration relating to this Agreement or this Guarantee must be conducted in the Counties of Nassau, New York, Queens, or Kings in the State of New York. Notwithstanding any provision of any applicable arbitration rules, any witness in an arbitration who does not reside in or have a place for the regular transaction of business located in New York City or the Counties of Nassau, Suffolk, or Westchester in the State of New York will be permitted to appear and testify remotely by telephone or video conferencing. In case any Event of Default occurs and is not waived, each Guarantor consents to FF making an application to the arbitrator, without notice to any Merchant or any Guarantor, for the issuance of an injunction, restraining order, or other equitable relief in FF's favor, subject to court or arbitrator approval, restraining each Guarantor's accounts and/or receivables up to the amount due to FF as a result of the Event of Default.

Each Guarantor acknowledges and agrees that the Agreement and this Guarantee are the product of communications conducted by telephone and the Internet, which are instrumentalities of interstate commerce, that the transactions contemplated under the Agreement and this Guarantee will be made by wire transfer and ACH, which are also instrumentalities of interstate commerce, and that the Agreement and this Guarantee therefore evidence a transaction affecting interstate commerce. Accordingly, notwithstanding any provision in the Agreement or this Guarantee to the contrary, all matters of arbitration relating to the Agreement or this Guarantee will be governed by and construed in accordance with the provisions of the Federal Arbitration Act, codified as Title 9 of the United States Code, however any application for injunctive relief in aid of arbitration or to confirm an arbitration award may be made under Article 75 of the New York Civil Practice Law and Rules. The arbitration agreement contained in this Section may also be enforced by any employee, agent, attorney, member, manager, officer, subsidiary, affiliate entity, successor, or assign of FF.

**G16. Service of Process.** Each Merchant and each Guarantor consent to service of process and legal notices made by First Class or Priority Mail delivered by the United States Postal Service and addressed to the Contact Address set forth on the first page of the Agreement or any other address(es) provided in writing to FF by any Merchant or any Guarantor, and unless applicable law or rules provide otherwise, any such service will be deemed complete upon dispatch. Each Merchant and each Guarantor agrees that it will be precluded from asserting that it did not receive service of process or any other notice mailed to the Contact Address set forth on the first page of the Agreement if it does not furnish a certified mail return receipt signed by FF demonstrating that FF was provided with notice of a change in the Contact Address.

**G17. Severability.** If any provision of this Guarantee is deemed invalid or unenforceable as written, it will be construed, to the greatest extent possible, in a manner which will render it valid and enforceable, and any limitation on the scope or duration of any such provision necessary to make it valid and enforceable will be deemed to be part thereof. If any provision of this Guarantee is deemed void, all other provisions will remain in effect.

**G18. Survival.** The provisions of Sections G2, G3, G4, G5, G6, G7, G8, G9, G10, G11, G12, G13, G14, G15, G16, G17, G18, G19, G20, G21, and G22 shall survive any termination of this Guarantee.

**G19. Headings.** Headings of the various articles and/or sections of this Guarantee are for convenience only and do not necessarily define, limit, describe, or construe the contents of such articles or sections.

**G20. Attorney Review.** Each Guarantor acknowledges that it has had an opportunity to review this Guarantee, the Agreement, and all addenda with counsel of its choosing before signing the documents or has chosen not to avail itself of the opportunity to do so.

**G21. Entire Agreement.** This Guarantee, inclusive of all addenda, if any, executed simultaneously herewith may not be amended, modified, or canceled except in writing signed by all parties. Should there arise any conflict between this Guarantee and any other document preceding it, this Guarantee will govern. This Guarantee does not affect any previous

**I have read and agree to the terms and conditions set forth above:**

DocuSigned by:

*RONNIE FRANK WALRAVEN JR*
190D4E5D0D8B459...

Name and Title: RONNIE FRANK WALRAVEN JR          Date:    12/1/2025

FILED: NEW YORK COUNTY CLERK 03/12/2026 02:56 PM
INDEX NO. 651550/2026
NYSCEF DOC. NO. 11
RECEIVED NYSCEF: 03/12/2026

## STANDARD MERCHANT CASH ADVANCE AGREEMENT

agreement between the parties unless such an agreement is specifically referenced in the Agreement or herein. This Guarantee will not be affected by any subsequent agreement between the parties unless this Guarantee is specifically referenced therein.

**I have read and agree to the terms and conditions set forth above:**

DocuSigned by:

*RONNIE FRANK WALRAVEN JR*

Name and Title: RONNIE FRANK WALRAVEN JR          Date:    12/1/2025

Docusign Envelope ID: 1C84FD75 F8FF 40AB BF04 E862E5300DD3
Case 1.26-cv-03849-MKV    Document 1-3    Filed 05/08/26    Page 107 of 118

## STANDARD MERCHANT CASH ADVANCE AGREEMENT

**G22. Counterparts; Fax and Electronic Signatures.** This Guarantee may be executed electronically and in counterparts. Facsimile and electronic copies of this Guarantee will have the full force and effect of an original.

THE TERMS, DEFINITIONS, CONDITIONS AND INFORMATION SET FORTH IN THE "STANDARD MERCHANT CASH ADVANCE AGREEMENT", INCLUDING THE "TERMS AND CONDITIONS", ARE HEREBY INCORPORATED IN AND MADE A PART OF THIS GUARANTEE. CAPITALIZED TERMS NOT DEFINED IN THIS GUARANTEE SHALL HAVE THE MEANING SET FORTH IN THE STANDARD MERCHANT CASH ADVANCE AGREEMENT, INCLUDING THE TERMS AND CONDITIONS.

### EACH UNDERSIGNED HEREBY ACCEPTS THE TERMS OF THIS GUARANTEE

**GUARANTOR (#1)**

By: RONNIE FRANK WALRAVEN JR
      (Print Name)

DocuSigned by:
*RONNIE FRANK WALRAVEN JR*
190D4E5D0D8B459...
(Signature)

SS# ■■■■■■■

Driver License Number ■■■■■■

**GUARANTOR (#2)**

By:
      (Print Name)

(Signature)

SS#

Driver License Number

Docusign Envelope ID: 1F84FD75-F8FF-404B-BF94-5BB2D530DDD3
Case 1:26-cv-03849-MKV    Document 1-3    Filed 05/08/26    Page 108 of 118

STANDARD MERCHANT CASH ADVANCE AGREEMENT

# BANK INFORMATION

Dear Merchant,

Thank you for accepting this offer from FOREVER FUNDING LLC. We look forward to being your funding partner. You authorize FOREVER FUNDING LLC to collect the Receivables Purchased Amount under this Agreement by ACH debiting your bank account with the bank listed below. FOREVER FUNDING LLC will require viewing access to your bank account each business day. FOREVER FUNDING LLC will also require viewing access to your bank account, prior to funding, as part of our underwriting process. Please fill out the form below with the information necessary to access your account.

**\* Be sure to indicate capital or lower case letters.**

Name of bank:  Chase

Name of account:  Chase

Routing number: 111000614

Account number: ▮▮▮▮▮▮▮▮

Bank portal website:  Call

Username:  Call

Password:  Call

Security Question/Answer 1:  Call

Security Question/Answer 2:  Call

Security Question/Answer 3:  Call

Any other information necessary to access your account:

Call

If you have any questions please feel free to contact us directly at (347) 719-7290.

Docusign Envelope ID: 1C84F575-E5FF-4DAB-BF04-EB892S300DD3
Case 1:26-cv-03849-MKV    Document 1-3    Filed 05/08/26    Page 109 of 118

# Emergency Contacts

**4 valid emergency contacts are required to receive funding. Contacts will be verified.**

**Name:** ███████

**Relation:** █████

**Phone Number:** ██████████

**Email Address:** █████████████████

**Name:** Na

**Relation:** Na

**Phone Number:** Na

**Email Address:** Na

**Name:** Na

**Relation:** Na

**Phone Number:** Na

**Email Address:** Na

**Name:** Na

**Relation:** Na

**Phone Number:** Na

**Email Address:** Na

DocuSign Envelope ID: 1C84F575-F8EF-4C45-BF04-E58D75300DD3

## ADDENDUM TO CONTRACT
## WAIVER OF PERSONAL SERVICE

This Addendum ("Addendum") is to be made a part of purchase and sale of future receivables agreement (the "Contract") between FOREVER FUNDING LLC ("Purchaser") and ER OF TEXAS, LLC ("Merchant") and RONNIE FRANK WALRAVEN JR ("Guarantor") (collectively the "Parties").

1. **Merchant** hereby irrevocably and unconditionally waives personal service of any summons, complaint, or other process, which may be made by any other means permitted by New York law. Merchant understands and agrees that an action, lawsuit, or controversy may be taken up and considered by a court without any further notice. Merchant further agrees to waive any objection to the absence of formal service of process.
2. **Guarantor** hereby irrevocably and unconditionally waives personal service of any summons, complaint, or other process, which may be made by any other means permitted by New York law. Guarantor understands and agrees that an action, lawsuit, or controversy may be taken up and considered by a court without any further notice. Guarantor further agrees to waive any objection to the absence of formal service of process.
3. **MERCHANT** HEREBY AGREES TO ACCEPT SERVICE OF ANY SUMMONS, COMPLAINT, OR OTHER PROCESS BY ELECTRONIC MAIL ("EMAIL")AT ███████████████ OR BY UNITED STATES POSTAL SERVICE ("USPS") AT THE ADDRESS LISTED ON THE CONTRACT FOR THE MERCHANT OR BY ANY OTHER MEANS PERMITTED BY NEW YORK LAW.
4. **GUARANTOR** HEREBY AGREES TO ACCEPT SERVICE OF ANY SUMMONS, COMPLAINT, OR OTHER PROCESS BY ELECTRONIC MAIL ("EMAIL") AT ███████████████ OR USPS AT THE ADDRESS LISTED ON THE CONTRACT FOR THE GUARANTOR OR BY ANY OTHER MEANS PERMITTED BY NEW YORK LAW.
5. Service shall be effective upon sending the electronic mail or depositing the summons and complaint in a USPS mailbox. Merchants' or Guarantors' email address or physical address provided shall be presumed to be valid and current unless Merchants or Guarantors provide a new email or physical address for service of process.
6. Merchant or Guarantor shall notify Purchaser of any changes to its physical address or email address for service. Unless Seller is notified of a change in address, all addresses shall be presumed to be accurate.
7. This Addendum shall supersede any inconsistent notice requirements in the Contract with respect to service of process.
8. Any parties, including additional guarantors shall agree to waive service of process and accept service at the email address provided or last known address.

**For the Merchant**

DocuSigned by:

RONNIE FRANK WALRAVEN JR

190D4E5D0D8B459...

_____
**Name:** RONNIE FRANK WALRAVEN JR

**Date:** Dec. 01, 2025

**Additional Guarantor (if applicable)**

_____
**Name:**
**Date:** Dec. 01, 2025

COMPLAINT

EXHIBIT "K"

| | | |
|---|---|---|
| ● Dec 01, 2025 | WIRE TO ER OF TEXAS HOLDINGS LLC | 292,500.00 |

Case 1:26-cv-03849-MKV    Document 1-3    Filed 05/08/26    Page 113 of 118

COMPLAINT

EXHIBIT "L"

| Deal ID | FE1228 | | Date | Description | Amount |
|---|---|---|---|---|---|
| Name | ER OF TEXAS, LLC 7 | | 12/2/2025 | ER OF TEXAS HOLD ACH Pmt 251202 CCD 11197804766 | $8,000.00 |
| Date | | 12/1/2025 | 12/3/2025 | ER OF TEXAS HOLD ACH Pmt 251203 CCD 11197965683 | $8,000.00 |
| Status | Default | | 12/4/2025 | ER OF TEXAS HOLD ACH Pmt 251204 CCD 11198277056 | $8,000.00 |
| | | | 12/9/2025 | WIRE FROM ER OF TEXAS HOLDINGS LL | $15,500.00 |
| Principal | $325,000.00 | | 12/16/2025 | WIRE FROM ER OF TEXAS, LLC | $15,000.00 |
| Payback | $487,175.00 | | 12/17/2025 | WIRE FROM ER OF TEXAS, LLC | $15,000.00 |
| Bank Fee | $32,500.00 | | 1/22/2026 | WIRE FROM ER OF TEXAS, LLC | $15,000.00 |
| Type | MCA | | 1/23/2026 | WIRE FROM ER OF TEXAS, LLC | $15,000.00 |
| | | | | | |
| Net | $292,500.00 | | | | |
| | | | | | |
| Paid | $99,500.00 | | | | |
| Paid % | 20.42% | | | | |
| Balance | $387,675.00 | | | | |

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
-------------------------------------------------------------------------X

FOREVER FUNDING LLC,                                      Index No. 651550/2026

                          Plaintiff,                     **AFFIRMATION OF SERVICE**

          - against -

RONNIE FRANK WALRAVEN JR,

                          Defendant.
-------------------------------------------------------------------------X

          GENE W. ROSEN affirms the following:

          I am a Member of Gene Rosen's Law Firm – A Professional Corporation, attorneys for Plaintiff and am not a party to this action.

          On **MARCH 16, 2026**, I served copies of the **NOTICE OF ELECTRONIC FILING, SUMMONS, AND VERIFIED COMPLAINT** upon **RONNIE FRANK WALRAVEN JR** by mailing same in a sealed envelope with postage paid wrapper affixed in an official depository under the exclusive care and custody of the United States Postal Service within the State of New York designated for that purpose, addressed to:

Ronnie Frank Walraven Jr
4267 Shavano Dr
Frisco, TX 75034

          This method of service is authorized by the parties' contract, a copy of which is annexed as Exhibit "A" to the complaint. The Appellate Division has ruled that service of process by mail in accordance with a written agreement is proper and reasonably calculated to apprise the defendant of the pendency of the lawsuit. Matter of New York Merchants Protective Co., Inc. v. Mima's Kitchen, Inc., 114 A.D. 3d 796 (2nd Dept., 2014); Matter of Fernandez (Universal Underwriters Ins. Co.), 130 A.D. 2d 657 (2nd Dept., 1987).

          I affirm on this day of March 16, 2026, under the penalties of perjury under the laws of New York, which may include a fine or imprisonment, that the foregoing is true, and I understand that this document may be filed in an action or proceeding in a court of law.

                                        GENE ROSEN'S LAW FIRM
                                        A PROFESSIONAL CORPORATION
                                        Attorneys for Plaintiff


                                        By: _____
                                             Gene W. Rosen, Esq.
                                             200 Garden City Plaza, Suite 405
                                             Garden City, New York 11530
                                             Tel (212) 529-3600 Ext. 101
                                             Fax (347) 578-8793
                                             Gene@GeneRosen.com

Case 1:26-cv-03849-MKV    Document 1-3    Filed 05/08/26    Page 116 of 118

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
-------------------------------------------------------------------------X

FOREVER FUNDING LLC,                                    Index No. 651550/2026

                        Plaintiff,                     **AFFIRMATION OF SERVICE**

        - against -

RONNIE FRANK WALRAVEN JR,

                        Defendant.
-------------------------------------------------------------------------X

GENE W. ROSEN affirms the following:

I am a Member of Gene Rosen's Law Firm – A Professional Corporation, attorneys for Plaintiff and am not a party to this action.

On **MARCH 16, 2026**, I served copies of the **NOTICE OF ELECTRONIC FILING, SUMMONS, AND VERIFIED COMPLAINT** upon **RONNIE FRANK WALRAVEN JR** by mailing same in a sealed envelope with postage paid wrapper affixed in an official depository under the exclusive care and custody of the United States Postal Service within the State of New York designated for that purpose, addressed to:

Ronnie Frank Walraven Jr
4267 Shavano Dr
Frisco, TX 75034

This method of service is authorized by the parties' contract, a copy of which is annexed as Exhibit "A" to the complaint. The Appellate Division has ruled that service of process by mail in accordance with a written agreement is proper and reasonably calculated to apprise the defendant of the pendency of the lawsuit. Matter of New York Merchants Protective Co., Inc. v. Mima's Kitchen, Inc., 114 A.D. 3d 796 (2nd Dept., 2014); Matter of Fernandez (Universal Underwriters Ins. Co.), 130 A.D. 2d 657 (2nd Dept., 1987).

I affirm on this day of March 16, 2026, under the penalties of perjury under the laws of New York, which may include a fine or imprisonment, that the foregoing is true, and I understand that this document may be filed in an action or proceeding in a court of law.

GENE ROSEN'S LAW FIRM
A PROFESSIONAL CORPORATION
Attorneys for Plaintiff

By: _____
        Gene W. Rosen, Esq.
        200 Garden City Plaza, Suite 405
        Garden City, New York 11530
        Tel (212) 529-3600 Ext. 101
        Fax (347) 578-8793
        Gene@GeneRosen.com

Case 1:26-cv-03849-MKV    Document 1-3    Filed 05/08/26    Page 117 of 118

**UNITED STATES POSTAL SERVICE**®

**Certificate Of Mailing**

To pay fee, affix stamps or meter postage here.

This Certificate of Mailing provides evidence that mail has been presented to USPS® for mailing
This form may be used for domestic and international mail.

From:

Gene Rosen's Law Firm
200 Garden City Plaza, Suite 405
Garden City, NY 11530

$4.14 0
US POSTAGE IMI
FIRST-CLASS
063S0001443207
FROM 11530

S96447006

CARLE PLACE

MAR 16 2026

Postmark Here

USPS

To: Ronnie Frank Walraven JR
4267 Shavano Dr
Frisco, TX 75034

PS Form **3817**, April 2007  PSN 7530-02-000-9065

**SUPREME COURT OF THE STATE OF NEW YORK**
**COUNTY OF NEW YORK**

---

FOREVER FUNDING LLC,

        Plaintiff,

-against-

RONNIE FRANK WALRAVEN JR,

        Defendant.

Index No. 651550/2026

**NOTICE OF APPEARANCE**

---

**PLEASE TAKE NOTICE** that Joseph H. Harris, an attorney of the law firm of FordHarrison LLP hereby appears in connection with the above-referenced action on behalf of defendant RONNIE FRANK WALRAVEN JR.

I certify that I am admitted to practice in this Court.

Dated: April 30, 2026

        New York, New York

**FORDHARRISON LLP**


*/s/*
Joseph H. Harris
jhharris@fordharrison.com
401 E. Jackson Street, Suite 2500
Tampa, FL  33602
Telephone: (813) 261-7800
Facsimile: (813) 261-7899

*Attorney for Defendant*